PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, CA 91367
Telephone:  (818) 883-4900
Fax:          (818) 883-4902
Email:        peter@dion-kindemlaw.com

Attorneys for Plaintiff Barry Rosen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Barry Rosen,<br><br>         Plaintiff,<br><br>     vs.<br><br>eBay, Inc., *et al.*,<br><br>         Defendants. | **Case No. CV13-06801 MWF (Ex)**<br><br>**Notice of Motion and Motion for Partial Summary Judgment re Liability for Copyright Infringement; Memorandum of Points and Authorities**<br><br>**Date:        November 3, 2014**<br>**Time:        10:00 a.m.**<br>**Courtroom: 1600** |

PLEASE TAKE NOTICE that on November 3, 2014, at 10:00 a.m. or as soon thereafter as the matter can be heard in Courtroom 1600 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiff Barry Rosen will and hereby does move for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment as to liability in favor of Plaintiff Barry Rosen against eBay, Inc. on the First Claim for Relief for Copyright Infringement in Plaintiff's

**Motion for Partial Summary Judgment as to Liability**

1

Complaint on the grounds that such eBay's liability for copyright infringement is established as a matter of law.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Barry Rosen, Peter R. Dion-Kindem, and David Sterling, the Proposed Findings of Facts and Conclusions of Law lodged herewith, the records and papers on file herein, and on such arguments as may be presented at the time of the hearing on such motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 that occurred on January 7, 2014.

Dated: September 5, 2014 THE DION-KINDEM LAW FIRM


BY: */s/ PETER R. DION-KINDEM*
   PETER R. DION-KINDEM, P.C.
   PETER R. DION-KINDEM
   Attorneys for Plaintiff Barry Rosen

# **Table of Contents**

I.    Introduction...................................................................................................1

II.   Factual and Procedural History. .....................................................................1

    **A.**   eBay's and its business. .........................................................................2

        1.   eBay's Listings, Buyers, and Sellers .........................................2

        2.   eBay's Business Model and Support to Sellers. ........................3

        3.   eBay's control over sales made on its website. .........................4

        4.   eBay's ████████ ████████ facilitation of the illegal downloading and distribution of such images. ...........................................6

    **B.**   Rosen's notification to eBay of infringing conduct on its website..............8

III.  The infringement of Rosen's Copyrights. .....................................................10

    **A.**   The infringement of Rosen's exclusive "copying" rights..........................10

    **B.**   eBay's users and eBay "distributed" unauthorized copies of the photographs by posting them on eBay. ....................................................11

    **C.**   The posting of unauthorized copies of Rosen's works on eBay's website constitutes the "public display" of such photographs. ................................14

IV.   eBay directly infringed Rosen's works. ........................................................16

    **A.**   eBay directly infringed Rosen's copying and distribution rights by ████████ ████████ ████████. ................................................................16

    **B.**   eBay directly infringed Rosen's copying and distribution and public display rights by re-posting unauthorized copies of Rosen's photographs. ..............17

    **C.**   eBay directly infringed Rosen's distribution rights by making the unauthorized images available for public distribution on its website..........17

V.    eBay vicariously infringed Rosen's works.....................................................17

    **A.**   eBay directly profits from the infringing activity. .....................................18

**Motion for Partial Summary Judgment as to Liability**

**B.**   eBay has the right and ability to control the infringing activity. ..................19

VI.   eBay contributorily infringed Rosen's works..........................................................23

**A.**   eBay's users' infringement of Rosen's works. ...........................................24

**B.**   eBay's contributory infringement. ...............................................................24

VII.   Conclusion. .......................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Table of Authorities**

### **Cases**

*A&M Records, Inc. v. Napster, Inc.* (9th Cir. 2001) 239 F.3d 1004, 1022 .....17, 20, 24, 25

*Arista Records LLC v. Usenet.com, Inc.* (S.D.N.Y. 2009) 633 F.Supp.2d 124, 157 ..18, 19

*Atlantic Recording Corp. v. Howell* (D. Ariz. 2008) 554 F.Supp.2d 976, 985 ................13

*Brown Bag Software v. Symantec Corp,* 960 F.2d 1465, 1472 (9th Cir.), *cert denied* 506 U.S. 869 (1992) ...........................................................................................................16

*Columbia Pictures Industries, Inc. v. Fung* (9th Cir. 2013) 710 F.3d 1020, 1034 *cert. dismissed,* (U.S. 2013) 134 S.Ct. 624 [187 L.Ed.2d 398]..............................................12

*Columbia Pictures Industries, Inc. v. Fung* (9th Cir. 2013) 710 F.3d 1020, 1045 *cert. dismissed,* (U.S. 2013) 134 S.Ct. 624 [187 L.Ed.2d 398]..............................................19

*Disney Enterprises, Inc. v. Hotfile Corp.* (S.D. Fla., Sept. 20, 2013, 11-20427-CIV) 2013 WL 6336286 ....................................................................................................................20

*Ellison v. Robertson* (9th Cir. 2004) 357 F.3d 1072....................................................10, 24

*Ellison v. Robertson* (9th Cir. 2004) 357 F.3d 1072, 1079.............................................18

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361-63, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991) ......................................................................................16

*Fonovisa, Inc. v. Cherry Auction, Inc.* (9th Cir. 1996) 76 F.3d 259, 263-64 ........18, 20, 23

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1173 (2d Cir.1971)..................................................................................................................19

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ....................................................................................................24

*Hotaling v. Church of Jesus Christ of Latter-Day Saints* (4th Cir. 1997) 118 F.3d 199 ..11

*Hotaling v. Church of Jesus Christ of Latter–Day Saints*, 118 F.3d 199 (4th Cir.1997)..17

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) .................................................................................................................................25

*Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F.3d 1146 ..........................10, 25

*Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F.3d 1146, 1159-1160........10, 14

**Motion for Partial Summary Judgment as to Liability**

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-60 (9th Cir. 2007)...............16

*Perfect 10, Inc. v. CCBill, LLC (9th Cir. 2007) 488 F.3d 1102* ........................10

*Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993) .............24

*Polygram Int'l Publ'g Inc. v. Nevada/TIG, Inc.,* 855 F.Supp. 1314, 1328 (D.Mass.1994)
..............................................................................................................19

*Sega Enterprises Ltd. v. Maphia*, 948 F. Supp. 923, 931-32 (N.D. Cal. 1996)................24

*Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th
Cir. 1977)..........................................................................................16

*Society of Holy Transfiguration Monastery, Inc. v. Gregory* (1st Cir. 2012) 689 F.3d 29 15

*Taylor v. Sturgell* (2008) 553 U.S. 880, 892 [128 S.Ct. 2161, 2171, 171 L.Ed.2d 155]...22

*Tiffany (NJ) Inc. v. eBay, Inc.* (S.D.N.Y. 2008) 576 F.Supp.2d 463, 506-07 *aff'd in part,
rev'd in part,* (2d Cir. 2010) 600 F.3d 93................................................22

## **Statutes**

17 U.S.C. § 101 ......................................................................................14

17 U.S.C. § 106 ......................................................................................16

17 U.S.C. Section 106(3) ...........................................................................11

17 U.S.C. Section 106(5) ...........................................................................14

17 U.S.C. section 512(i) ............................................................................10

## **Other Authorities**

2 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 8.08[A][1]...........24

## I.   INTRODUCTION.

Plaintiff Barry Rosen is a professional photographer who has created photographs of celebrities and models, including the subjects of the infringing activity in this case: Ali Landry, Angela Taylor, Chase Masterson, Erika Elaniak, Gena Lee Nolin, Jeri Ryan, Joanna Krupa, Natalia Sokolova, Priscilla Taylor, Sofia Vergara, and Tawney Kitaen. Rosen is the owner of all right, title, and interest to each of the photographs in dispute in this litigation and has registered the copyrights for such works and has been issued the United States copyright certificates in the works.

Defendant eBay, Inc. is the world's largest online flea-market and operates the world's largest collection of online auction/store websites, including eBay.com (United States), eBay.pl (Poland), eBay.co.uk (United Kingdom), ebay.de (Germany), eBay.com.au (Australia), eBay.fr (France) and many others.

Rosen filed suit against eBay for copyright infringement because eBay had control over and profited from its users' infringements of Rosen's copyrighted photographs on eBay's website, failed to expeditiously remove infringing items from its website after being notified by Rosen of such infringements, and in some cases willfully *re-posted* infringing items after it had taken them down pursuant to Rosen's Notice of Claimed Infringements ("NOCI"). In addition, the evidence adduced during discover demonstrates that eBay ██████████████████████████████████ thereby also directly infringing Rosen's copying and distribution rights.

The undisputed facts demonstrate that eBay is liable for the infringement of Rosen's photographs, and this Court should therefore enter an order finding eBay liable for its infringements of each of the 39 works at issue in this action.

## II.   FACTUAL AND PROCEDURAL HISTORY.

Rosen is a professional photographer and personally took the photographs that are at issue in this case that are listed in Exhibit 1 to the Second Amended Complaint filed in this action ("Photographs"). The Photographs are all original works by Rosen. (Rosen Decl., ¶ 4.) Rosen is the owner of all right, title, and interest to each of the copyrights in

**Motion for Partial Summary Judgment as to Liability**

the Photographs. (Rosen Decl., ¶ 2.) The Photographs are registered with the Copyright Office under numerous registration numbers. (Rosen Decl., ¶ 3; Exhibit 1.)

The infringement of Rosen's photographs on eBay's website are numerous and are summarized in the chart attached as Exhibit 176 to Rosen's Decl.

### A.   eBay's and its business.[1]

### 1.   eBay's Listings, Buyers, and Sellers

eBay is a well-known online marketplace, located at www.ebay.com, that allows eBay sellers to sell goods directly to eBay buyers. . . . The listings are created and posted by third-party users, who register with eBay and agree to abide by a User Agreement. . . .

To conduct a transaction on eBay, registered sellers choose the appropriate category for their listed item, including, for example, Jewelry and Watches, Toys and Hobbies, Collectibles, or Health and Beauty. . . . Sellers then create a listing for the item that they wish to sell. . . . A listing can include either a single item or several items (also known as a "Dutch auction"). . . . In addition, sellers can post multiple listings at any given time, including multiple listings for the same type of item or one listing with multiple quantities of the same item. . . .

While eBay is perhaps best known for auction-style listings, sellers can also choose to sell their goods through fixed price or "Buy It Now" listings. . . . Sellers are responsible for setting the parameters and conditions of the sale, including the minimum acceptable bid, the Buy It Now price (if applicable), and the duration of the listing. Sellers are also responsible for the content of the listings, including the titles and descriptions of the items. . . .

. . . Potential buyers can view listings on eBay in several ways. Buyers can click on keywords on the eBay home page, which bring them to pages of listings for products including those keywords. Buyers can also browse through eBay categories or use keywords to search through listing titles and

---

[1] These facts are taken from the factual findings of the District Court in *Tiffany (NJ) Inc. v. eBay, Inc.* (S.D.N.Y. 2008) 576 F.Supp.2d 463, 474-76 *aff'd in part, rev'd in part,* (2d Cir. 2010) 600 F.3d 93. These factually findings are binding on eBay in this action pursuant to the doctrine of collateral estoppel.

**Motion for Partial Summary Judgment as to Liability**

descriptions. To bid on items, buyers, like sellers, must register with eBay. . . .

eBay's role is to connect buyers and sellers and to enable transactions, which are carried out directly between eBay members. When a buyer purchases an item, the buyer and seller contact each other to arrange for payment and shipment of the goods. . . . While eBay provides the venue for the sale and support for the transaction, it does not itself sell the items. . . .

eBay has become very successful: more than six million new listings are posted on eBay daily, and at any given time, some 100 million listings appear on the website. . . .

