R. BRUCE RICH (Admitted *Pro Hac Vice*)
Email: bruce.rich@weil.com
RANDI W. SINGER (Admitted *Pro Hac Vice*)
Email: randi.singer@weil.com
OLIVIA J. GREER (Admitted *Pro Hac Vice*)
Email: olivia.greer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant
EBAY INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>EBAY, INC., and DOES 1 through 10,<br><br>    Defendants. | Case No. CV13-06801 MWF(Ex)<br><br>**EBAY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Honorable Michael W. Fitzgerald**<br><br>Date:   November 3, 2014<br>Time:  10:00 a.m.<br>Courtroom:   1600 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

### TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, November 3, 2014 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 1600 of the above-entitled Court, located at 312 North Spring Street Los Angeles, CA 90012-4701, Defendant eBay Inc. ("eBay") will move the Court for summary judgment in its favor, dismissing Plaintiff's Second Amended Complaint as a matter of law.  The motion is filed pursuant to Federal Rule of Civil Procedure 56(a) and the Court's Order Granting Third Joint Stipulation to Modify Scheduling Order (Dkt. No. 43).

This motion is based on the below Memorandum of Points and Authorities, eBay's Proposed Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Randi W. Singer, the Declaration of Larry Taylor, the Declaration of Randy Spickler, the Declaration of Cara Baldwin, and the Declaration of Lynda Talgo, the exhibits attached to those declarations, the complete record of this action, and matters of which the Court may take judicial notice, all of which establish that eBay is entitled to judgment as a matter of law.

Dated:  September 5, 2014

WEIL, GOTSHAL & MANGES LLP

By:  _____*/s/ R. Bruce Rich*_____
R. Bruce Rich

Attorneys for Defendant
EBAY INC.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................. 1

SUMMARY OF UNDISPUTED FACTS ............................................... 1

    EBAY AND ITS COPYRIGHT (AND OTHER INTELLECTUAL
    PROPERTY) COMPLIANCE PROGRAMS ................................ 1

    A.    eBay's Online Marketplace .................................................. 1

    B.    Creation of Listings on eBay .............................................. 2

    C.    eBay's Copyright and Other Intellectual Property Compliance
          Programs ........................................................................... 3

    ROSEN, HIS HISTORY WITH EBAY, AND HIS ALLEGATIONS
        OF COPYRIGHT INFRINGEMENT ................................... 6

ARGUMENT .......................................................................................... 8

I.    EBAY HAS NO LIABILITY FOR 8X10 PRINTS POSTED BY
    SELLERS AND TAKEN DOWN THROUGH THE VERO PROCESS ...... 9

    A.    eBay Did Not Directly Infringe Plaintiff's Copyrights in the
          8x10 Prints Because the Listings Were Controlled by Third-
          Party Sellers .................................................................... 10

    B.    eBay Has No Liability to Plaintiff Because It Fully Complied
          With DMCA Notice-and-Takedown Procedures ................. 12

        1.    *eBay Expeditiously Took Down the Listings for the 8x10
               Prints and Disabled Access to the Images* ................. 13

        2.    *eBay Complies With All Other Safe-Harbor Requirements* ..... 15

    C.    eBay Has No Secondary Liability Because It Neither
          Contributorily nor Vicariously Infringed Plaintiff's Copyrights ........ 16

II.    EBAY IS NOT LIABLE FOR USE OF THE MAGAZINE PHOTOS
    IN LISTINGS FOR RESALE OF COPIES OF PUBLISHED
    MAGAZINES .......................................................................... 17

III.    THERE IS NO RECORD EVIDENCE TO SUPPORT PLAINTIFF'S
    ALLEGATION THAT EBAY "LICENSED" HIS IMAGES TO
    WORTHPOINT.COM .............................................................. 25

CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
   562 F.3d 630, 639-40 (4th Cir. 2009)...........................................................21, 22

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................................17

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014) .................................................................................21

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006) ...............................................................................24

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) .....................................................................19, 21, 22, 23

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ...............................................................................10

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ............................................................................12

*Field v. Google, Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................11

*Fox Broad. Co. v. Dish Network LLC*,
   747 F.3d 1060 (9th Cir. 2013)......................................................................10, 11

*Harper & Row Pubs., Inc. v. Nation Enters.*,
   471 U.S. 539, 566 (1985) ...................................................................................19

*Hendrickson v. eBay, Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001).........................................................12, 13

*Hendrix v. Novartis Pharm. Corp.*,
   975 F. Supp. 2d 1100 (C.D. Cal. 2013)................................................................8

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2002)......................................................................*passim*

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  133 S. Ct. 1351, 1362 (2013) ............................................................. 24

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ............................................................... 22

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .............................................. 18, 21, 22

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) ........................................ 11, 16

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. 11-cv-7098 AHM, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ......... 10, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .......................................................... 16, 17

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*,
  907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................... 11

*Rosen v. Hosting Servs., Inc.*,
  771 F. Supp. 2d 1219 (C.D. Cal. 2010) ................................................ 16

*Sega Enters. v. MAPHIA*,
  948 F. Supp. 923 (N.D. Cal. 1996) ...................................................... 11

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ............................................................. 24

*Sofa Ent'mt, Inc. v. Dodger Prods., Inc.*,
  782 F. Supp. 2d 898 (C.D. Cal. 2010) ................................................. 19

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ..................................................................... 18, 22

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) ............................................................ 9, 25

*Stoner v. eBay Inc.*,
  No. 305666, 2000 WL 1705637 (Cal. Super. Ct. Nov. 1, 2000) ....................... 12

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ................................................................. 12

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ...................................................................... 15, 16

*Viacom Int'l v. YouTube, Inc.*
    676 F.3d 19, 38 (2d Cir. 2012) ........................................................................ 15

*White v. West Publ'g Corp.*,
    --- F. Supp. 2d ---, No. 12 Civ. 1340 JSR, 2014 WL 3057885 (S.D.N.Y. July 3,
    2014) .................................................................................................................. 21

**Statutes**

17 U.S.C § 107........................................................................................... 19, 20, 24

17 U.S.C. § 107(1) ............................................................................................... 19

17 U.S.C. § 107(2) ............................................................................................... 22

17 U.S.C. § 107(3) ............................................................................................... 22

17 U.S.C. § 107(4) ............................................................................................... 23

17 U.S.C. § 109(a) ............................................................................................... 18

17 U.S.C. § 512...................................................................................................... 4

17 U.S.C. § 512(i)(1)(A)................................................................................. 15, 16

17 U.S.C. § 512(i)(1)(B)................................................................................. 15, 16

17 U.S.C. § 512(c) ...................................................................................... 12, 13, 15

17 U.S.C. § 512(c)(1)(A)..................................................................................... 13

17 U.S.C. § 512(c)(1)(B)..................................................................................... 15

17 U.S.C. § 512(c)(1)(C)................................................................................ 13, 14

17 U.S.C. § 512(c)(2) ..................................................................................... 15, 16

17 U.S.C. § 512(c)(3) ........................................................................................... 4

17 U.S.C. § 512(g)(2)(c)........................................................................................ 5

1

**Other Authorities**

37 C.F.R. § 202.3(b)(4)(i)..............................................................................6

Fed. R. Civ. P. 56(a) .....................................................................................8

Fed. R. Evid. 801-802.................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Defendant eBay Inc. ("eBay") submits this Memorandum of Points and

3

Authorities in support of its motion for summary judgment.