**2.      eBay's Business Model and Support to Sellers.**

eBay's business model is based on two components: first, the creation of listings, and second, the successful completion of sales between the seller and the buyer. For each posted listing, sellers pay an initial insertion fee, ranging from $0.20 to $4.80 depending on the starting price. If the item is successfully sold, sellers pay a final value fee based upon the final price for the item. Final value fees range from 5.25% to 10% of the final price of the item. . . . In addition, sellers who opt for various additional features to differentiate their listings, such as a border or bold-faced type, are charged additional fees. . . .

In this way, eBay's revenue is based on sellers using eBay to list their products and successfully completing sales through eBay. Gary Briggs, eBay's Chief Marketing Officer, testified that in 2006, approximately 33% of eBay North America's income was derived from listing fees and approximately 45% from final value fees. . . . eBay also profits from fees charged by PayPal, an eBay company, to process the transaction. . . . PayPal charges the eBay seller a fee ranging from 1.9% to 2.9% of the sale price, plus $0.30. . . .

Because eBay's revenue and profit growth is dependent, in significant part, on the completion of sales between eBay sellers and eBay buyers, eBay works closely with sellers to foster the increase of their sales on eBay . . . As Briggs testified, eBay "want[s] to have [its] sellers understand what buyers are interested in, and [it] feels that [it is] very much in the business of trying to help [its] sellers succeed." . . .

This assistance includes seminars and workshops to educate sellers on growing their business. . . . eBay also offers marketing advice about creating

**Motion for Partial Summary Judgment as to Liability**

3

the "perfect" listing to attract buyers . . ., and offers an "Advanced Selling" program that provides its sellers with data and research to help them identify "hot sales opportunities" . . . In addition, eBay distributes marketing calendars so that its sellers can list goods to coincide with eBay promotions . . ., as well as "expert" consultants, whom eBay sellers may call to receive advice on growing their business . . . eBay also has a "Main Street Program," which encourages sellers to lobby government officials regarding regulations and legislation that may affect their sales and eBay's business. . . .

Some users who regularly sell large quantities of merchandise through eBay are designated as "PowerSellers." eBay provides PowerSellers with more assistance and benefits. . . . As Briggs testified, the bigger the seller, the more support eBay provides. . . .  During the relevant time period, eBay provided PowerSellers with dedicated account managers; special newsletters with further information on eBay promotions; advanced selling education; reimbursements of 25% of the cost of qualifying advertisements; and access to health care benefits, business liability insurance, and working lines of credit to finance their business. . . .

### 3.    eBay's control over sales made on its website.

eBay is an electronic marketplace, not a retailer. Thus, eBay itself never takes physical possession of the goods sold through its website; instead, it facilitates a transaction between two independent parties. . . . Nevertheless, eBay exercises some limited control over those who trade on its website by requiring all users to register with eBay and sign eBay's User Agreement. . . . The User Agreement requires users to refrain from violating any laws, third party rights, including intellectual property rights, and eBay policies. If a user violates the terms or conditions of the User Agreement, eBay may take disciplinary action against the seller, including removing the seller's listings, issuing a warning, and/or suspending the user. . . .

In addition to exercising some control over users, eBay also restricts the types of items which can be listed on its website. For example, eBay maintains a list of prohibited items, *e.g.,* drugs, firearms, and alcohol, for which it routinely screens in order to prevent such items from being offered for sale on eBay. . . .

eBay operates all of its websites off of the same network and system of servers located in the United States, regardless of which country they are servicing. Therefore, all

**Motion for Partial Summary Judgment as to Liability**

items placed on any of its websites around the world actually reside in the United States. Potential buyers can search for items for auction or sale by searching dozens of categories of goods (*e.g.*, sports memorabilia, musical instruments, etc.), by entering keywords (*e.g.*, "Anna Kournikova"), or by reviewing listings offered by particular sellers.

Furthermore, eBay exercises substantial control over the posting of photographs associated with listings, requiring large sized photographs to be posted for each listing:

> eBay requires that each listing contain at least one photo so that potential buyers can form accurate expectations regarding their purchases. eBay's automatic systems will not permit a seller to post a listing that does not contain at least one image.

> eBay requires that images included in listings must measure at least 500 pixels on their longest side. eBay does not permit users to post images in their listings that exceed 1600 pixels on their longest side. eBay's automated systems will not permit a seller to use an image that does not meet the minimum image size requirement or exceeds the maximum size limitation. (eBay's Response to Interrogatory No. 24, page 23, lines 13-21, Exhibit 3 to Dion-Kindem Decl.)

eBay's web site stores and displays the information about each particular item for sale, including a picture of the item, a written description of the item, the opening bidding price, the latest bidding price, the length of the auction, and the location of the seller.  In the course of displaying the items, eBay reproduces the images of the items for sale in digital form.

eBay earns an "insertion fee" for each listing and a "final value fee" based on a percentage of the highest bid amount at the end of the auction.  Thus, eBay derives revenue from each individual sale.  eBay by its own admission earns an average of 7-10% on each and every item offered on its website. (See trial testimony of eBay representative Gary Briggs in *Tiffany (NJ) Inc. v. eBay, Inc.* (S.D.N.Y. 2008) 576 F.Supp.2d 463, 506-07 *aff'd in part, rev'd in part,* (2d Cir. 2010) 600 F.3d 93, Exhibit 4 to Dion-Kindem Decl.)

4. **eBay's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉ facilitation of the illegal downloading and distribution of such images.**

Rosen has discovered the existence of at least two "consumers" of eBay data -- Terapeak and Worthpoint. Terapeak bills itself as an eBay research company that is a provider of analytics based on data it receives from eBay via a direct contractual relationship with eBay. Customers of Terapeak can obtain reports on virtually all of the auctions that have closed. Worthpoint provides an auction history on items that have been sold on eBay. Customers can view when an item was last sold and how much it sold for. (Sterling Decl., ¶ 28.)



1

2

3

4

5

6

7

8

9

10

11

12

13

14    Based on the information available on Terapeak's website, it is clear that eBay

15  allows Terapeak access to its data files relating to auctions on eBay.com, including

16  access to image files associated with such auctions.