4

## INTRODUCTION

5

This lawsuit represents a futile attempt by a serial litigant to ascribe

6

copyright infringement liability to entirely lawful activities undertaken by an entity,

7

eBay, that has been at the forefront of copyright compliance in Internet commerce.

8

Plaintiff Barry Rosen seeks to block the concededly lawful resale on the eBay

9

website of copies of magazines containing licensed versions of his photographs and

10

thereby effectively to eliminate any legitimate secondary market for merchandise

11

incidentally displaying his work as part of the transaction.  Any such uses of

12

Rosen's works are classic fair uses under copyright law.  Equally impermissibly,

13

Rosen seeks to upset the careful balance that Congress and the courts have struck

14

between the rights and obligations of copyright owners and commerce-enabling

15

platforms such as eBay by the "safe harbor" provisions of the Digital Millennium

16

Copyright Act ("DMCA").   Rosen contorts the plain requirements of the apposite

17

DMCA notice-and-takedown protocols, to which eBay has scrupulously adhered,

18

by nonsensically construing those protocols as though they imposed further

19

obligations on eBay that neither the law nor the fact record support.  The complete

20

lack of legal support for any of the claims raised in the Second Amended Complaint

21

warrants dismissal on summary judgment of those claims.

22

## SUMMARY OF UNDISPUTED FACTS

23

### EBAY AND ITS COPYRIGHT (AND OTHER INTELLECTUAL PROPERTY) COMPLIANCE PROGRAMS

24

25

### A.    eBay's Online Marketplace

26

Founded in 1995, and now with some 149 million active users globally, eBay

27

is one of the world's largest online marketplaces, connecting a diverse, global

28

community of buyers and sellers, both individuals and small businesses.  *See*

eBay's Proposed Statement of Uncontroverted Facts and Conclusions of Law, filed Sept. 5, 2014 ("56.1") ¶¶ 9-12.   The range of goods and services offered for sale on eBay's website, www.ebay.com, is virtually unlimited.   Its website affords access to new merchandise at competitive prices and provides a vibrant trading platform for the resale of used merchandise.  eBay does not itself buy or sell merchandise on its website; instead, third parties offer goods or services for sale on the eBay website.  *Id.* ¶ 15.  It is the legal and contractual responsibility of such users to comply with appropriate laws pertaining to sales of their items, including respecting third-party intellectual property rights in items including books, CDs, DVDs, photographs, artwork, and jewelry.   eBay proactively enforces those obligations through a variety of means.  In particular, eBay: ensures that all eBay sellers register with eBay and agree to the terms of the eBay User Agreement; educates users; enforces sanctions against users who violate the eBay User Agreement; suspends repeat offenders;[1] and actively works with law enforcement where appropriate to identify and root out "bad" sellers.  *Id.* ¶¶ 23-35.  It is eBay's abiding philosophy that maintaining a clean, "well-lit" marketplace and thereby earning the continued good will of its users is critical to its commercial success.  *Id.* ¶ 19.  eBay invests enormous resources towards attaining that objective, spending millions of dollars annually on trust and safety initiatives, and deploying hundreds of employees dedicated to those activities.  *Id.* ¶¶ 20-22.

## B.    Creation of Listings on eBay

To enable its online marketplace, eBay provides tools and technology that allow third-party sellers to create listings and buyers to view those listings.  56.1 ¶¶57, 63.  When sellers create listings on eBay.com, they generate a title,

---

[1] eBay has suspended tens of thousands of repeat offenders in various ways depending on the frequency and severity of their violations, ranging from temporary restrictions on the number of items a seller may list at any given time to permanent suspension of the seller's account.  56.1 ¶¶ 32-35, 116.

description, and price for each item, along with information on payment, shipping, and returns.  Id. ¶ 62.  eBay also requires sellers to include at least one image in every listing, so that buyers can better understand and evaluate the items listed for sale.  Id. ¶ 66.  Sellers may incorporate images in their listings either by uploading images to eBay's servers, or by referencing images that are stored on other Internet websites.  Id. ¶ 69.  eBay does not create a separate market for those images disassociated from the merchandise they depict.  Id. ¶ 66.  While eBay's search tools allow users to search for listings by entering text into the "Search" box on eBay's website, users cannot search directly for image files.  Id. ¶ 75.

Once initiated by a seller, both the creation of a listing and the uploading of an image are fully automated.  Id. ¶ 61.  When a seller uploads or references such an image, eBay's back-end infrastructure automatically stores a copy of the image for use in connection with the listing.  Id. ¶ 70.  Image files are stored on eBay's servers using an automatically-generated alphanumeric identifier (e.g., http://i.ebayimg.com/00/s/MTIwMFgxNjAw/z/QfsAAOSwRLZT1vS3/$_57.jpg). 56.1 ¶¶ 71-73.  The URL cannot be reconstructed without knowledge of eBay's non-public algorithms.  Id. ¶ 72.  eBay's systems automatically populate listings pages with the appropriate image file.  Id. ¶ 74.  The images stored on eBay's servers are not permanent: each has a default expiration date (generally 90 days after a listing ends).  Id. ¶¶ 76-77. Given that eBay processes some 22 million uploaded images per day, examination and review of each image by eBay's employees is simply not feasible.  Id. ¶¶ 17, 59.

## C.   eBay's Copyright and Other Intellectual Property Compliance Programs

eBay facilitates trading in vast numbers of goods and services across the widest possible range of consumer interest.  eBay has 149 million active users worldwide.  56.1 ¶ 10.  At any given time, there are some 700 million active listings on eBay.  Id. ¶ 11.  eBay cannot generally determine whether items offered for sale

on its website are infringing, both because it does not take ownership or custody of items sold and because eBay does not have familiarity with the products offered by the thousands of rights owners whose merchandise is sold through the eBay website. *Id.* ¶ 17. U.S. copyright law sensibly protects the viability of eBay's commerce-enabling platform by conferring liability only where the infringement in question is both *known* to eBay and *permitted to persist*. Acting scrupulously in compliance with that governing law—including the applicable provisions of the DMCA, 17 U.S.C. § 512—eBay has put in place a robust "notice-and-takedown" system designed to enable rights owners who believe that listings on eBay violate their intellectual property rights to notify eBay promptly and easily. 56.1 ¶¶ 20, 36-41. The principal (though not sole) means for providing such notice is through eBay's Verified Rights Owner ("VeRO") Program. *Id.* ¶ 39. Intellectual property owners who have a good faith belief that their rights have been violated can submit a Notice of Claimed Infringement ("NOCI"); copyright owners can also provide eBay's designated agent with comparable information, by mail, e-mail, fax, or through convenient reporting tools on eBay's website. *Id.* ¶ 45.

When eBay receives a NOCI or other appropriate notice that contains the requisite information, *see* 17 U.S.C. § 512(c)(3), it expeditiously takes down or disables access to the complained-of listing(s). 56.1 ¶¶ 47-48. eBay then sends an email to the seller and all bidders notifying them of the action taken; refunds to the seller any fees associated with the listing; explains to the seller why the rights owner removed the listing; directs the seller to eBay's relevant policies or guidelines; and warns the seller that relisting the same or similar item could result in suspension of the seller's account. *Id.* ¶¶ 50-52. Once a given listing has been taken down, it is not included in the results of searches on the eBay website, users browsing the website will no longer be able to view it, and any attempt to revisit a listing that has been taken down using a saved copy of its URL (such as through a

web browser "bookmark") will return only a notice that the link is "broken" or that the listing is no longer available. *Id.* ¶ 53.