17

18

19

20

21

22

23

24

25

26

27

28



Worthpoint receives its auction information from Terapeak and uses this information to create a compilation of information about a particular product or item. Using historical information from sales on eBay, it provides users with a quick view of how much an item last sold for. On detail display of an item it is clear that the image is stored on the Worthpoint servers (which appear to be hosted with Amazon's hosting service), which would indicate a duplication of the image from eBay's servers. This is further evidenced by a display of the detail of the image in which the image is shown as an eBay image, copyrighted by Worthpoint and stored on the Worthpoint servers. (Sterling Decl., ¶ 35.)

The relationship between Terapeak and Worthpoint is a partnership in which eBay provides data to Terapeak which repackages it to Worthpoint. According to the Terapeak web site http://www.terapeak.com/blog/2009/12/09/terapeak-and-worthpoint-launch-terapeak-collectibles/#.VAeEWM90yP8, the arrangement is where Terapeak is combining its analysis capabilities with the historical information with Worthpoint. (Sterling Decl., ¶ 36.)

**B.    Rosen's notification to eBay of infringing conduct on its website.**

eBay permits its website to be used as a forum to display, reproduce, sell, and distribute unauthorized copies of works copyrighted by Rosen. Rosen monitors eBay's website searching for items infringing his copyrighted works. When Rosen identifies an infringing work, he submits a Notice of Claimed Infringement ("NOCI") to eBay in compliance with 17 U.S.C. 512 and eBay's VERO program.

Each NOCI identifies the subject of the copyrighted work that is being infringed by eBay's unique item number as required by eBay. Rosen also attempts to include the seller

identifications as well, primarily for his own use. eBay is fully aware that certain sellers have infringed Rosen's copyrighted works as well as other third parties' copyrighted works or other intellectual property. Most, if not all, of the items reported by NOCI are also in violation of eBay's terms of service and various other eBay policies, including the celebrity material, recordable media,  disclaimers, images and text, autographs and the faces, names and signatures policies and should never exist on eBay in the first instance.

Despite the fact that particular sellers have histories of infringements (by virtue of NOCI's from Rosen and/or other Intellectual Property owners) and/or violate eBay's policies and terms of service, eBay often permits these repeat/serial infringers to continue to auction/sell infringing goods and/or items that violate its own policies and in some instances state or federal criminal laws.

eBay is actually or constructively aware that these items violate its policies and that there is a very high probability that a seller who receives one NOCI will either willfully re-list/repost an item removed pursuant to a NOCI or will otherwise become a serial/repeat infringer and infringe further intellectual properties.

When an infringing item is sold on eBay, eBay takes no steps from fully stopping or otherwise reversing the transaction. (See Rosen Decl., ¶¶ 264 - 270.)

When eBay receives a NOCI, it does not act expeditiously to remove the listings from its website and/or servers, which in certain cases has led to the sale of infringing items. eBay also does not remove the underlying infringing images from its image hosting servers (ebayimg.com) when it removes the listings, resulting in active infringing links that reside on eBay's servers for many months. Rosen has over time had communications with key eBay personnel about this issue and had also sued eBay in 2007 about this very issue, but eBay has never taken any steps to resolve the issue. Rosen is also aware that such images have been used as part of the re-posting/re-listing of items. (Rosen Decl., ¶¶ 10 – 22.)

eBay has a direct financial interest in the sale of copyrighted works through its website. The ability to buy and sell infringing works acts as a draw for customers and

eBay earns a percentage on each transaction along with insertion fees, image hosting fees, Paypal fees and advertising fees.[2]

### III.   THE INFRINGEMENT OF ROSEN'S COPYRIGHTS.

A plaintiff who claims copyright infringement must show:  (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act. *See* 17 U.S.C. § 501(a).  Courts recognize three precepts of copyright liability:  direct infringement, contributory infringement, and vicarious infringement.  (*See Ellison v. Robertson* (9th Cir. 2004) 357 F.3d 1072.)

Here, Rosen has established his authorship of the copyrighted photographic images and has also established that eBay directly infringed certain of Rosen's copyrighted works by re-posting infringing items after receiving notice from Rosen and distributing them to a third-party licensee, vicariously infringed Rosen's works by profiting from its users' infringing activity, which eBay effectively controlled, and by contributorily infringed Rosen's works by failing expeditiously to remove access to the infringing images after being given notice by Rosen.

### A.   The infringement of Rosen's exclusive "copying" rights.

Section 106(1) provides copyright holders with "the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords." Rosen has established that eBay's users, without Rosen's authorization, made copies of Rosen's works by taking pictures of them and/or scanning them and transmitting them to eBay's system. As the Court held in *Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F.3d 1146, 1159-1160:



---

**Motion for Partial Summary Judgment as to Liability**

We must now apply these definitions to the facts of this case. A photographic image is a work that is " 'fixed' in a tangible medium of expression," for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). The image stored in the computer is the "copy" of the work for purposes of copyright law. See *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517–18 (9th Cir.1993) (a computer makes a "copy" of a software program when it transfers the program from a third party's computer (or other storage device) into its own memory, because the copy of the program recorded in the computer is "fixed" in a manner that is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration" (quoting 17 U.S.C. § 101)).

In this case, eBay directly infringed Rosen's copyrights in certain works by re-posting the infringing listings and infringing images. When Rosen initially gave eBay NOCI's as to these items, eBay took the listings down (but did not remove the infringing image files from its servers). ***Thereafter, eBay*** ████████████████████ ***thereby directly and willfully infringing Rosen's copyrights.*** ████████████

████████████████

██████████████████████████

████████████████████████

████████

### B. eBay's users and eBay "distributed" unauthorized copies of the photographs by posting them on eBay.

17 U.S.C. Section 106(3) provides copyright holders with "the exclusive rights to do and to authorize any of the following: . . . (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . ." In *Hotaling v. Church of Jesus Christ of Latter-Day Saints* (4th Cir. 1997) 118 F.3d 199, 203, the Court held that making a work available for public inspection constitutes "distribution" of the work:

. . . distributing unlawful copies of a copyrighted work does violate the copyright owner's distribution right and, as a result, constitutes copyright infringement. In order to establish "distribution" of a copyrighted work, a

party must show that an unlawful copy was disseminated "to the public." 17 U.S.C. § 106(3); *see National Car Rental v. Computer Associates,* 991 F.2d 426, 434 (8th Cir.1993); 2 Nimmer, § 8.11[A] at 8-137.