When eBay takes down a listing, it eliminates any practical way to access image files associated with that listing. *See id.* ¶¶ 78-79.  For a number of legitimate reasons, eBay's systems provide for the temporary retention of the image files formerly associated with taken-down listings. *Id.* ¶ 54.  These include that the DMCA requires a service provider such as eBay to restore removed content (including images) upon receipt of a valid DMCA counter-notice, *See* 17 U.S.C. § 512(g)(2)(c); 56.1 ¶ 54.  In addition, removal of an image from eBay's servers is permanent and all-encompassing, so a removed image could no longer appear in non-infringing listings (*e.g.*, a complaining rights holder's own listings if they use the same image)—a plainly unwarranted result.  56.1 ¶¶ 55-56.  While Rosen seizes on the remote technical possibility that someone intent on locating an image from a listing that has been taken down prior to its scheduled deletion *might* be able to do so, the record is barren of even a single instance of that occurring with respect to Rosen's images—apart, perhaps, from Rosen's own self-interested, litigation-inspired efforts at record-building.

This failure of proof that eBay users—or anyone at all other, perhaps, than Rosen—continued to access server copies of images after their associated listings were taken down is entirely unsurprising.  For one, the activity would be purposeless insofar as the listings with which such images had been associated are no longer active.  For another, there would be no way for any user to view them unless that user had gone to the trouble of copying and saving each image's own unique URL from a web browser while the listing was active. *Id.* ¶¶ 78-79.  As noted, apart from Plaintiff's own evidence-building exercises, there is no evidence whatsoever that actual users engage in such activity.

## ROSEN, HIS HISTORY WITH EBAY, AND HIS ALLEGATIONS OF COPYRIGHT INFRINGEMENT

According to the Second Amended Complaint, Rosen is a photographer, SAC ¶ 7, though he has resolutely refused to answer questions or provide any additional information about any recent professional work:

Q: Do you currently work as a photographer?

A: I don't really know how to answer that question.

56.1 ¶ 2 (quoting Rosen Deposition 11:12-14).  The record reveals instead Rosen's primary devotion to threatening and bringing litigation:  Since 2005, Plaintiff has filed forty copyright infringement lawsuits in this district alone, indiscriminately targeting defendants ranging from e-commerce companies like eBay and Amazon.com, to web hosting companies like Hostway and Netfronts, to numerous individuals.  56.1 ¶ 5.  Whereas Rosen has had a modicum of success against bad actors and individual sellers, he has misguidedly haled into court as well entities such as eBay against which he has no valid legal claims whatsoever.  *See id.* ¶¶ 6-8.

Rosen alleges that some 39 of his images—all photographs of female models or celebrities taken between ten and twenty years ago—have been infringed in two primary ways.[2]  The first category of alleged infringements comprises approximately 20 listings on the eBay website, offering for sale 8x10 prints of 17 of Rosen's photographs (or alleged unauthorized derivative works therefrom) (the "8x10 Prints").  The second category comprises approximately 40 listings on the

---

[2] Rosen claims to hold valid copyright registrations for the photographs at issue and alleges that their uses were unauthorized.  Although eBay is not here seeking summary judgment on this issue, Rosen will have difficulty demonstrating either proposition.  First, Rosen has failed to produce evidence that most of his group registrations pertain to any of the particular photographs at issue.  The validity of these registrations is also questionable to the extent they purport to cover works not "included in a single unit of publication," as required by 37 C.F.R. § 202.3(b)(4)(i).  In the case of allegedly *unpublished* works, Rosen's claim that he never distributed any copies of the photographs leaves unexplained how third-party sellers might have obtained copies of these photographs *signed by their subjects*.  56.1 ¶ 109 (citing Rosen deposition).  Resolution of these threshold issues is unnecessary here given the other fatal shortcomings of Rosen's case that are ripe for disposition now.

1    eBay website offering for sale physical copies of magazine back issues containing

2    one or more of a set of 22 of Rosen's photographs (the "Magazine Photos").  The

3    chart attached hereto as Appendix A sets out which paragraphs of the Second

4    Amended Complaint pertain to the 8x10 Prints and which to the Magazine Photos.

5         With respect to the 8x10 Prints, *see* App'x A, Rosen admits that eBay took

6    down the listings in question after he submitted NOCIs alleging copyright

7    infringement.  *See* SAC ¶¶ 15-17, 86, 87, 92-112, 115, 118.  Nevertheless, Rosen

8    maintains that eBay infringed his copyrights by failing to purge all copies of the

9    8x10 Prints stored on eBay's servers.  But Rosen has adduced no evidence that the

10   server copies of the 8x10 Prints were accessed by anyone other than possibly

11   himself and concedes that he has not suffered any form of injury from this

12   temporary retention out of public view.  At that, Rosen testified that he was able to

13   access these images either because he had previously saved the images on his own

14   computer, or by searching third-party websites such as Google—thus placing in

15   doubt whether Rosen actually accessed server copies of the 8x10 prints after their

16   listings were taken down, a matter as to which he neither maintained nor produced

17   any records.  *See* 56.1 ¶ 96.

18        Rosen further complains of eBay's failure to take down listings in which the

19   item for sale was a physical copy of a back issue of a magazine containing one or

20   more of the Magazine Photos.  *See* App'x A.  Notably, Rosen acknowledges that he

21   authorized the magazines' use of his photos in the first instance. 56.1 ¶ 100.  Rosen

22   does not claim—nor could he—that copies of the magazines cannot be resold on

23   eBay.  Nor can Rosen cite to any lost market opportunities for the Magazine Photos

24   resulting from the offers of resale of these outdated magazines and, tellingly, he

25   "does not contend that he has sustained any 'actual damages' in connection with the

26   allegations set out in the SAC."  *Id.* ¶ 104.  While Rosen appears to object to eBay's

27   requirement that sellers include in their listings an image of the item for sale, the

28   record makes clear that this practice is necessary to ensure that buyers can make

1   informed purchase decisions.  *See* 56.1 ¶ 66.[3]  A rule holding eBay potentially

2   liable for purported "infringements" that simply depict legitimately-purchased, non-

3   infringing items offered for resale would inject crippling uncertainty into the lawful

4   secondary market for countless magazines, posters, printed photographs, drawings,

5   paintings, and other works sold online.  *See id.* ¶ 67.

6        As a tag-along to his other claims, Rosen seeks to hold eBay liable for

7   alleged infringements of three of his photographs on an unaffiliated third-party

8   website, Worthpoint.com, based upon wholly-unsupported speculation that eBay

9   must have improperly "licensed" his images to Worthpoint   *See* SAC ¶ 117-20.  In

10  fact, the uncontested factual record shows that eBay has no license with

11  Worthpoint, or with any third party, that would authorize Worthpoint to use or

12  display images posted by eBay sellers.  *See infra* Point III.

13                          **<u>ARGUMENT</u>**

14       Summary judgment is appropriate when "there is no genuine dispute as to

15  any material fact and the movant is entitled to judgment as a matter of law."  Fed.