The Hotalings assert that the Church's libraries infringed their copyrights by distributing unauthorized copies of their works to the public. The libraries did not record public use of the microfiche. Consequently, the Hotalings concede that the record does not contain any evidence showing specific instances within the limitations period in which the libraries loaned the infringing copies to members of the public. But, they argue that proving the libraries held unauthorized copies in their collections, where they were available to the public, is sufficient to establish distribution within the meaning of the statute.

The Church, on the other hand, argues that holding a work in a library collection that is open to the public constitutes, at most, an offer to distribute the work. In order to establish distribution, the Church argues, the evidence would need to show that a member of the public accepted such an offer.

On this issue, we agree with the Hotalings. When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public. At that point, members of the public can visit the library and use the work. Were this not to be considered distribution within the meaning of § 106(3), a copyright holder would be prejudiced by a library that does not keep records of public use, and the library would unjustly profit by its own omission.

In *Columbia Pictures Industries, Inc. v. Fung* (9th Cir. 2013) 710 F.3d 1020, 1034 *cert. dismissed,* (U.S. 2013) 134 S.Ct. 624 [187 L.Ed.2d 398], the Ninth Circuit expressly held that uploading copyrighted material is an infringing act:

Both uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction.

Here, it is undisputed that Rosen's distribution rights were infringed when eBay's customers uploaded unauthorized copies of his photographs to eBay's website. It is also

undisputed that eBay directly infringed Rosen's right of distribution when it █████

████████████████████████████████████████████

In addition, it is undisputed that the infringing copies were, at a minimum, distributed to Rosen when he located them and downloaded them for purposes of obtaining evidence of Defendants' infringement. As the Court observed in *Atlantic Recording Corp. v. Howell* (D. Ariz. 2008) 554 F.Supp.2d 976, 985, in holding that downloading of an infringing image by an investigator constituted distribution of such unauthorized copies:

> The recording companies' investigator, MediaSentry, did download 12 of the copyrighted sound recordings from Howell's computer. The recording companies assert that they have proven actual distribution for at least those 12 recordings. Amicus curiae, Electronic Frontier Foundation ("EFF"), responds that a copyright owner cannot infringe its own copyright, so its agent also cannot infringe the copyright owner's rights when acting on the owner's behalf. But the recording companies obviously did not intend to license MediaSentry to authorize distribution or to reproduce copies of their works. Rather, "the investigator's assignment was part of [the recording companies'] attempt to stop [Howell's] infringement," and therefore the 12 copies obtained by MediaSentry are unauthorized. *Olan Mills, Inc. v. Linn Photo Co.,* 23 F.3d 1345, 1348 (8th Cir.1994) (citing other instances of "investigative schemes that have been upheld in other copyright enforcement cases"). *See also Leadbetter,* 2007 U.S. Dist. LEXIS 29818, at *12-13, 2007 WL 1217705, at *4 (accepting that distribution to a copyright holder's investigator would be a copyright violation). EFF has not cited a single case to the contrary. The closest they come is a case that states that a copyright owner cannot prove *actual* damages if infringing copies were sold only to the owner's agent. *Higgins v. Detroit Educ. TV. Found.,* 4 F.Supp.2d 701, 705 (E.D.Mich.1998). In this suit, the recording companies have requested statutory damages, not actual damages, and it is well recognized that "[a] plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages.' " *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1194 (9th Cir.2001) (citing Nimmer, supra, § 14.04 (2000)).

████████████████████████████████████████████

████████████████████████████████████████

**Motion for Partial Summary Judgment as to Liability**

**C.    The posting of unauthorized copies of Rosen's works on eBay's website constitutes the "public display" of such photographs.**

17 U.S.C. Section 106(5) provides copyright holders with the exclusive right "in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly."

A work is displayed when one shows a copy of it, either directly or indirectly through the use of some technology. (*Id*. Section 101 ("[T]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially.")

It is clear that the display of a photograph on a website is the public display of the photograph. As the Court held in *Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F.3d 1146, 1159-1160:

> We must now apply these definitions to the facts of this case. A photographic image is a work that is " 'fixed' in a tangible medium of expression," for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). The image stored in the computer is the "copy" of the work for purposes of copyright law. See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 517–18 (9th Cir.1993) (a computer makes a "copy" of a software program when it transfers the program from a third party's computer (or other storage device) into its own memory, because the copy of the program recorded in the computer is "fixed" in a manner that is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration" (quoting 17 U.S.C. § 101)). The computer owner shows a copy "by means of a ... device or process" when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer. 17 U.S.C. § 101. In sum, based on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory. ***There is no dispute that Google's computers store thumbnail versions of Perfect 10's copyrighted images and communicate copies of those thumbnails to***

**Motion for Partial Summary Judgment as to Liability**

**14**

*Google's users. Therefore, Perfect 10 has made a prima facie case that Google's communication of its stored thumbnail images directly infringes Perfect 10's display right*. (Emphasis added.)