16  R. Civ. P. 56(a).  Where, as here, the non-moving party bears the burden of proof,

17  "the moving party need only prove that there is an absence of evidence to support

18  the non-moving party's case."  *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d

19  1100, 1104 (C.D. Cal. 2013) (Fitzgerald, J.) (quoting *In re Oracle Corp. Sec. Litig.*,

20  627 F.3d 376, 387 (9th Cir. 2010)).  "The burden then shifts to the non-moving

21  party, which may not simply rely on allegations in its pleadings but must identify

22  specific facts raising a genuine dispute that will be material at trial."  *Id.* (citing

23  Fed. R. Civ. P. 56(c)).  Although the Court "draws all inferences" from the facts "in

24  the light most favorable to the nonmoving party . . . [c]onclusory, speculative

25

26  _____

[3] The requirement to include an image of the item for sale protects not only buyers
27  but also rights owners such as Rosen.  If sellers did *not* post images of their items,
then rights owners would have great difficulty distinguishing items that infringe
28  their rights from those that do not.

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  All evidence presented "must be admissible."  *Id.*

## I.   EBAY HAS NO LIABILITY FOR 8X10 PRINTS POSTED BY SELLERS AND TAKEN DOWN THROUGH THE VERO PROCESS

Rosen alleges that the listings on the eBay website for the 8x10 Prints infringed his copyrights.  *See* App'x A (citing SAC).  Even assuming for the purposes of summary judgment that Rosen owns copyrights in these images and has secured valid copyright registrations for them, and that the 8x10 Prints offered for sale on eBay were unauthorized copies of his works (none of which is clearly established in the record), Rosen's infringement claims against eBay as to these images still warrant dismissal because Rosen has failed to establish the necessary elements for either a direct or secondary infringement claim, let alone that eBay has failed to meet the safe harbor protections of the DMCA.

Rosen has no claim against eBay for *direct* infringement of his copyrights because eBay itself did not directly cause the copying of unauthorized prints. Rather, as discussed in Part A below, any such copying was caused and controlled by third-party sellers, who used eBay's automated tools and services to upload digital copies of allegedly unauthorized prints in violation of eBay's policies.  In any event, as detailed in Part B below, eBay has no liability towards Rosen because it timely removed all of the complained-of listings pursuant to the governing provisions of the DMCA.  Finally, as discussed in Point C, while the Court need not reach the issue, separate and apart from its compliance with the DMCA, eBay's operations and Rosen-specific conduct make plain that it has no liability to Rosen under the doctrines of contributory or vicarious infringement.

**A.  eBay Did Not Directly Infringe Plaintiff's Copyrights in the 8x10 Prints Because the Listings Were Controlled by Third-Party Sellers**

Rosen cannot establish a claim for direct copyright infringement against eBay unless he proves that eBay itself caused the copying of his photographs.  *See Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2013) ("Infringement of the reproduction right requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying.") (italics in original, internal citations omitted).  *Fox* unambiguously affirms that a direct infringement claim requires direct causation—what other courts have referred to as "volitional conduct" —the purpose of which is "to identify the actor (or actors) whose 'conduct has been so significant and important a cause that [he or she] should be legally responsible.'"  *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 132 (2d Cir. 2008) (quoting W. Page Keeton *et al.*, Prosser & Keeton on Torts § 42, at 273 (5th ed. 1984)) (alteration in the original); *accord Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-7098 AHM, 2013 WL 2109963, at *5-7 (C.D. Cal. Mar. 8, 2013) ("[The] requirement of 'volitional conduct' . . . focuse[s] the inquiry on whether the defendant directly caused the infringement to take place.").

Here, it is undisputed that the third-party sellers who created the listings—not eBay or any of its employees—directly caused the copying by uploading digital images of the 8x10 Prints.  *See supra* at 2-3.  Every step in the process of creating the listings at issue, including creating copies of images to accompany those listings, was automated and was initiated at the direction of users, never at the direction of eBay itself.  *See id.*  The server copies created by eBay's automated systems serve the sole purpose of enabling the images provided by these third-party sellers to be viewed by prospective buyers at the time they review the sellers' listings, in formats consistent with the website architecture.  56.1 ¶¶ 16, 107.  Far from directly causing these alleged infringements, eBay expressly prohibits sellers from using images that infringe the copyrights of others.  *Id.* ¶¶ 25, 28.

1    It is well established in this Circuit that similar uses of a defendant's
2  automated systems by third parties to infringe copyrights do not render the
3  defendant directly liable for infringement.  In *Fox*, the Ninth Circuit explained:

4    [O]perating a system used to make copies at the user's
5    command does not mean that the system operator, rather
     than the user, caused copies to be made.  Here,
6    [defendant's] program creates the copy only in response
     to the user's command.  Therefore, the district court did
7    not err in concluding that the user, not [defendant], makes
8    the copy.

9  747 F.3d at 1067; *see also Giganews*, 2013 WL 2109963, at *7 (finding no direct
10 infringement where defendants "simply programmed their servers to automatically
11 copy, distribute, and display content, including infringing content uploaded by . . .
12 users"); *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) ("The
13 automated, non-volitional conduct by [defendant] in response to a user's request
14 does not constitute direct infringement under the Copyright Act."); *Perfect 10, Inc.*
15 *v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1168 (C.D. Cal. 2002) (holding
16 that defendants "must *actively* engage in one of the activities recognized in the
17 Copyright Act" to be held directly liable).

18    Furthermore, the mere fact that Rosen notified eBay of allegedly infringing
19 activity by certain sellers does not make eBay a direct infringer.  "A participant in
20 the chain of events that ultimately allows viewers to obtain infringed material does
21 not become the 'direct cause' of the copying merely because he learns of it."
22 *Giganews*, 2013 WL 2109963, at *8.  Rather, the analysis still hinges on "*who*
23 actually caused the infringement."  *Id.* at *9; *see also Sega Enters. v. MAPHIA*, 948
24 F. Supp. 923, 932 (N.D. Cal. 1996) (holding that defendant's knowledge of its
25 users' infringement had no bearing on whether defendant directly caused copying to
26 occur); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F. Supp.
27 1361, 1372 (N.D. Cal. 1995) (same).  Accordingly, eBay is entitled to summary
28 judgment dismissing any claims of direct infringement.

**B.    eBay Has No Liability to Plaintiff Because It Fully Complied With DMCA Notice-and-Takedown Procedures**

Concerned about the "difficult and controversial questions" raised by the spectre of too stringently applying one or more branches of copyright infringement law to Internet commerce facilitators like eBay, Congress sought to provide "greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing legislative history).  Its principal tool for doing so is found in Title II of the DMCA, which created a series of "safe harbors" for prescribed activities undertaken by service providers such as eBay.  *See id.* at 1076-77.  The most pertinent of the DMCA safe harbor provisions for purposes of this action is found in 17 U.S.C. § 512(c), which, provided certain qualifying conditions have been met, affords protection to a service provider's "storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  Under this safe harbor, an online service provider can avoid liability arising out of the sorts of claims made here by implementing the notice-and-takedown procedures prescribed in the statute.

eBay's VeRO Program was designed to meet these statutory requirements. 56.1 ¶ 41.  Previous reviewing courts have acknowledged eBay's scrupulous adherence to the law—indeed, its devotion of extraordinary resources to avert infringements of all types on its website.  *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 100 (2d Cir. 2010) (recognizing that eBay has spent "as much as $20 million each year on tools to promote trust and safety on its website," and has "consistently" taken steps to improve its technology to protect intellectual property and prevent fraud "as such measures became technologically feasible and reasonably available"); *see also Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1088-94 (C.D. Cal. 2001) (eBay complied with DMCA in connection with sales of pirated DVDs on its website); *Stoner v. eBay Inc.*, No. 305666, 2000 WL 1705637,

at *3 (Cal. Super. Ct. Nov. 1, 2000) ("eBay has adopted procedures to curtail the use of its service to sell inappropriate items").