See also *Society of Holy Transfiguration Monastery, Inc. v. Gregory* (1ˢᵗ Cir. 2012) 689 F.3d 29, 54-55, in which the Court held that the display of unauthorized copies of translations of religious text on the internet constituted the copying and public display of such works for infringement purposes:

> Here, the Archbishop's verbatim or near-identical versions of the Works constituted a "copy" under the Copyright Act. The translation images were embodied in a medium (here, the computer server and internet) where they could be perceived by, electronically communicated to, and/or reproduced by those who accessed the server. See 17 U.S.C. § 101.
>
> The copies also were embodied or " 'fixed' in a tangible medium of expression," as they were loaded on the Archbishop's computer server and posted to his Website. Id.; see Cartoon Network, 536 F.3d at 129 (to determine whether a work is "fixed" in a medium, court must examine whether the work is "embodied" in the medium); Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1160 (9th Cir.2007) (citing MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 517–18 (9th Cir.1993) and noting that "a computer makes a 'copy' of a software program when it transfers the program from a third party's computer (or other storage device) into its own memory, because the copy of the program recorded in the computer is 'fixed' in a manner that is 'sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration' " (quoting 17 U.S.C. § 101)). The copies likewise satisfy the statute's "transitory duration" requirement, as they were continuously displayed on the Archbishop's Website. See 17 U.S.C. § 101; see also Cartoon Network, 536 F.3d at 129–30 (discussing meaning of Copyright Act's "transitory duration" requirement). Before the Monastery served the Archbishop with the Complaint in January 2008, the St. Isaac Work had been posted on the Website continuously since 2005, and the remaining six Works, since August 2007.
>
> Lastly, the Archbishop "display[ed]" the Works publicly—that is, he "show[ed] a copy of" the Works "by means of a ... device or process," 17 U.S.C. § 101—when he posted the Works on his website. Although the question of whether a computer has "displayed" a copyrighted work may be

a difficult one in other contexts, see, e.g., Perfect 10, 508 F.3d at 1160–62, it is beyond question here that the Archbishop has "displayed" the Works on his website. We need not delineate the outer bounds of the scope of the term "display" where, as here, the fact that the Works were "displayed" on the Archbishop's website is undisputed.

The unauthorized public display of the Photographs, whether through the offer for sale image, Jpeg image files, or on a purchaser's history page, all constituted direct infringement. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-60 (9th Cir. 2007) (finding Google's communication of stored thumbnail images constitutes public display). Further, it does not matter the number of times the page was viewed or whether the public actually saw the work. *Id.*

## IV.   eBay directly infringed Rosen's works.

To prove copyright infringement, a plaintiff must prove both (a) ownership of a valid copyright and (b) infringement of that copyright by invasion of one of the five exclusive rights.[3] (See 17 U.S.C. §§ 106, 501; *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361-63, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991); *Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1472 (9th Cir.), *cert denied* 506 U.S. 869 (1992); *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977).

**A.    eBay directly infringed Rosen's copying and distribution rights** ██

████████████████████████ ████████
███████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

_____

[3] Copyright owners have the exclusive rights: (1) to reproduce the copyrighted work; (2) to prepare derivative works based on the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public; (4) to perform the work publicly; and (5) to display the copyrighted work publicly. (17 U.S.C. § 106

**Motion for Partial Summary Judgment as to Liability**

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 █████████████████████████████████

4

5   **B.    eBay directly infringed Rosen's copying and distribution and public display rights by re-posting unauthorized copies of Rosen's photographs.**

6

7   When eBay intentionally █████████████████████████████████████

8   ███████████████████████████   eBay infringed Rosen's exclusive rights of

9   copying, distribution, and public display.

10   **C.    eBay directly infringed Rosen's distribution rights by making the unauthorized images available for public distribution on its website.**

11   eBay's act of making the images ***available*** for public distribution from eBay's

12   servers to any person that visits the Jpeg urls violates Rosen's distribution rights. (*See*

13   *Hotaling v. Church of Jesus Christ of Latter–Day Saints*, 118 F.3d 199 (4th Cir.1997);

14   *Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F.3d 1146, 1162 (discussing

15   *Hotaling*  and *Napster* but finding "deemed distribution" rule did not apply to Google

16   images because did not reside on Google servers).

17   Here, it is undisputed that the images resided on eBay's publicly available servers

18   and were "distributed" to others without Rosen's permission.

19   **V.    EBAY VICARIOUSLY INFRINGED ROSEN'S WORKS.**

20   "Vicarious copyright liability is an 'outgrowth' of respondeat superior. *Fonovisa*,

21   76 F.3d at 262. In the context of copyright law, vicarious liability extends beyond an

22   employer/employee relationship to cases in which a defendant 'has the right and ability to

23   supervise the infringing activity and also has a direct financial interest in such activities.'

24   *Id*. (*quoting Gershwin*, 443 F.2d at 1162)" (*A&M Records, Inc. v. Napster, Inc.* (9th Cir.

25   2001) 239 F.3d 1004, 1022.)

26

27

28

**A.**     **eBay directly profits from the infringing activity.**

"The essential aspect of the "direct financial benefit" inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." (*Ellison v. Robertson* (9th Cir. 2004) 357 F.3d 1072, 1079.)

The *Napster* case posits that only a *causal* relationship between infringement and profit must be established "regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir.2004). In other words, " the law is clear that to constitute a direct financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw—rather, it need only be 'a' draw." (*Arista Records LLC v. Usenet.com, Inc.* (S.D.N.Y. 2009) 633 F.Supp.2d 124, 157.) "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." (*Ellison v. Robertson* (9th Cir. 2004) 357 F.3d 1072, 1079 (emphasis in original).)

Here, it is undisputed that eBay receives financial benefit directly attributable to the infringing activity via an "insertion fee" and upgrade fees for listings and a "final value fee," as well as fees from Paypal transactions and advertising fees. ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████

In addition, in *Fonovisa, Inc. v. Cherry Auction, Inc.* (9th Cir. 1996) 76 F.3d 259, 263-64, the Ninth Circuit concluded that "the sale of pirated recordings at the Cherry Auction swap meet is a 'draw' for customers," which it held sufficient to state the financial benefit element of the claim for vicarious liability.

**Motion for Partial Summary Judgment as to Liability**

**18**

eBay is equivalent to a giant swap meet at which customers can find pirated items at discount prices. eBay cannot credibly contend that the "draw" of such customers increases its ability to charge for advertising on its website[4] and increase its revenues through the sale of pirated items. Thus, it is undisputed that eBay directly profits from the infringing activity.