Rosen himself used eBay's tools to report the complained-of listings of the 8x10 Prints and eBay responded in each case by promptly taking down the reported listings, providing Rosen the benefit of any doubt as to the legitimacy of his claims of ownership and/or infringement. 56.1 ¶¶ 85-89. In so responding, eBay followed the DMCA's prescriptions to the letter. Rosen's apparent dissatisfaction with how Congress has delineated the limits of legal responsibility on entities such as eBay is not a basis for ascribing liability to it. Insofar as all elements of § 512(c) have been met by eBay in relation to the claimed 8x10 Print infringements, eBay is entitled to summary judgment on Rosen's claims relating to those images.

> 1.   *eBay Expeditiously Took Down the Listings for the 8x10 Prints and Disabled Access to the Images*

To qualify for safe-harbor protection under the DMCA, a service provider[4] must, upon receiving a notification of claimed infringement from a copyright owner, "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing." 17 U.S.C. § 512(c)(1)(C). Here, eBay *always* took down the reported listings expeditiously upon receiving notification from Rosen. 56.1 ¶¶ 88-89.[5] Indeed, there is only one instance in which Rosen even *alleges* that a listing for an 8x10 Print "wasn't expeditiously removed." SAC ¶ 106. As to that listing, the record is clear that Rosen sent his notification to eBay on a Sunday afternoon, and eBay took down the listing first thing Monday morning. 56.1 ¶¶ 90-91.

By taking down the listings, eBay disabled users' access to the allegedly infringing images on its servers, in full compliance with the safe harbor

---

[4] "eBay clearly meets the DMCA's broad definition of online 'service provider.'" *Hendrickson*, 165 F. Supp. 2d at 1088 (citing 17 U.S.C. § 512(k)(1)(B)).

[5] It is uncontested that eBay was unaware of the alleged infringements prior to receiving each of these NOCIs. 56.1 ¶ 88; *see* 17 U.S.C. §512(c)(1)(A).

requirements.  *See* 17 U.S.C. § 512(c)(1)(C) (requiring service provider to "remove, *or disable access to*, the material") (emphasis added).  Searches of eBay's website no longer would have returned the listings (or images associated with them), and any attempt to revisit the listing using a saved copy of its URL would have returned only a broken link—*i.e.*, a dead-end.  *See* s*upra* at 4.

Rosen nonetheless alleges that even *after* eBay took down the listings for the 8x10 Prints, he still managed to view the images associated with those listings by accessing them from one of eBay's servers.  *See, e.g.*, SAC ¶¶ 15-17, 86, 87, 92-112, 115, 118; 56.1 ¶ 92.  As a matter of fact, no record evidence exists to support this allegation.  At his deposition, Plaintiff was unable to provide any basis for his contention that contested images remained viewable on eBay's servers, admitting that he had in fact viewed files *on his own computer*, presumably old versions stored on Rosen's computer before he ever reported the listings and before eBay took down the listings.  56.1 ¶ 96 (citing Rosen Dep. 187:17-189:20, 247:3-248:8).  At that, Rosen went to extraordinary lengths, solely for purposes of enabling him to press his claims, to be in a position to locate these images after the listings were taken down.[6]  Unsurprisingly, Rosen can point to no evidence that eBay users in the ordinary course would, or ever do, engage in similar conduct and the record is barren of evidence that any other users accessed any of the 8x10 Prints in this fashion following the takedowns of the listings.

Even were the facts otherwise, the temporary continued retention of the images on eBay servers would be of no legal moment.  Consistent with the letter and intent of § 512(c)(1)(C), meaningful public "access to" the images was "disabled" by eBay's prompt take down of the listings containing those images.

---

[6] As noted above, the only way Rosen might have been able to access an image stored on eBay's servers after its listing was taken down would have been to copy and save the image's own unique URL from a web browser while the listing was active. *See supra* at 5.

*See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1019 (9th Cir. 2013) (explaining that § 512(c) "recognizes that one is unlikely to infringe a copyright by merely storing material that no one could access").  Rosen's strained effort to build a legal case out of an attribute of eBay's system that, as earlier discussed, is designed to serve legitimate functions that in no way impair or vitiate the force of the notice-and-takedown requirements of the DMCA is unavailing.

2.    *eBay Complies With All Other Safe-Harbor Requirements*

There can be no genuine or material dispute that eBay's VeRO program satisfies all other applicable requirements for safe harbor under the DMCA.  eBay:

> i)    "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity," 17 U.S.C. § 512(c)(1)(B);
>
> ii)    "has designated an agent to receive notifications of claimed infringement" and displayed the agent's contact information online, §512(c)(2);
>
> iii)    "has adopted and reasonably implemented, and informs [its] subscribers and account holders of . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers," § 512(i)(1)(A); and
>
> iv)    "accommodates and does not interfere with standard technical measures" for identifying or protecting copyrighted works.  § 512(i)(1)(B).

First, eBay does not receive any "financial benefit directly attributable" to the listings it takes down, including those at issue here.  17 U.S.C. § 512(c)(1)(B).  In fact, eBay refunds all fees when it takes down a listing and eBay followed these procedures in response to Rosen's NOCIs.  56.1 ¶ 50.  In addition, eBay lacks the "right and ability to control" whether the third-party sellers who use its website engage in allegedly infringing activities.  17 U.S.C. § 512(c)(1)(B).  The Ninth Circuit has held that such control arises only when a service provider "exert[s] substantial influence on the activities of users."  *UMG*, 718 F.3d at 1030 (quoting *Viacom Int'l v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012)).  Substantial influence involves promulgating "detailed instructions regard[ing] issues of layout, appearance and content" and then actively monitoring users' compliance with those

instructions, *Cybernet*, 213 F. Supp. 2d at 1173, *cited in UMG*, 718 F.3d at 1030, or "purposeful, culpable express and conduct" by a service provider to induce copyright infringement by its users. *UMG*, 718 F.3d at 1030. Here, Rosen has not even alleged that eBay engaged in any such activity in relation to the challenged listings or sellers.

Second, there is no dispute that eBay has designated an agent to receive notifications of claimed infringement and displays the agent's contact information online. *See* 17 U.S.C. §512(c)(2); 56.1 ¶ 117. Third, as previously noted, eBay has adopted and implemented a policy that provides for terminating, in appropriate circumstances, the accounts of sellers who are repeat infringers, *see* 17 U.S.C. § 512(i)(1)(A); *supra* at 2, and informs its users of this policy on its website. *See* § 512(i)(1)(A); 56.1 ¶ 115. Fourth, Plaintiff has presented no evidence to suggest that eBay interferes with, or otherwise fails to accommodate, any "standard technical measures" used by copyright owners to identify or protect their works. 17 U.S.C. § 512(i)(1)(B). The record of eBay's extensive copyright compliance activities is directly to the contrary.