### B.  eBay has the right and ability to control the infringing activity.

Courts have viewed this element expansively, finding that service providers have the capacity to control the activities of their users simply by virtue of providing the means to commit direct infringement. *See, e.g., Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1173 (2d Cir.1971); *Polygram Int'l Publ'g Inc. v. Nevada/TIG, Inc.,* 855 F.Supp. 1314, 1328 (D.Mass.1994) (reviewing case law, quoting the legislative history of the Copyright Act, and concluding that a defendant has "control" if they "either actively operate or supervise the operation of the place wherein the performances occur, or control the content of the infringing program").

For example, in *Usenet.com,* the defendants maintained online bulletin boards from which users (with a subscription) could download copyrighted sound recordings. 633 F.Supp.2d at 130–131. As sufficient evidence of the right to control, the court noted that the defendants had a policy that prohibited the sharing of copyrighted content; maintained computer servers that stored and transmitted user-originated content; possessed the ability to filter or block content, including infringing content; and "at times, exercised their right and ability to restrict, suspend, or terminate subscribers," such as by suspending accounts

---

[4] *See Columbia Pictures Industries, Inc. v. Fung* (9th Cir. 2013) 710 F.3d 1020, 1045 *cert. dismissed,* (U.S. 2013) 134 S.Ct. 624 [187 L.Ed.2d 398] (where defendant generated revenue by selling advertising space on his websites and infringing activity served as a "draw" that attracted advertisers, income stream from advertising meets "financial benefit" prong of Section 512(c)(1)(B).

of spammers, limiting the activity of those who used a disproportionate amount of resources, and restricting downloads of pornographic material. *Id*. at 131, 157. And in the swap meet case, although a non-Internet context, the site operator could be held vicariously liable because it "patrolled the premises," "controlled the access of customers to the swap meet area," and "had the right to terminate vendors for any reason whatsoever and through that had the ability to control the activities of vendors on the premises." *Fonovisa,* 76 F.3d at 262.

In *A&M Records, Inc. v. Napster, Inc.* (9th Cir. 2001) 239 F.3d 1004, 1023, the Ninth Circuit enunciated this element as follows:

> The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise. *See Fonovisa,* 76 F.3d at 262 ("Cherry Auction had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises."); *cf. Netcom,* 907 F.Supp. at 1375–76 (indicating that plaintiff raised a genuine issue of fact regarding ability to supervise by presenting evidence that an electronic bulletin board service can suspend subscriber's accounts). Here, plaintiffs have demonstrated that Napster retains the right to control access to its system. Napster has an express reservation of rights policy, stating on its website that it expressly reserves the "right to refuse service and terminate accounts in [its] discretion, including, but not limited to, if Napster believes that user conduct violates applicable law ... or for any reason in Napster's sole discretion, with or without cause."

Where a defendant, such as eBay, controls the means of infringement and has the ability to control the infringing conduct, it is liable for vicarious infringement when it profits from the infringing activity. Thus, in *Disney Enterprises, Inc. v. Hotfile Corp.* (S.D. Fla., Sept. 20, 2013, 11-20427-CIV) 2013 WL 6336286, the district court found Hotfile liable for vicarious infringement when it mandated user registration and hosted the infringing material on its own system. The court reasoned:

> The analysis here, based on precedent, is straightforward. Hotfile controls the means of infringement by among other things mandating user registration and hosting the infringing materials on its own servers. *Cf.*

*Amazon.com, Inc.,* 508 F.3d at 1174 (distinguishing *Napster,* 239 F.3d at 1023–24). Moreover, Hotfile has a stated policy that permits it to control user activity (and, as in *Fonovisa,* to exclude users) and maintains that it has exercised that control in policing content. Hotfile has also adopted technology that it claims is effective in filtering and targeting infringing works. These actions, which benefit Hotfile in an assessment of direct liability, belie Hotfile's argument that it lacks control because it has no search function and no way to identify or remove infringing files. It is also clear that prior to the filing of the Complaint, Hotfile failed to properly exercise its control in light of the number of users who were blatantly infringing and the estimates of the Studios' experts regarding the prevalence of protected content available for download. Accordingly, on this record, the Studios have made a case for vicarious liability, and summary judgment is entered in their favor.

eBay does not dispute that has the right and ability to prevent its users from infringing Rosen's photographs. Indeed, the user agreements it requires its users to agree to specifically authorize eBay to terminate such users from using the eBay websites. eBay also has the right and ability to control such activity by virtue of the fact that it can suspend sellers and remove/disable infringing materials and even prevent items from being listed in the first place.

eBay's Gary Briggs, the Senior Vice President of marketing for eBay-North America has testified under oath that there is nothing on eBay's website that is not there "at eBay's choice and discretion."

THE COURT:  Well, is there anything on this site that isn't at eBay's choice and discretion?

THE WITNESS:  No, sir. (Trial Transcript from *Tiffany v. eBay*, Case No. 04 CV 04607 (S.D.N.Y), , November 15, 2007, page 464, lines 10-12, Exhibit 4 to Dion-Kindem Decl.)

eBay's Rule 30(b)(6) designee, Cara Baldwin, testified at her deposition that ████

███████████████████████████████████████████

███████████████████████████████ eBay also has numerous technologies that

allow it to seek out and remove items that are prohibited or that it deems infringing or

**Motion for Partial Summary Judgment as to Liability**

potentially infringing. It also has capabilities to fully block users from even posting items or that keep suspected items from going online until these items are reviewed by eBay Trust and Safety personnel and removed if warranted. To that end, eBay has admitted that it does police its website in order to remove items that are prohibited. (See Exhibit 4 to Dion-Kindem Decl.)

eBay's policies and controls dictated the resolution and where and how the photographs would be posted. Indeed, eBay *requires* its users to post large photographs of the items they were selling. (Rosen Decl., ¶ 17.) eBay had every practical ability to control the ongoing infringement, particularly after learning of its exact location on their server through the DMCA notices.