**C.   eBay Has No Secondary Liability Because It Neither Contributorily nor Vicariously Infringed Plaintiff's Copyrights**

Even absent the specific statutory protections afforded eBay by the DMCA safe harbor, eBay cannot be liable for contributory or vicarious infringement under the controlling judicial tests. To be liable for contributory infringement, a defendant must (1) have had knowledge of the sellers' infringing activity, and (2) induced, caused, or materially contributed to the infringing conduct. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). A "computer system operator" such as eBay can be held liable for contributory infringement "if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet *continues to provide access to infringing works*." *Rosen v. Hosting Servs., Inc.*, 771

F. Supp. 2d 1219, 1222 (C.D. Cal. 2010) (emphasis added) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)).  Here, it is undisputed that eBay did the opposite: as soon as eBay learned of the allegedly infringing 8x10 Prints, it *took down* the listings for those items.  *See supra* Part I.B.1; *cf. A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021-22 (9th Cir. 2001) (imposing contributory liability only where defendant was aware of specific infringing material available through its system and then *failed* to remove the material).  Nor has Rosen adduced a shred of evidence—there is none—that eBay induced, caused or contributed in any way to infringement of his works.

Similarly, before it can be liable for vicarious infringement, a defendant must have (1) the right and ability to supervise the third-party sellers' allegedly infringing conduct, and (2) a direct financial interest in their infringing activity.  *See Visa Int'l*, 494 F.3d at 802.  Neither factor is met here.  As to the supervision element, the law is clear that Rosen must show that eBay not only is able to suspend infringing users, but also has the "legal right to stop or limit [those users'] directly infringing conduct, as well as the practical ability to do so," *id.* at 816 n.11—a showing that is completely absent here.  What is more, rather than seeking to profit or obtain a financial benefit from acts of infringement on its website, eBay's practice is to refund all fees associated with listings claimed to infringe.  *See supra* at 15.  Far from infringing content being a "draw" for customers, *Napster*, 239 F.3d at 1023, eBay's commercial success depends upon its creating a safe trading environment that earns the continued good will of its users.  *See supra* at 2.

## II.   EBAY IS NOT LIABLE FOR USE OF THE MAGAZINE PHOTOS IN LISTINGS FOR RESALE OF COPIES OF PUBLISHED MAGAZINES

The second category of listings at issue consists of the Magazine Photos, which were offered for sale as part of physical copies of back issues of published print magazines, such as *CKM* (a Polish men's magazine) and *OYE* (aimed at "the modern Latino man").  *See* App'x A.  Rosen acknowledges that the Magazine

Photos appeared in these magazines pursuant to license agreements with the publishers.  56.1 ¶ 100.  Accordingly, he does not contend that the original offerings of the magazines for sale infringed his copyrights in the Magazine Photos.  Nor does eBay understand Rosen to contend that resales of legitimately possessed copies of these magazines, whether on eBay or otherwise, is in any way inappropriate, protected as it is by the Copyright Act's first sale doctrine:  "[T]he owner of a particular copy or phonorecord lawfully made under this title . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."  17 U.S.C. § 109(a).

Instead, according to Rosen, the infringements occurred when sellers created digital images of the print magazines and uploaded them to eBay for use in their sales listings insofar as those images captured certain of Rosen's photographs as they appear in the magazines.  *See* SAC ¶¶ 11, 26 (alleging that seller "made and posted an unauthorized copy of one of Rosen's . . . photographs on ebay.com").

Here, as with the listings of the 8x10 Prints, Rosen has no claim of direct infringement against eBay because the third-party sellers, not eBay itself, directly caused and controlled the copying complained of.  *See supra* Part I-A.  Neither do the complained of activities create any other form of liability on eBay's part, since the sellers' creation and use of a digital copy of each of the Magazine Photos for the purpose of facilitating lawful resale of the licensed print magazines is protected "fair use" of the works at issue.  That being the case, eBay by definition cannot be secondarily liable since no direct infringements have occurred in this setting.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (citation omitted).

Fair use is an "equitable rule of reason" that has been codified as a statutory exception to copyright infringement.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984); *see* 17 U.S.C § 107.  The fair use doctrine allows

courts to "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2002). Section 107 identifies four factors principally to be considered in determining whether the use in a particular case is a fair use. *Id.* (citing 17 U.S.C. § 107). Courts weigh the totality of these factors, although "considerable weight" is afforded the issue of the extent to which the challenged taking of the plaintiff's work supplants a market for the original. *Sofa Ent'mt, Inc. v. Dodger Prods., Inc.*, 782 F. Supp. 2d 898, 908 (C.D. Cal. 2010) (citing *Harper & Row Pubs., Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985)).

**Purpose and Character of the Use.** The first fair use factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The Supreme Court has clarified that although the commercial or nonprofit nature of the use is one facet of the inquiry,

> [t]he central purpose of this investigation is to see . . . whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character . . . ; it asks, in other words, whether and to what extent the new work is transformative.

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The more transformative the defendant's use, the less significant is the fact that the use is commercial. *Id.*

Here, the uses made of the Magazine Photos were clearly transformative. Each of the Magazine Photos appeared in listings for resale of outdated magazines. None of the Magazine Photos was itself being offered for sale. In contrast to the original publication of the magazines, where their publishers obtained licenses to Rosen's photographs of models and celebrities for the purpose of promoting and increasing sales of the magazines, the incidental capture of the Magazine Photos in the distinct context of lawful online resale of those decades-old magazines serves

an entirely different purpose and implicates no similar economic interest on Rosen's part.  In this setting, such uses do not "supersede[] the object of the originals"; instead, they constitute an entirely different use, and serve "an entirely different function."  *Kelly*, 336 F.3d at 818.

The supporting record could not be clearer as to:

o  The purpose of the use of the digital images: solely to facilitate the lawful resale of the originals.  56.1 ¶¶ 16.

o  The function served by such use: to allow potential buyers to better identify, understand, and evaluate the printed materials offered for sale and make informed purchases.  *Id.* ¶¶ 66, 107, 110.

o  The deleterious impact on secondary markets for legitimate merchandise were entities like eBay barred from permitting sellers to exhibit what they were listing for sale on account of the incidental reproductions or displays of embedded copyrighted material that may accompany such activity.  *Id.* ¶ 67.

o  Rosen's inability to identify any actual or potential lost sales or license fees arising out of these listings.  *Id.* ¶¶ 104-05, 111-12 (citing Rosen's deposition and interrogatory responses).

Numerous courts have held similar transformative uses of copyrighted works to be fair use under Section 107, especially where, as here, the use occurs in the setting of innovative use of new technology.  In *Kelly v. Arriba Soft*, Arriba developed a search engine that indexed images from the internet.  336 F.3d at 815.  The software copied full-size images (including Kelly's copyrighted photographs) onto Arriba's servers and used them to create thumbnail-size images that were displayed on Arriba's website in response to user searches.  *Id.* at 815-16.[7]  Although there was no question that Arriba operated its website for commercial purposes, the court held that Arriba's incorporation of Kelly's photographs into its search engine was transformative fair use.  *Id.* at 818-20.  Arriba's thumbnails served an "entirely different function" from that of Kelly's originals: whereas Kelly's images were "artistic works intended to inform and to engage the viewer in

---

[7] Users could click the thumbnails to view full-size images from Kelly's website as though they were part of Arriba's website via "inline linking."  *Id.* at 816.

an aesthetic experience," Arriba's search engine functioned as a "tool to help index and improve access to images on the internet." *Id.* at 818.  Thus, the search engine did not "supplant the need for the originals," but in fact "promote[d] creativity" by "enhancing information-gathering techniques on the internet." *Id.* at 820.  Similarly here, the images in sellers' listings served no artistic or entertainment purpose and did not supplant any market for the original photographs; on the contrary, the listings served to expose a wide potential audience to publications available for lawful resale in a manner that accurately depicted what the sellers were offering.