In *Tiffany (NJ) Inc. v. eBay, Inc.* (S.D.N.Y. 2008) 576 F.Supp.2d 463, 506-07 *aff'd in part, rev'd in part,* (2d Cir. 2010) 600 F.3d 93, the district court made the factual finding, which has collateral estoppel effect on eBay in this case,[5] that eBay had direct control over the means of infringement of its users. The Court found:

> . . . [I]n examining all of the facts that were proved at trial, ***the Court finds by a preponderance of the evidence that eBay exercises sufficient control and monitoring over its website such that it fits squarely within the Fonovisa and Hard Rock Cafe line of cases.***
>
> In reaching this conclusion, the Court first notes that while eBay itself does not sell or possess the items available on its website, eBay retains significant control over the transactions conducted through eBay. By providing the software to set up the listings and store listing information on its servers, eBay supplies the necessary marketplace for the sale of counterfeit goods. eBay takes an active role in supplying customers—namely, registered buyers—to registered sellers, and actively facilitates transactions between them.

---

[5] "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim. (*Taylor v. Sturgell* (2008) 553 U.S. 880, 892 [128 S.Ct. 2161, 2171, 171 L.Ed.2d 155].)

. . . Third, eBay profits from the listing of items and successful completion of sales, through insertion fees and final value fees. (Briggs Decl. ¶ 20; Pl.'s Ex. 1151; Tr. 404:24–405:12.) eBay also profits by taking an additional percentage of the sales price if the transaction is consummated through PayPal. (Pl.'s Ex. 1156.)

Fourth, eBay maintains significant control over the listings on its website. Certain categories of items are entirely barred from the website, including drugs, firearms, and alcohol products. (Pl.'s Ex. 4.) The fraud engine screens listings and removes items that use specific terms in the listing description, for example, "counterfeit" or "fake." (Chestnut Decl. ¶ 4; Tr. 587:19–588:10.) Through eBay's User Agreements, users are required to abide by the terms of use, and eBay retains the right to suspend those users who fail to do so. (Chesnut Decl. ¶ 47; PTO at 7.)

Finally, to the extent eBay styles itself as a classified ad service, eBay's own witnesses admitted that eBay maintains a classified ad service separate and apart from the eBay listings that are at issue in this action. (Tr. 397: 10–16.)

Accordingly, the Court concludes that eBay is analogous to a flea market like those in *Hard Rock Cafe* and *Fonovisa,* and that it is inappropriate to compare eBay to an online classified ad service. *See also Hendrickson v. eBay Inc.,* 165 F.Supp.2d 1082, 1084 n. 2 (C.D.Cal.2001) (rejecting eBay's characterization of itself as an online venue publishing 'electronic classified ads,' and finding that "eBay's Internet business features elements of both traditional swap meets—where sellers pay for use of space to display goods—and traditional auction houses where goods are sold in a highest bid process"). . . . (Emphasis added.)

eBay is collaterally estopped by this express factual finding that it exercised sufficient "control" over the means of infringement for purposes of the second prong of Rosen's vicarious liability claim.

## VI.   eBay CONTRIBUTORILY INFRINGED ROSEN'S WORKS.

Contributory infringement originated in tort and "stems from the notion that one who directly contributes to another's infringement should be held accountable." (*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).) Thus, the traditional statement of the doctrine, adopted in the Ninth Circuit, is that "one who, with

knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." (*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), *cited in Fonovisa, Inc.*, 76 F.3d at 264. In other words, "liability exists if the defendant engages in personal conduct that encourages or assists the infringement." (*A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) ("Napster II") (internal quotations omitted).

In *Ellison*, the Ninth Circuit held that AOL could be found to have materially contributed to copyright infringement by storing infringing copies of the plaintiff's works on its USENET groups and providing the groups' users with access to those copies. (*Id.* at 1078.)

## A.   eBay's users' infringement of Rosen's works.

Here, eBay's users directly infringed Rosen's copyrights by causing copies of unauthorized copies of such photographs to be made on eBay's and the user's computers (in ram and on hard drives) to view them while accessing eBay's websites. (*See Sega Enterprises Ltd. v. Maphia*, 948 F. Supp. 923, 931-32 (N.D. Cal. 1996) (copies made each time Sega computer program files uploaded to or downloaded from computer bulletin board service); *Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993) (uploading files containing digitized copies of plaintiff's copyrighted photographs onto computer bulletin board service constituted unauthorized reproduction); 2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 8.08[A][1] ("input of a work into a computer results in the making of a copy, and hence . . . such unauthorized input infringes the copyright owner's reproduction right"). This was also a violation of Rosen's right to publicly display the photographs.

## B.   eBay's contributory infringement.

In the internet context, where "a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement." *Napster,* 239 F.3d

**Motion for Partial Summary Judgment as to Liability**

at 1022. For example, in *Napster,* the design and distribution of file-sharing software to facilitate users' exchange of copyrighted music files was found to be unlawful provision of "site and facilities," such as to qualify as a material contribution to copyright infringement. *Id.* at 1021. Computer system operators can be liable where, knowing that specific infringing materials are present on their systems and able to take "simple measures" to limit infringement, they continue to provide access to the infringing materials. (*Perfect 10 v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir.2007); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) (server continuing to store infringing images as material contribution for contributory infringement).)

Here, the evidence shows that after eBay received notice of the infringing activities and images, it failed to expeditiously remove the infringing listings and image files from its system, in some cases willfully refused to disable the infringing listings that used unauthorized copies of Rosen's works, and in other cases willfully reposted the infringing listings and images.

## VII.  CONCLUSION.

Because the undisputed facts establish eBay's liability for copyright infringement, this Court should grant Rosen's motion and enter an order adjudicating such liability as to each of Rosen's Photographs.

Dated: September 5, 2014            THE DION-KINDEM LAW FIRM


BY:    *s/ PETER R. DION-KINDEM*
            PETER R. DION-KINDEM, P.C.
            PETER R. DION-KINDEM
            Attorneys for Plaintiff Barry Rosen