The Ninth Circuit has continued to uphold the transformative distinction between potentially superseding uses of copyrighted material and uses as part of initiatives designed to improve public access to materials and information.  *See Amazon.com*, 508 F.3d at 1165 (explaining that a search engine may be even "more transformative than a parody" because it "provides an entirely new use for the original work, while a parody typically has the same entertainment purpose as the original work").  The Second Circuit has agreed, holding that Google's creation of digital copies of authors' books to enable full-text searching was transformative fair use.  *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97-101 (2d Cir. 2014).  The Fourth Circuit has held that use of a complete digital copy of an original work of authorship for the purpose of detecting plagiarism is transformative.  *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639-40 (4th Cir. 2009).

In all of these cases, the fundamentally different purpose of the copies ensured that they were not merely "supersed[ing]" or "supplanting" the originals.  *Campbell*, 510 U.S. at 579; *see also White v. West Publ'g Corp.*, --- F. Supp. 2d ---, No. 12 Civ. 1340 JSR, 2014 WL 3057885, at *2 (S.D.N.Y. July 3, 2014) (holding that "creating an interactive legal research tool" by copying legal briefs served a different purpose from the original briefs, which were aimed at "providing legal services to . . . clients and securing specific legal outcomes").  The digital images posted on eBay as a part of an invitation to users to purchase copies of the originals

1  though a lawful resale on the secondary market is of a fundamentally similar

2  character to this line of fair uses.  Accordingly, the first factor weighs heavily in

3  favor of fair use.

4       **Nature of the Copyrighted Work**.  The second factor addresses "the nature

5  of the copyrighted work."  17 U.S.C. § 107(2).  Any argument that photographs of

6  scantily-clad celebrities and models are creative works that lie near "the core of

7  intended copyright protection," *Kelly*, 336 F.3d at 820 (quoting *Campbell*, 510 U.S.

8  at 586), is offset by the recognition that use of published works such as magazine

9  photos is more likely to be fair than use of unpublished works, "because the first

10  appearance of the artist's expression has already occurred."  *Id.* at 820.  Thus, the

11  second factor, which in any event "is rarely found to be determinative," *On Davis v.*

12  *The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001), is neutral here.

13       **Amount and Substantiality of the Portion Used**.  The third factor

14  addresses "the amount and substantiality of the portion used in relation to the

15  copyrighted work as a whole."  17 U.S.C. § 107(3).  If the user "only copies as

16  much as is necessary for his or her intended use, then this factor will not weigh

17  against him or her."  *Kelly*, 336 F.3d at 821.  Thus, copying even an entire work can

18  be fair use when doing so serves the user's transformative purpose.  *See, e.g.*,

19  *Amazon.com*, 508 F.3d at 1165 (holding that defendant's incorporation of entire

20  image into its search engine "does not diminish the transformative nature" of

21  defendant's use); *iParadigms*, 562 F.3d at 642 (holding that use of entire student

22  papers to detect plagiarism did not weigh against transformative fair use); *see also*

23  *Sony Corp. of Am.*, 464 U.S. at 792 (where VCR users recorded television programs

24  for the noncommercial purpose of watching those programs later at home,

25  recording entirety of the programs did not weigh against fair use).

26       Given the distinctly transformative nature of the use here—indeed, the virtual

27  necessity to reproduce in full, for example, an image that appears on the cover of a

28  magazine in order faithfully to portray the item being offered for sale—to the extent

1    the challenged listings incorporated some of the Magazine Photos in their entirety,

2    no differently than in *Kelly*, such use cannot be viewed as excessive or to cut

3    against fair use.  This factor is neutral.

4         **Effect on Potential Market for Copyrighted Work**.  The fourth, critically

5    important factor, examines "the effect of the use upon the potential market for or

6    value of the copyrighted work."  17 U.S.C. § 107(4).  For this factor to weigh

7    against fair use, the alleged infringement must usurp the market for the copyrighted

8    work by serving as a substitute for the original or its licensed derivatives.  *See*

9    *Campbell*, 510 U.S. at 593 (explaining that the fourth factor refers to "the harm of

10   market substitution").  Accordingly, a "transformative work is less likely to have an

11   adverse impact on the market of the original than a work that merely supersedes the

12   copyrighted work."  *Kelly*, 336 F.3d at 821 (citing *Campbell*, 510 U.S. at 591).

13        As previously discussed, the transformative nature of the eBay sellers' uses

14   of Rosen's images did not usurp any market for Plaintiff's original photographs.

15   Rosen has been unable to identify any economic harm arising out of such uses and

16   has, in fact, conceded that he has not suffered any actual damages.   56.1 ¶ 104.

17   Indeed, there can be no cognizable economic harm here where Rosen cannot

18   interfere with resales of the magazines, and eBay's platform merely provides an

19   innovative means of expanding the reach of the secondary market for such resales.

20   Nor could Rosen plausibly contend (and he has not) that the mere appearance of

21   certain of his photos in conjunction with the magazine resale listings somehow has

22   diverted sales of the photographs themselves.  Indeed, Rosen has failed to come

23   forward with evidence that there exists an active or even a potential market for

24   these photographs at all, let alone that the manner in which these images have been

25   presented threatens to impair any such market.  All but one of the photographs at

26   issue were taken more than a decade ago, *see* 56.1 ¶¶ 3-4 (citing registrations), and

27   Rosen has been unable to identify a single license transaction in the last ten years

28   for any of the photographs at issue, *id.* ¶ 111 (citing Rosen's deposition).  Rosen

has produced a total of seven invoices for the license of *any* of his works, none of which have been shown to relate to any of the photographs at issue in this case or any of the magazines identified in the SAC. *See id.* ¶ 105.

In the face of this evidence, it is apparent that factor four weighs strongly, even perhaps dispositively, in eBay's favor. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) (affirming summary judgment for defendant based on fair use where defendant's use of plaintiff's illustration served a "different market function" and did not "substitute for the original"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614-15 (2d Cir. 2006) (affirming summary judgment for defendant based on fair use where plaintiff failed to establish any market for licensing the works at issue).

As factors one and four weigh strongly in eBay's favor and factors two and three are neutral, the use of digital snapshots of the print magazines in listings on eBay, solely for the purpose of lawfully reselling those magazines, is plainly a fair use protected under 17 U.S.C. § 107. To hold otherwise would actually undermine another of the Copyright Act's core precepts: the ability of owners of lawful copies of copyrighted materials to resell those works as they wish. *See, e.g., Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1362 (2013) (recognizing, in discussion of first-sale doctrine, the "importance of leaving buyers of goods free to compete with each other when reselling or otherwise disposing of those goods"). To grant Rosen's requested relief would cripple the legitimate and thriving secondary market for countless magazines, posters, printed photographs, drawings, paintings, and other works offered for sale with the benefit of faithful depictions of the items being sold. See 56.1 ¶ 67. It would be perverse if, in the name of copyright law, such resales were to be constricted on the basis that enabling technology for ever broader participation in such secondary markets was found to create actionable infringements—at the very least where, as here, no cognizable market impairment of the original works can be identified.

### III. THERE IS NO RECORD EVIDENCE TO SUPPORT PLAINTIFF'S ALLEGATION THAT EBAY "LICENSED" HIS IMAGES TO WORTHPOINT.COM

Rosen alleges that three of his photographs appeared on an unaffiliated third-party website, www.worthpoint.com ("Worthpoint"), *see* SAC ¶¶ 117-20, and argues that eBay is liable for these alleged third-party infringements because "it is apparent to Rosen" that eBay "unlawfully licensed" his images to Worthpoint. *Id.* But Rosen has no admissible evidence to support his claim, relying instead on a hearsay statement appearing on Worthpoint's website suggesting that it licensed "content and images" from eBay, SAC ¶ 117 & Ex. 57. Hearsay is inadmissible under Federal Rules of Evidence 801-802. *See Soremekun*, 509 F.3d at 983-84 & n.28 (rejecting inadmissible hearsay offered by Plaintiff in opposition to summary judgment). In fact, eBay has no license agreement with Worthpoint or any third party that authorizes Worthpoint to copy or display images that appear in eBay's listings. 56.1 ¶ 119. As Rosen fails to raise any genuine issue of fact to support his allegation that eBay licensed his images to Worthpoint, summary judgment is warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, eBay respectfully requests summary judgment dismissing all claims in the Second Amended Complaint as a matter of law.

Dated: September 5, 2014    WEIL, GOTSHAL & MANGES LLP

         By:  *s/ R. Bruce Rich*
              R. Bruce Rich

         WEIL, GOTSHAL & MANGES, LLP

         767 Fifth Avenue
         New York, NY 10153

         Attorneys for Defendant
         EBAY INC.

### Appendix A:
### Works and Uses At Issue in Second Amended Complaint

| SAC Ex. | SAC ¶¶ | Item No.[8] | Subject | Type of Use |
|---|---|---|---|---|
| Ex. 1 | 11, 13, 18, 20, 22, 24 | 12 | Sofia Vergara | magazine |
| Ex. 2 | 12, 14, 19, 21, 23, 25 | 12 | Sofia Vergara | magazine |
| Ex. 3 | 15 | 13 | Sofia Vergara | 8x10 |
| Ex. 4 | 16 | 13 | Sofia Vergara | 8x10 |
| Ex. 5 | 17 | 13 | Sofia Vergara | 8x10 |
| Ex. 6 | 26, 37, 43, 51, 59, 65 | 6 | Joanna Krupa | magazine |
| Ex. 7 | 27, 38, 60, 66 | 6 | Joanna Krupa | magazine |
| Ex. 8 | 28, 39, 45, 53, 61-62, 67 | 6 | Joanna Krupa | magazine |
| Ex. 9 | 29, 40, 46, 54, 68 | 6 | Joanna Krupa | magazine |
| Ex. 10 | 30, 47, 55 | 6 | Joanna Krupa | magazine |
| Ex. 11 | 31, 48, 56 | 6 | Joanna Krupa | magazine |
| Ex. 12 | 32 | 6 | Joanna Krupa | magazine |
| Ex. 13 | 33 | 6 | Joanna Krupa | magazine |
| Ex. 14 | 34 | 6 | Joanna Krupa | magazine |
| Ex. 15 | 35, 41, 49, 57, 63, 69 | 6 | Joanna Krupa | magazine |
| Ex. 16 | 36, 42, 50, 58, 64, 70 | 6 | Joanna Krupa | magazine |
| Ex. 17 | 44, 52 | 8 | Joanna Krupa | magazine |
| Ex. 18 | 71 | 3 | Natalia Sokolova | magazine |
| Ex. 19 | 72 | 3 | Natalia Sokolova | magazine |
| Ex. 20 | 73, 76-77 | 3 | Natalia Sokolova | magazine |
| Ex. 21 | 74, 78, 80 | 30 | Natalia Sokolova | magazine |
| Ex. 22 | 75, 79, 81 | 29 | Natalia Sokolova | magazine |
| Ex. 23 | 82, 84 | 19 | Priscilla Taylor | magazine |
| Ex. 24 | 83, 85 | 19 | Priscilla Taylor | magazine |

---

[8] "Item No." refers to the item numbers assigned to the works at issue in this lawsuit in Exhibit A to Plaintiff's Second Amended Complaint, dated December 16, 2013.

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| SAC Ex. | SAC ¶¶ | Item No.[8] | Subject | Type of Use |
|---------|--------|---------|---------|-------------|
| Ex. 25 | 86 | 21 | Daisy Fuentes | 8x10 |
| Ex. 26 | 87 | 22 | Daisy Fuentes | 8x10 |
| Ex. 27 | 88 | 28 | Angela Taylor | magazine |
| Ex. 29 | 88 | 28 | Angela Taylor | magazine |
| Ex. 30 | 89 | 28 | Angela Taylor | magazine |
| Ex. 31 | 90 | 28 | Angela Taylor | magazine |
| Ex. 32 | 91 | 28 | Angela Taylor | magazine |
| Ex. 33 | 92 | 18 | Jeri ("Jerry") Ryan | 8x10 |
| Ex. 34 | 93 | 23 | Tawny Kitaen ("Tawny Kitten") | 8x10 |
| Ex. 35 | 94 | 2 | Chase Masterson | 8x10 |
| Ex. 36 | 95 | 2 | Chase Masterson | 8x10 |
| Ex. 37 | 96 | 2 | Chase Masterson | 8x10 |
| Ex. 38 | 97 | 1 | Anna Kournikova | 8x10 |
| Ex. 39 | 98 | 1 | Anna Kournikova | 8x10 |
| Ex. 40 | 99 | 25 | Anna Kournikova | 8x10 |
| Ex. 41 | 100 | 25 | Anna Kournikova | 8x10 |
| Ex. 42 | 101 | 24 | Gena Lee Nolin | 8x10 |
| Ex. 43 | 102 | 26 | Gena Lee Nolin | 8x10 |
| Ex. 44 | 103 | 27 | Ali Landry | 8x10 |
| Ex. 45 | 105 | 31 | Jeri ("Jerry") Ryan | 8x10 |
| Ex. 46 | 106 | 32 | Erika Eleniak | 8x10 |
| Ex. 50 | 111 | 33 | Anna Kournikova | 8x10 |
| Ex. 51 | 111, 112 | 33 | Anna Kournikova | 8x10 |
| Ex. 52 | 112 | 33 | Anna Kournikova | 8x10 |
| Ex. 53 | 113-114 | 34 | Anna Kournikova | magazine |
| Ex. 54 | 115 | 38 | Ali Landry | 8x10 |
| Ex. 55 | 116 | 39 | Anna Kournikova | 8x10 |
| Ex. 56 | 117, 119 | 36 | Gena Lee Nolin | 8x10 |
| Ex. 59 | not referenced in SAC | n/a | Gena Lee Nolin | 8x10 |
| Ex. 60 | 120 | 26 | Gena Lee Nolin | 8x10 |
| Ex. 61 | 118 | 36 | Gena Lee Nolin | 8x10 |