R. BRUCE RICH (Admitted *Pro Hac Vice*)
Email: bruce.rich@weil.com
RANDI W. SINGER (Admitted *Pro Hac Vice*)
Email: randi.singer@weil.com
REED L. COLLINS (Admitted *Pro Hac Vice*)
Email: reed.collins@weil.com
OLIVIA J. GREER (Admitted *Pro Hac Vice*)
Email: olivia.greer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant
EBAY INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN,<br><br>   Plaintiff,<br><br> v.<br><br>EBAY, INC., and DOES 1 through 10,<br><br>   Defendants. | Case No. CV13-06801 MWF(Ex)<br><br>**EBAY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Honorable Michael W. Fitzgerald**<br><br>Date: November 3, 2014<br>Time: 10:00 a.m.<br>Courtroom: 1600 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................... 1

COUNTERSTATEMENT OF THE FACTS .................................... 3

    A.    Rosen's Failure to Document Registration of His Photos ................... 3

    B.    eBay and Its Copyright and Other Intellectual Property Compliance Programs ....................................................... 4

    C.    Rosen's Speculation About Worthpoint and Terapeak ...................... 7

ARGUMENT ........................................................................... 8

I.    Legal Standard ............................................................... 8

II.    Rosen Has Failed to Establish Registration of the Works at Issue ................ 9

III.    Rosen's Claims as to the 8x10 Prints Fail On Multiple Additional Grounds ...................................................................... 10

    A.    eBay Is Shielded From Liability by the DMCA ................................ 10

    B.    eBay Has Neither Directly Nor Secondarily Infringed Rosen's Copyrights in the 8x10 Prints ................................................ 16

        1.    eBay Did Not Directly Infringe Rosen's Copyrights ............... 16

        2.    eBay Did Not Secondarily Infringe Rosen's Copyrights in the 8x10 Prints ........................................................ 18

    C.    eBay Is Not Liable for Worthpoint's Alleged Infringements ............. 21

IV.    Rosen's Claims as to the Magazine Photos Also Fail on Multiple Grounds ...................................................................... 22

    A.    Digital Snapshots of the Magazines Posted in Connection with the Lawful Resale of the Magazines Are Fair Use ........................ 22

    B.    eBay Did Not Directly Infringe Rosen's Copyrights in the Magazine Photos .......................................................... 24

    C.    Rosen Cannot Establish Contributory or Vicarious Infringement ...... 25

CONCLUSION ........................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) ........................................................... 17, 19, 20, 21

*Arista Records LLC v. Lime Grp. LLC*,
 784 F. Supp. 2d 398 (S.D.N.Y. 2011) .................................................................. 14

*Atl. Recording Corp. v. Howell*,
 554 F. Supp. 2d 976 (D. Ariz. 2008) .................................................................. 18

*In re Autohop Litig.*,
 No. 12 Civ. 4155 (LTS)(KNF), 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013) ... 16

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
 448 F.3d 605 (2d Cir. 2006) ................................................................................ 23

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ............................................................................................ 22

*Capital Records, LLC v. Vimeo, LLC*,
 972 F. Supp. 2d 500 (S.D.N.Y. 2013) .................................................................. 13

*Capitol Records, Inc. v. Thomas*,
 579 F. Supp. 2d 1210 (D. Minn. 2008) ................................................................ 18

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
 536 F.3d 121 (2d Cir. 2008) ................................................................................ 16

*Columbia Pictures Indus. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013) ............................................................................. 14

*Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*,
 195 F.R.D. 675 (S.D. Cal. 2000) .......................................................................... 8

*Corbis Corp. v. Amazon.com, Inc.*,
 351 F. Supp. 2d 1090 (W.D. Wash. 2004) ....................................................... 9, 15

*Costar Grp. Inc. v. Loopnet, Inc.*,
 164 F. Supp. 2d 688 (D. Md. 2001), *aff'd*, 373 F.3d 544 (4th Cir. 2004) ......... 25

*Disney Enters. v. Hotfile Corp.*,
   No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013) ................... 20

*Elektra Entm't Grp. v. Barker*,
   551 F. Supp. 2d 234 (S.D.N.Y. 2008) ................................................................. 18

*Ellison v. Robertson*,
   357 F. 3d 1072 (9th Cir. 2004) ................................................................... 14, 21

*Fox Broad. Co. v. Dish Network LLC*,
   747 F.3d 1060 (9th Cir. 2014) ................................................................... 16, 17

*Hendrickson v. eBay, Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001) ........................................................ 10, 13

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
   118 F.3d 199 (4th Cir. 1997) ............................................................................. 17

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ............................................... 10, 11, 13

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ..................................................................... 23, 24

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ............................................................................. 9

*London-Sire Records, Inc. v. Doe 1*,
   542 F. Supp. 2d 153 (D. Mass. 2008) ................................................................ 18

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ........................................................................... 20

*In re Napster, Inc. Copyright Litig.*,
   377 F. Supp. 2d 796 (N.D. Cal. 2005) ............................................................... 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..................................................................... 17, 19

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ........................................................................... 15

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) ............................................................. 13

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-cv-7098 AHM, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ... 16, 17, 24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ................................................................. 18, 19, 20

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ........................................................................... 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 25

*Rosen v. Amazon.com, Inc.*,
   No. CV 12-10413 ABC (Ex) (C.D. Cal. Mar. 6, 2014) ..................................... 8

*Rosen v. Hosting Servs., Inc.*,
   771 F. Supp. 2d 1219 (C.D. Cal. 2010) ........................................................... 18

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ........................................................................... 21

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008), *aff'd in part, rev'd in part*,
   600 F.3d 93 (2d Cir. 2010) ........................................................................... 4, 6

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ........................................................... 12, 13, 19

**Statutes and Rules**

17 U.S.C. § 107(1) ................................................................................................. 22

17 U.S.C. § 107(2) ................................................................................................. 23

17 U.S.C. § 107(3) ................................................................................................. 23

17 U.S.C. § 107(4) ................................................................................................. 23

17 U.S.C. § 109(a) ................................................................................................. 22

17 U.S.C. § 411(a) ................................................................................................... 9

17 U.S.C. § 512(c)(1)(A) ................................................................................. 11, 12

17 U.S.C. § 512(c)(1)(B) ................................................................................. 13, 14

17 U.S.C. § 512(c)(1)(C) ........................................................................... 11

17 U.S.C. § 512(c)(2) ................................................................................ 15

17 U.S.C. § 512(g)(2)(c) .............................................................................. 6

17 U.S.C. § 512(i)(1)(A) ............................................................................ 15

17 U.S.C. § 512(i)(1)(B) ............................................................................ 15

Fed. R. Civ. P. 56(a) ................................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant eBay Inc. ("eBay") submits this memorandum of points and authorities in opposition to Plaintiff's motion for partial summary judgment as to liability (Dkt. 94) ("Motion").

## INTRODUCTION

Plaintiff Barry Rosen's attempt to hold eBay liable for direct, contributory, and vicarious infringement of some 39 of his allegedly copyrighted photographs consists of a scattershot array of arguments that have no basis in law or fact. As a threshold matter, Rosen has failed even to establish that the photographs at issue were registered with the Copyright Office, which is fatal to his claims and moots every other issue in the case. Even if the Court were to reach the merits, Rosen's claims fail on multiple grounds.

Rather than separate out the two distinct categories of photographs at issue, Rosen's brief ignores these differences, and thereby fails to acknowledge, let alone address, the separate dispositive legal issues pertaining to each. But as set forth in eBay's own summary judgment motion, analyzing these categories separately provides the proper legal framework for resolving this dispute.

The first category of images consists of 8"x10" prints of seventeen claimed Rosen photographs (the "8x10 Prints") that third parties listed for sale on eBay's website, www.ebay.com. Rosen claims that the online listings for these images infringed his copyrights, but he completely ignores the dispositive legal safe harbor afforded eBay under section 512(c) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c). The record conclusively demonstrates that Bay complied with the DMCA notice-and-takedown requirements with respect to the 8x10 Prints, which defeats Rosen's claims directed to these works. Rosen's claims as to the 8x10 Prints also fail on other grounds as well. There is, for example, no merit to Rosen's novel theory that the temporary retention of *storage* copies of the

1   images out of the public eye somehow deprives eBay of the intended DMCA

2   protections.

3   　　　The second category of images involves listings by third parties on eBay's

4   website for resales of magazines that allegedly contain one or more of Rosen's

5   photographs (the "Magazine Photos").[1]  The import of Rosen's claims as to the

6   Magazine Photos is nothing short of breathtaking:  he would hold liable online

7   sellers who accurately depict merchandise containing copyrighted images owned by

8   another, thereby bringing countless lawful secondary-market transactions to a halt.

9   But it is uncontested that the publishers were licensed to use Rosen's photographs

10  in these magazines, and copyright law makes clear that the owner of a lawfully

11  made copy of a copyrighted work has the right to resell it under the "first sale"

12  doctrine.  The use of Rosen's images in this context plainly constitutes fair use, as it

13  entails a transformative use for a purpose entirely different from that of the original

14  published photographs.  Rosen has adduced no evidence of any potential lost sales

15  or license opportunities caused by this non-superseding, transformative use.

16  　　　Grasping for a viable theory of liability, Rosen devotes inordinate briefing to

17  the specious argument that eBay is liable for infringements allegedly committed by

18  non-party Worthpoint, with which, Rosen concedes, eBay has no direct

19  relationship.  Rosen and his proffered expert attempt to spin misinterpreted facts

20  and bald speculation into a fictive scenario in which eBay might somehow be

21  implicated in Worthpoint's purported infringements.  The undisputed record

22  evidence provides no basis for this claim.

23  　　　Accordingly, Rosen's motion for summary judgment should be denied.[2]

24

25  [1] The chart attached hereto as Appendix A sets out which paragraphs of the Second
    Amended Complaint pertain to the 8x10 Prints and which to the Magazine Photos.

26  [2] eBay's arguments in support of its own motion for summary judgment do not

27  require the Court to consider or decide the copyright registration issue, nor do they
    rely upon unsupported and conclusory allegations or the uninformed musings of a

28  supposed "expert" who has never actually examined eBay's systems.  Instead,

## COUNTERSTATEMENT OF THE FACTS

### A.    Rosen's Failure to Document Registration of His Photos

Rosen alleges that he is a professional photographer and contends that eBay infringed his registered copyrights in thirty-nine photographs. Motion at 1. But there is no evidence that any of the photographs at issue are covered by the registration certificates Rosen has produced. The certificates in the record fall into two categories: (i) ten group registrations which, collectively, are alleged to cover 25 of the works at issue, and (ii) fourteen single registrations, which allegedly cover the remaining fourteen works. *See* Declaration of Barry Rosen, dated Sept. 4, 2014 (Dkt. 94) ("Rosen Decl."), Ex. 1. The group registrations bear titles such as "Published Works 1998 Pt 1 . . . appx. 42 photos," but the certificates do not identify any of the dozens of individual photographs that comprise each collection. *See id.* The single registrations bear titles such as "Daisy Fuentes," and the titles sometimes include what appears to be a number from a series of photographs of the same subject, such as "Anna Kournikova 15." *See id.* But these certificates do not further describe or identify the particular photographs being registered. In short, Rosen has failed meaningfully to tie these asserted registration certificates to the actual images that are the subject of this lawsuit.

Proof that the allegedly infringing photographs are covered by Rosen's registrations would require demonstrating that the deposit copies of the works covered by the registrations submitted by Rosen to the Copyright Office constitute or, as to the group registrations, include the challenged images. But Rosen did not save copies of those deposit copies or, for that matter, keep a clear record of what he submitted to the Copyright Office. *See* eBay's Statement of Genuine Disputes of Material Fact, filed October 3, 2014 ("56.2") ¶ 1. Despite eBay's requests to produce or procure such copies, Rosen been unwilling or unable to do so. *Id.*

eBay's legal arguments are built upon competent and admissible evidence as to which there is no genuine issue of material fact.

### B.  eBay and Its Copyright and Other Intellectual Property Compliance Programs

As set forth more fully in eBay's summary judgment motion, eBay is one of the world's largest online marketplaces, connecting a diverse, global community of buyers and sellers, both individuals and small businesses.  *See* eBay's Proposed Statement of Uncontroverted Facts and Conclusions of Law, filed Sept. 5, 2014 (Dkt. 74) ("56.1") ¶¶ 9-12.[3]  eBay does not itself buy or sell merchandise on its website; instead, third parties offer goods or services for sale on the site.  *Id.* ¶ 15. It is the legal and contractual responsibility of such users to comply with appropriate laws pertaining to sales of their items, including respecting third-party intellectual property rights.

Contrary to Rosen's assertion that eBay takes "no steps" to impede the sale of items that infringe intellectual property rights, Motion at 9, eBay employs myriad measures and expends enormous resources directed specifically at impeding infringement.  *See* 56.1 ¶¶ 18-56, 113-17.  Indeed, it is eBay's abiding philosophy that maintaining a clean, "well-lit" marketplace, and thereby earning the continued good will of its users, is critical to its commercial success.  *Id.* ¶ 19.

It is curious that Rosen has chosen to rely heavily, albeit highly selectively, on factual findings by the district court in *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008), *aff'd in part, rev'd in part*, 600 F.3d 93 (2d Cir. 2010), a trademark infringement case in which eBay's conduct was completely vindicated.   Virtually the entirety of the factual findings in that case (including, but not limited to, those excerpted by Rosen) demonstrate eBay's exemplary intellectual property compliance efforts.  In particular, as the Second Circuit noted on appeal, eBay devotes extraordinary resources to averting infringements of all

---

[3] To reduce duplication of facts submitted to the Court in connection with the parties' cross-motions, eBay cites, where applicable, the facts presented with its own Motion for Summary Judgment, filed September 5, 2014 (Dkt. 73) ("eBay's Motion for Summary Judgment").

types on its site. *See* 600 F.3d at 98, 100 (noting that eBay deploys hundreds of employees, has spent "as much as $20 million each year on tools to promote trust and safety on its website," and has "consistently" taken steps to improve its technology to protect intellectual property and prevent fraud).

The *Tiffany* court's findings fully align with the undisputed fact record here as to: (i) eBay's limited ability to detect infringements on its website, both because it does not take ownership or custody of items sold and because it is not sufficiently familiar with the products offered by the thousands of rights owners whose merchandise is sold through the eBay website, 600 F.3d at 98; 56.1 ¶ 17; and (ii) eBay's robust "notice-and-takedown" system, which enables rights holders who believe listings violate their intellectual property rights to notify eBay promptly and easily, 600 F.3d at 99; 56.1 ¶¶ 20-22, 36-56.[4]

Given that eBay's website processes some 22 million user-uploaded images per day, examination and review of each image by eBay's employees is simply not feasible. 56.1 ¶¶ 17, 59. eBay employees do not create listings for eBay users, nor, contrary to Rosen's suggestion, can they "control" the posting of images in connection with those listings, Motion at 5, other than to specify certain technical requirements (such as pixel count) so that the images are compatible with eBay's systems. *See* 56.1 ¶¶ 60-61; 56.2 ¶ 16. eBay simply provides tools and technology that allow third-party sellers to create listings that buyers can view. 56.1 ¶¶ 57, 63. Once initiated by a seller, both the creation of a listing page and the uploading and storage of any images are fully automated. 56.1 ¶ 61.[5]

---

[4] eBay has suspended tens of thousands of repeat offenders in various ways depending on the frequency and severity of their violations, ranging from temporary restrictions on the number of items a seller may list at any given time to permanent suspension of the seller's account. 56.1 ¶¶ 32-35, 116.

[5] When a seller uploads or references such an image, eBay's back-end infrastructure automatically stores a copy of the image for use in connection with the listing. *Id.* ¶ 70. Image files are stored on eBay's servers using an automatically generated URL. *Id.* ¶¶ 71-73. eBay's systems automatically populate listings pages with the appropriate image file. *Id.* ¶ 74.

Although eBay cannot pre-screen the many millions of images added to its website each day, through its Verified Rights Owner ("VeRO") Program (among other means), eBay provides efficient mechanisms for rights owners to submit a Notice of Claimed Infringement ("NOCI") as to particular listings.  56.1 ¶¶ 39, 45. Again contrary to Rosen's unsupported allegations, *see* Motion at 9, eBay's takedown responses are exemplary, *see Tiffany*, 600 F.3d at 99; in the case of Rosen's 8x10 Prints, listings containing those images were taken down within 24 hours.  *See* 56.1 ¶¶ 47-48, 88-89.[6]  What is more, eBay's practice, which it followed here to the letter, is to notify the sellers and all bidders of the action taken and to refund any fees associated with the terminated listing, among other things.  *Id.* ¶¶ 50-52; *see also* 56.2 ¶ 34 (citing Baldwin Declaration).

Rosen touts the fact that for a period of time after a given listing has been taken down, image files formerly associated with the listing may still temporarily "reside on eBay's servers."  Motion at 9.[7]  This technological artifact of a taken-down listing does not alter the dispositive facts that: (1) the listing is no longer included in the results of searches on eBay's website; (2) users browsing the website are no longer able to view the listing; (3) any attempt to revisit the listing using a saved copy of its URL (such as through a web browser "bookmark") will return only a notice that the listing is no longer available; and (4) the image URL,

---

[6] Rosen's chart summarizing his claims reflects that for all but three of the 8x10 "Prints" identified in the fifth column, the "date of last known listing infringement" was no more than one day after the "Takedown Notice [was] Sent by Rosen to eBay."  Rosen Decl. ¶ 36 & Ex. 176.  In just two instances, eBay took two days, responding on a Sunday to a notice sent on Friday.  *See id.* Ex. 176 at 6; 56.2 ¶¶ 217, 220.  In one instance, Rosen's chart asserts incorrectly that eBay took almost a month to take down a listing, *see id.* at 7, but the record evidence does not support his assertion.  *See* 56.2 ¶ 270.

[7] There are a number of legitimate reasons that eBay's systems provide for the temporary retention of the image files formerly associated with taken-down listings. 56.1 ¶ 54.  These include that the DMCA requires service providers to restore removed content (including images) upon receipt of a valid DMCA counter-notice. *See* 17 U.S.C. § 512(g)(2)(c); 56.1 ¶ 54.  The images stored on eBay's servers are not permanent; each has a default expiration date (generally 90 days after a listing ends).  56.1 ¶¶ 76-77.

which is required to access the image, is no longer available on eBay's website. *See* 56.1 ¶¶ 53-54, 78-79.  Short of intentionally keeping copies of image URLs for purposes of future litigation, as Rosen did, *see* 56.2 ¶ 267, Rosen offers no plausible theory of how anyone would have accessed images from taken-down listings.  And indeed, the record reveals no instances of anyone accessing Rosen's claimed images after the listings were taken down—apart, perhaps, from Rosen himself, who claims to have done so but has no proof to support that claim.  *See* 56.1 ¶¶ 94-97; 56.2 ¶ 7; *see also infra* pp. 11-12.

### C.   Rosen's Speculation About Worthpoint and Terapeak

Rosen asserts that three of his photographs appeared on an unaffiliated non-party website, www.worthpoint.com ("Worthpoint").  *See* Second Amended Complaint (Dkt. 15) ("SAC") ¶¶ 117-20.  Although Rosen does not and cannot assert that eBay has a contractual relationship with Worthpoint, 56.1 ¶ 119, Rosen tries to link eBay to certain claimed infringements on Worthpoint's website by virtue of eBay's license relationship with an entirely separate entity, Terapeak. Rosen speculates that, insofar as eBay has a relationship with Terapeak, and Terapeak has a "partnership" relationship with Worthpoint—the nature and terms of which Rosen does not specify—it somehow follows that eBay is responsible for the claimed Worthpoint infringements.  *See* Motion at 8.  Rosen's supposed "facts" regarding Worthpoint and Terapeak consist entirely of hearsay and speculation. Specifically, the unsworn statements appearing on Worthpoint's and Terapeak's websites purporting to explain their relationship with one another and their use of eBay's data are inadmissible hearsay, *see* Motion at 8; Rosen Decl. Exs. 170-72, while the Declaration of David Sterling offers mere conjecture by a previously undisclosed "expert" who has no knowledge of eBay's operations or its business dealings with third parties.  Unsurprisingly, a number of Mr. Sterling's assertions

are simply wrong.  *See generally* Declaration of Randy Spickler, dated Oct. 2, 2014

("Spickler Decl.").[8]

## ARGUMENT

## I.    LEGAL STANDARD

Summary judgment is appropriate only where there exists no genuine issue

as to any material fact, and the moving party is entitled to judgment as a matter of

law.  *See* Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the

court views the evidence in the light most favorable to the non-moving party and

draws all reasonable inferences in the non-moving party's favor.  *Provenz v. Miller*,

102 F.3d 1478, 1483 (9th Cir. 1996).  "Where material factual disputes exist, the

court must allow a jury to resolve the factual disputes."  *Id.*

The movant may not rely on testimony from experts not disclosed during

discovery.  *See Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 677

(S.D. Cal. 2000) (striking from record affidavits submitted by experts in opposition

to summary judgment motion where the plaintiff failed to disclose the experts

during discovery and the defendants were prejudiced).  Nor may the movant rely on

testimony that he refused to provide during his deposition.  *See* Order Denying

Plaintiff Barry Rosen's Motion for Partial Summary Judgment at 2-3, *Rosen v.

Amazon.com, Inc.*, No. CV 12-10413 ABC (Ex) (C.D. Cal. Mar. 6, 2014) (Dkt. 71)

(striking Rosen's "blatant attempt to 're-do' his deposition" by submitting a

declaration addressing questions he could not or would not answer at his

deposition).

---

[8] Contrary to Mr. Sterling's speculation, while eBay does transmit data files to
Terapeak containing certain information about items sold, these data files do *not*
include image files, nor does eBay license the use of sellers' images to Terapeak.
56.2 ¶ 33.

## II.   ROSEN HAS FAILED TO ESTABLISH REGISTRATION OF THE WORKS AT ISSUE

As a threshold matter, Rosen has failed to establish that he registered the copyrights in the works sued upon, as he must to maintain a copyright infringement action.  *See* 17 U.S.C. § 411(a); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998).  Rosen asserts that the registration certificates in the record cover the photographs at issue, *see* Rosen Decl. ¶¶ 2-3 & Ex. 1, but the certificates do not identify the particular photographs they cover, and there is no other record evidence linking Rosen's registrations to any of the photographs allegedly infringed.  *See supra* p. 3.

This failure to prove registration precludes summary judgment for Rosen on all of his copyright infringement claims.  *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1114-15 (W.D. Wash. 2004), *overruled on other grounds by Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612 (9th Cir. 2010).  In *Corbis*, there was "nothing on the face of the certificates . . . to confirm that the Christensen Photo [was] included among the deposited photos," which meant that "[t]he only way to determine with any certainty whether [the registrations] cover the Christensen Photo [was] to review a copy of the deposits included with the registration applications." *Id.*[9]  But Corbis, like Rosen, had never "bothered to obtain a copy of the deposits and provide them to the Court." *Id.* at 1115.  The court therefore denied summary judgment for the plaintiff on the ground that "[w]ithout the deposit, Corbis cannot show that the Christensen Photo is among the photographs covered" by the registrations. *Id.*  Similarly here, there is no record evidence tying Rosen's certificates to the particular photographs allegedly infringed, which precludes summary judgment for Rosen.

---

[9] Corbis had produced a spreadsheet purporting to link the registrations with the Christensen Photo, but there was "no way to corroborate this link." *Id.* at 1114.

### III.   ROSEN'S CLAIMS AS TO THE 8X10 PRINTS FAIL ON MULTIPLE ADDITIONAL GROUNDS

#### A.   eBay Is Shielded From Liability by the DMCA

Rosen's motion conspicuously fails even to acknowledge, let alone address, the DMCA, which protects online service providers like eBay[10] from precisely the sorts of claims brought here concerning listings for the 8x10 Prints.  *See* 17 U.S.C. § 512(c) (providing safe harbor for "storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" if certain conditions have been met).  As discussed below and in eBay's cross-motion, eBay's VeRO Program, as implemented, met all of the statutory requirements for section 512(c) safe-harbor protection as to the complained-of 8x10 Prints.  56.1 ¶ 41; eBay's Motion for Summary Judgment at 12-16.

Specifically, each time Rosen used eBay's tools to report a listing of an 8x10 Print, eBay complied with the DMCA by promptly taking the reported listings down.  56.1 ¶¶ 85-89.  To the extent Rosen's argument might be construed to imply that the DMCA safe-harbor protections are not available to eBay because copies of his images remained stored out of the public eye on eBay's servers after the listings were taken down, *see* Motion at 9, 17, 22, 25, the argument has no merit.

**<u>Storage at the Direction of a User</u>**.  The section 512(c) safe harbor applies to infringing material stored on the service provider's system "at the direction of a user."  17 U.S.C. § 512(c); *see Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1146 (N.D. Cal. 2008).   Rosen's claims focus on eBay's processing of his images, but the dispositive fact under the DMCA is that *eBay users selected the images for their listings* and uploaded them using eBay's automated tools.  *See supra* p. 5.  Every step in creating the listings, including copying the images to

---

[10] "eBay clearly meets the DMCA's broad definition of online 'service provider.'" *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1088 (C.D. Cal. 2001) (citing 17 U.S.C. § 512(k)(1)(B)).

accompany those listings, was initiated by users, not by eBay, *see id.*, such that eBay's hosting of the images clearly falls within the scope of section 512(c).  *See Io,* 586 F. Supp. 2d at 1147-48 (holding that section 512(c) covers "automated processing of user-submitted content").

**Expeditious Response**.  Section 512(c) also requires that upon receiving a notification of claimed infringement from a copyright owner, the service provider must "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing."  17 U.S.C. § 512(c)(1)(C).  The record confirms that eBay expeditiously took down every reported listing for the 8x10 Prints upon receiving notification from Rosen.  *See supra* p. 6.  The only instance in which Rosen even alleges that a listing for an 8x10 Print "wasn't expeditiously removed," SAC ¶ 106, involved a Monday morning take-down in response to a Sunday-afternoon notification.  56.1 ¶¶ 90-91.[11]

**Remove or Disable Access**.  Rosen's contention that certain images remained temporarily stored on eBay's servers after eBay removed listings for the 8x10 Prints has no legal significance.  *See* Motion at 9, 17, 22, 25.  By taking the listings down, eBay in every practical and realistic sense "remove[d], or disable[d] access to, the material."  17 U.S.C. § 512(c)(1)(C).  Searches of eBay's website no longer would have returned the listings (or images associated with them), and any attempt to revisit a listing using a saved copy of its URL would have returned only a notice that the listing was no longer available.  *See* s*upra* p. 6.  This explains why Rosen has failed to show that *anyone other than perhaps himself* (and even that is disputed) accessed the images on eBay's servers after eBay took the listings down.  *See* 56.1 ¶¶ 94-97; 56.2 ¶¶ 7, 24.  Rosen himself went to extraordinary lengths—solely to build a litigation record—to locate these images on eBay's servers after

---

[11] eBay was unaware of the alleged infringements prior to receiving these NOCIs. 56.1 ¶ 88; *see* 17 U.S.C. § 512(c)(1)(A).

the listings were taken down.[12]  Furthermore, Rosen conceded he does not know if

cached copies of the images were cleared from his own computer before he

attempted to "access" the images on eBay's servers. 56.1 ¶ 94.  Accordingly, Rosen

has failed even to show that *he* accessed eBay's server copies instead of merely

viewing the cached copies automatically saved locally on his own computer while

the listings were still active.  56.2 ¶¶ 7, 267 (citing Spickler Decl.).  Indeed,

contrary to his allegations, Rosen testified at his deposition *that he did not believe*

*he was accessing images on eBay's servers*, but that he was instead accessing

images stored locally on his own computer—meaning that he is seeking to hold

eBay liable for the contents of his own hard drive.  *Id.* ¶ 267 (citing Rosen Dep.

187:17-189:20, 192:6-193:25, 247:3-248:8).[13]

In all events, the fact that, for legitimate reasons—and without allowing

continued public access to the images—eBay temporarily maintains images

delinked from taken-down listings (*see supra* note 7) should not disqualify eBay or,

by extension, countless other websites, from the protections of the section 512(c)

safe harbor.  To conclude otherwise would exalt technological form over real-world

substance.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d

1006, 1019 (9th Cir. 2013) (section 512(c) "recognizes that one is unlikely to

infringe a copyright by merely storing material that no one could access").  To

---

[12] As noted above, if Rosen accessed an image stored on eBay's servers after the listing was taken down, it was only because he copied and saved the image's unique URL from a web browser while the listing was active.  *See supra* pp. 6-7.  Rosen testified that he copied and saved the image URLs by creating a PDF file of each listing and storing the PDF on his computer; the PDF contained any images associated with the listing, along with their URLs.  *See* 56.2 ¶ 267.

[13] Nor could Rosen's assertion that he accessed server images via third-party search engines such as Google give rise to any liability on the part of eBay.  Third-party search engines do not access images on eBay's servers after eBay takes down the listings.  *See* 56.2 ¶ 267 (citing Spickler Decl.).  Rather, search engines crawl eBay's website and may make a thumbnail copy of an image contained in a listing while the listing is active.  That copy is stored *on the search engine's own servers* and may be accessible even after eBay takes the listing down because eBay has no control over (and consequently no liability for) the search engine's copies.  *See id.*

1  formalistically require a complete expunging even of storage copies of the type

2  temporarily maintained by eBay also would impede eBay's ability to perform other

3  legally mandated and operationally efficient functions.  *See supra* note 7.

4  **Right and Ability to Control / Direct Financial Benefit**.  Section 512(c)

5  also requires that the defendant "not receive a financial benefit directly attributable

6  to the infringing activity, in a case in which the service provider has the right and

7  ability to control such activity." 17 U.S.C. § 512(c)(1)(B).  Rosen's argument fails

8  to address, let alone satisfy, the legal test governing this provision.

9  First, Rosen's "right and ability to control" argument relies on the common-

10  law standard for vicarious infringement and ignores the different and more

11  demanding standard of control under the DMCA.  The DMCA requires an intimate

12  level of involvement by the defendant in the alleged infringement, i.e., control of

13  infringing conduct that goes well beyond the type of control that is required to

14  implement the remedial measures mandated by the DMCA.  *See UMG*, 718 F.3d at

15  1029-30; *Capital Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 526-35

16  (S.D.N.Y. 2013); *Hendrickson*, 165 F. Supp. 2d at 1093-94 (holding that eBay

17  lacked the right and ability to control infringing activity under the DMCA).

18  Control for purposes of section 512(c)(1)(B) means "something more" than just the

19  "general ability to locate infringing material and terminate users' access." *UMG*,

20  718 F.3d at 1030.  The requisite control exists only when a service provider

21  "exert[s] substantial influence on the activities of users."  *Id.* (quoting *Viacom Int'l,*

22  *Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012)).  Substantial influence, in

23  turn, entails exercising substantial and direct authority over infringing conduct,

24  such as promulgating "detailed instructions regard[ing] issues of layout,

25  appearance, and content" and then actively monitoring users' compliance with

26  those instructions.  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d

27  1146, 1173 (C.D. Cal. 2002), *cited in UMG*, 718 F.3d at 1030; *see also Io*, 586 F.

28  Supp. 2d at 1153 (holding that the defendant lacked right and ability to control

EBAY'S OPPOSITION TO PLAINTIFF'S        13        CASE NO. CV13-06801 MWF(Ex)
MOTION FOR SUMMARY JUDGMENT

1    infringing activity where there was "no suggestion that Veoh aims to encourage
2    copyright infringement on its system [and] no evidence that Veoh can control what
3    content users choose to upload before it is uploaded").  Rosen has not claimed, let
4    alone proved, that eBay engaged in any such conduct in relation to the challenged
5    listings.

6        This failure of proof makes unnecessary consideration of any asserted
7    financial benefit reaped by eBay from activities that demonstrably did *not* entail a
8    right or ability to control infringing activity within the meaning of section
9    512(c)(1)(B).  Nonetheless, the record discloses that eBay receives no financial
10   benefit from the listings it takes down and did not so benefit from listings for the
11   8x10 Prints.  To the contrary, eBay refunds all fees when it takes down a listing, as
12   it did in response to each of Rosen's NOCIs for the 8x10 Prints.  56.2 ¶ 34.

13       Equally unavailing is Rosen's bald assertion that eBay "increases its ability
14   to charge for advertising on its website" by hosting infringing material that
15   allegedly serves as a "'draw' for customers."  Motion at 18-19.  Establishing that
16   infringement is a "draw" requires evidence of a "causal relationship" between
17   infringing activity and the defendant's profit.  *Ellison v. Robertson*, 357 F. 3d 1072,
18   1079 (9th Cir. 2004).  This can be shown only where the defendant cultivates
19   infringement to attract users.  *See, e.g.*, *Columbia Pictures Indus. v. Fung*, 710 F.3d
20   1020, 1045 (9th Cir. 2013) (defendant "attracted primarily visitors who were
21   seeking to engage in infringing activity, as that is mostly what occurred on his sites;
22   and encouraged that infringing activity"); *Arista Records LLC v. Lime Grp. LLC*,
23   784 F. Supp. 2d 398, 428 (S.D.N.Y. 2011) (defendant "promoted [its] infringing
24   capabilities" and "assisted users in committing infringement").  Rosen's cynical and
25   unfounded characterizations of eBay's conduct are belied by the record, which
26   reflects a corporate culture and practices aimed at *reducing* instances of
27   infringement on eBay's site.  eBay's conduct is thus the antithesis of using
28   infringement as a "draw" for customers.  *See supra* pp. 4-6.

**Other Requirements**.  Finally, eBay satisfies all other applicable requirements for the section 512(c) safe harbor.

First, there is no dispute that eBay has designated an agent to receive notifications of claimed infringement and displays the agent's contact information online.  *See* 17 U.S.C. §512(c)(2); 56.1 ¶ 117.

Second, eBay has adopted and reasonably implemented a policy that provides for terminating, in appropriate circumstances, the accounts of sellers who are repeat infringers, *see* 17 U.S.C. § 512(i)(1)(A); *supra note 4*, and informs its users of this policy on its website.  *See* § 512(i)(1)(A); 56.1 ¶ 115.  Indeed, the record shows that eBay has suspended tens of thousands of repeat offenders pursuant to an escalating series of penalties ranging from temporary restrictions on the number of items a seller may list to permanent suspension of the seller's account.  56.1 ¶¶ 32-35, 116.  Against this evidence, Rosen asserts without any support that eBay "often" permits "repeat/serial infringers to continue to auction/sell infringing goods" and that "there is a very high probability that a seller who receives one NOCI will . . . become a serial/repeat infringer."  Motion at 9.  Such vague and unsupported accusations do not raise a genuine issue of material fact as to the reasonable implementation of eBay's repeat-infringer policy.  *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109-11 (9th Cir. 2007) (holding that a reasonably implemented policy can utilize a "variety of procedures" and does not require that the service provider "affirmatively police its users for evidence of repeat infringement"); *Corbis*, 351 F. Supp. at 1103 ("An infringement policy need not be perfect; it need only be reasonably implemented.").

Third, Rosen points to no evidence that eBay interferes with, or otherwise fails to accommodate, any "standard technical measures" used by copyright owners to identify or protect their works.  17 U.S.C. § 512(i)(1)(B).

Accordingly, Rosen's allegations of infringement pertaining to listings of his 8x10 Photos are shielded from liability by eBay's compliance with the safe harbor

provisions of section 512(c) of the DMCA.  This recognition warrants not only

denying Rosen's motion for summary judgment as to such listings but also granting

eBay's cross-motion for summary judgment dismissing those claims.

### B.     eBay Has Neither Directly Nor Secondarily Infringed Rosen's Copyrights in the 8x10 Prints

Insofar as Rosen has failed to establish proper registrations for his works and

also failed to show that eBay's takedowns of the 8x10 Print listings do not qualify

for DMCA protection, the Court need not even reach Rosen's claims of direct and

secondary infringement related to these listings in order to deny Rosen's summary

judgment motion.   Nevertheless, those claims equally have no merit.

### 1.     *eBay Did Not Directly Infringe Rosen's Copyrights*

Rosen contends that eBay directly infringed his copyrights by various

asserted acts of copying, distribution, and display of his works.  Motion at 16-17.

As discussed in eBay's cross-motion, however, Rosen's direct infringement claims

fail because he has not proven that *eBay*, as opposed to eBay *users*, caused any of

the various acts by which he contends his 8x10 Prints were infringed.  Direct

infringement of any of the section 106 copyright rights requires volitional conduct,

and "[the] requirement of 'volitional conduct' . . . focuse[s] the inquiry on whether

the defendant directly caused the infringement to take place." *Perfect 10, Inc. v.*

*Giganews, Inc.*, No. 11-cv-7098 AHM, 2013 WL 2109963, at *5-7 (C.D. Cal. Mar.

8, 2013); *see also Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th

Cir. 2014) ("Infringement of the reproduction right requires copying *by* the

defendant, which comprises a requirement that the defendant cause the copying.")

(internal quotation marks and citations omitted); *Cartoon Network LP, LLLP v.*

*CSC Holdings, Inc.*, 536 F.3d 121, 132 (2d Cir. 2008).  The "pivotal factor" in

determining whether there was a "volitional act" of infringement is the "initiation

of the act of copying." *In re Autohop Litig.*, No. 12 Civ. 4155 (LTS)(KNF), 2013

WL 5477495, at *5-6 (S.D.N.Y. Oct. 1, 2013), with "copying" understood as

1   "shorthand for the infringing of any of the copyright owner's five exclusive rights."

2   *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (quoting

3   *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir.1989)).

4        The infringing use of a defendant's automated systems by a third party does

5   not render the defendant directly liable.  As the Ninth Circuit explained in *Fox*:

6              [O]perating a system used to make copies at the user's
             command does not mean that the system operator, rather
7             than the user, caused copies to be made.  Here,
             [defendant's] program creates the copy only in response
8             to the user's command.  Therefore, the district court did
             not err in concluding that the user, not [defendant], makes
9             the copy.

10  747 F.3d at 1067; *see also Giganews*, 2013 WL 2109963, at *7 (finding no direct

11  infringement where defendants "simply programmed their servers to automatically

12  copy, distribute, and display content, including infringing content, uploaded by . . .

13  users"); eBay's Motion for Summary Judgment at 11 (citing additional cases).  The

14  record here shows that the eBay sellers who created and uploaded the listings—not

15  eBay or any of its employees—directly caused the allegedly infringing copying,

16  display, and distribution by uploading the digital images at issue.

17       Rosen's reliance on *Hotaling v. Church of Jesus Christ of Latter-Day Saints*,

18  118 F.3d 199 (4th Cir. 1997), for the proposition that simply making works

19  *available* for distribution itself infringes a copyright owner's right of distribution.in

20  violation of section 106(3) of the Copyright Act, Motion at 17, is misplaced.

21  *Hotaling* is widely regarded as an outlier whose holding is limited to its peculiar set

22  of facts.[14]   The overwhelming weight of authority requires a showing that the

23  defendant *actually distributed copies of* the works in issue to the public.  *See, e.g.*,

24  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) (in

25  ――――――――――――――――
26  [14] The defendant church's main library held one "legitimate" copy of the plaintiff's
    work but made several unauthorized copies for its branch libraries.  The issue was
    whether the unauthorized copies available in the branch libraries could be deemed
27  to have been "distributed" to the public in violation of section 106(3).  Rather than
    straightforwardly condemn the copying as infringing the section 106(1)
28  reproduction right the court held that the distribution right had been infringed.

context of Google's linking to full-size images on third-party websites, holding that "distribution" requires "actual dissemination" of a copy); *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 802-04 (N.D. Cal. 2005) (rejecting *Hotaling* "to the extent [it] suggests that a mere offer to distribute a copyrighted work gives rise to liability under section 106(3)"); *see also Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1224-25 (D. Minn. 2008) (expressly rejecting *Hotaling* as contrary to the "logical statutory interpretation of § 106(3), the body of Copyright Act case law, and the legislative history of the Copyright Act"); *Elektra Entm't Grp. v. Barker*, 551 F. Supp. 2d 234, 243 (S.D.N.Y. 2008) (surveying cases and rejecting *Hotaling*'s reasoning as "not grounded in the statute").

Even the case Rosen cites, *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) (*see* Motion at 13), rejects *Hotaling* and concurs with "the great weight of authority" that merely making a copyrighted work available is insufficient to constitute distribution unless a copy has actually been distributed to a member of the public. *Id.*; *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 168 (D. Mass. 2008) ("Merely because the defendant has 'completed all the steps necessary for distribution' does not necessarily mean that a distribution has actually occurred.").

### 2. *eBay Did Not Secondarily Infringe Rosen's Copyrights*

Rosen's attempt to show that eBay is secondarily liable is also unsupported by the record.  Contributory infringement requires that the defendant (1) have had knowledge of the sellers' infringing activity and (2) have induced, caused, or materially contributed to the infringing conduct.  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  A computer system operator such as eBay can be contributorily liable only if it has "actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works."  *Rosen v. Hosting Servs., Inc.*, 771 F. Supp. 2d 1219, 1222 (C.D.

Cal. 2010) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1172).

Rosen fails to make this showing, as it is undisputed that as soon as eBay learned of

the allegedly infringing 8x10 Prints, it took down the corresponding listings and

thus did *not* "continue[] to provide access" to those allegedly infringing works.  *See*

*supra* pp. 11-13; *UMG*, 718 F.3d at 1023 (granting summary judgment for

defendant who "promptly removed infringing material when it became aware of

specific instances of infringement"); *cf. Napster*, 239 F.3d at 1021-22 (holding that

contributory liability exists only where the defendant was aware of specific

infringing material available through its system but failed to remove the material).

In addition, given its prompt removal of listings for the 8x10 Print listings, eBay

did not "induce, cause, or materially contribute" to infringement of Rosen's works.

*Visa*, 494 F.3d at 796.

Nor can Rosen establish vicarious infringement, which requires that the

defendant have (1) the right and ability to supervise the third-party sellers'

allegedly infringing conduct and (2) a direct financial interest in their infringing

activity.  *See Visa*, 494 F.3d at 802.  Rosen argues (erroneously) that eBay "does

not dispute that has [*sic*] the right and ability to prevent its users from infringing

Rosen's photographs."  Motion at 21.  In fact, although eBay's policies do prohibit

copyright infringement by users, and eBay can and does suspend the accounts of

users who repeatedly infringe others' copyrights, eBay cannot "prevent its users

from infringing Rosen's photographs" because the *users* are responsible for

selecting the images for their listings; eBay *has no legal, operational or other*

*control over these third parties' activities* such that it could preemptively bar them

from making infringing postings.  Vicarious liability requires the right and ability

"to supervise and control the *infringement*, not just affect it." *Visa*, 494 F.3d at 805

(emphasis added); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1173 (holding

that Google was not vicariously liable because it lacked the "legal right to stop or

limit the direct infringement" by third parties).

Vicarious infringement requires not only the "legal right to stop or limit [users'] allegedly infringing conduct" but also "the practical ability to do so," *Visa,* 494 F.3d at 816 n.11, and eBay simply does not have the ability (much less the legal obligation) to actively police the hundreds of millions of listings on its website for infringement.  *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071-72 (9th Cir. 2013) (holding that mobile phone carrier lacked right and ability to supervise infringing conduct on its network given the system architecture and the absence of a low-cost, effective way to stop infringement).  By contrast, the Ninth Circuit held that Napster was likely to be vicariously liable only where it had "the ability to locate infringing material listed on its search indices" and failed to do so.  *Napster*, 239 F.3d at 1024.  Similarly, in *Disney Enterprises v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013), *cited in* Motion at 20-21, the defendant adopted but failed to properly use technology that it claimed was "effective in filtering and targeting infringing works." *Id.* at *41.  Unlike in *Napster* and *Hotfile*, eBay generally *cannot* determine whether items offered for sale (or images of them) infringe copyrights.  *See supra* p. 5.  Moreover, the *Napster* and *Hotfile* defendants' reluctance to use readily available means to identify and eliminate infringing material on their sites reflected the fact that their online services actually encouraged and accommodated infringing uses.  *See Napster*, 239 F.3d at 1011-12 (describing MP3 music file-sharing service that allowed users to copy, index, and distribute music from audio CDs); *Hotfile*, 2013 WL 6336286, at *2-3 (describing "file distribution network" that "reward[ed] users for giving away access to files they possess").  eBay, in stark contrast, works to *reduce* infringing uses on its website.  *Se*e *supra* pp. 4-6.

eBay also lacks a direct financial interest in its users' allegedly infringing activity.  *See Visa*, 494 F.3d at 802.  As noted, rather than seeking to profit from infringement on its site, eBay refunds all fees associated with listings it takes down through the VeRO process.  *See supra* p. 6.  The fees eBay charges are not causally

related to infringement, as the vicarious infringement standard requires. *See Ellison*, 357 F.3d at 1078-79. Unlike in *Napster*, for example, in which infringing content was shown to be a "draw" for customers, 239 F.3d at 1023, there is no similar evidence against eBay, which is committed to creating a safe trading environment that earns the good will of its users. *See supra* p. 4.

### C.   eBay Is Not Liable for Worthpoint's Alleged Infringements

Rosen's effort to hold eBay liable for a handful of 8x10 Prints that appeared on Worthpoint—an unaffiliated non-party website with which eBay has no relationship of any kind—is based entirely on inadmissible hearsay and speculation. *See supra* pp. 7-8.[15]  Rosen speculates that eBay is linked to Worthpoint because eBay's licensee, Terapeak (another third party), purportedly provided infringing material to Worthpoint. *See* Motion at 6-8. But Rosen fails to explain how these independent sets of relationships could lead to imposition of liability on eBay for conduct by Worthpoint, and the only record evidence relevant to this claim contradicts Rosen's speculative theory of liability. It shows that eBay: (1) has no agreement with Worthpoint; (2) does not license its sellers' uploaded images to Terapeak; and (3) does not transmit image files to Terapeak. *See supra* pp. 7-8 & n.8. Accordingly, there is no factual basis for an infringement claim against eBay based on the appearance of three of Rosen's images on Worthpoint's website.[16]

---

[15] *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 983-84 & n.28 (9th Cir. 2007) (rejecting "speculative testimony" and "hearsay" because evidence offered in summary-judgment papers "must be admissible").

[16] Rosen admitted that he did not send eBay any DMCA notifications concerning images on Worthpoint and that "there would be no reason to send eBay a notice" about infringing images on Worthpoint. 56.1 ¶ 118; Rosen Dep. 249:21-250:8.

## IV.   ROSEN'S CLAIMS AS TO THE MAGAZINE PHOTOS ALSO FAIL ON MULTIPLE GROUNDS

### A.   Digital Snapshots of the Magazines Posted in Connection with the Lawful Resale of the Magazines Are Fair Use

Rosen has admitted that he licensed the use of the Magazine Photos in the print magazines.  56.1 ¶ 100.[17]  Under the first-sale doctrine, "the owner of a particular copy or phonorecord lawfully made under [the Copyright Act] . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."  17 U.S.C. § 109(a).  Therefore, neither the original publication of the magazines nor the resale of lawfully made copies of the magazines is actionable.  Rosen nevertheless apparently takes the novel position that even though one may sell on eBay print magazines that contain his work, *posting an image of the magazine in connection with a listing for sale of the magazine is infringing.  See* Rosen Decl. ¶ 9.  For the reasons explained in eBay's cross-motion, the Magazine Photos posted on eBay clearly constitute fair use.  *See* eBay's Motion for Summary Judgment at 17-24.

As eBay has shown, the first fair-use factor—the purpose and character of the use, 17 U.S.C. § 107(1)—strongly favors fair use.   The "central purpose" of this inquiry is to determine "whether the new work merely supersede[s] the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (internal quotation marks and citations omitted).   The incidental use of the Magazine Photos by eBay users was transformative because it served "an entirely different function" from the

---

[17] Perhaps recognizing the significance of this admission, Rosen half-heartedly backpedals in his declaration by vaguely asserting that "some, but not all" of the Magazine Photos "may have been" licensed.  Rosen Decl. ¶ 6.  But that contradicts Rosen's prior testimony, *see* 56.1 ¶ 100, and, indeed, Rosen fails to identify even a single Magazine Photo that he contends was not licensed.

original photographs.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003).  As in *Kelly*, where a search engine's use of the plaintiff's photographs served a different function —"improving access to information on the internet versus artistic expression," *id.* at 818-19—use of the Magazine Photos on eBay also served a different function—indicating that the magazine was for sale and allowing potential buyers to see the offered item versus artistic/editorial expression.

There also is no evidence that this use of the Magazine Photos—a use directed at promoting lawful sales of second-hand magazines—would  have "an adverse impact on the market of the original" Rosen photographs.  *Kelly*, 336 F.3d at 821; *see* 56.1 ¶¶ 104, 111-12.  Thus, the crucial fourth fair-use factor, market harm, 17 U.S.C. § 107(4), strongly favors fair use.  Indeed, because, as explained, the use is transformative, Rosen does not have the right to foreclose it.  *See, e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006) (copyright owners "may not preempt exploitation of transformative markets").

The second statutory factor—the nature of the copyrighted work, 17 U.S.C. § 107(2)—is of little moment, as it "may be of limited usefulness where [a] creative work . . . is being used for a transformative purpose," *Bill Graham Archives*, 448 F.3d at 612, nor does the third factor—the amount and substantiality of the portion used, 17 U.S.C. § 107(3)—help Rosen.  As in *Kelly*, copying Rosen's photos in their entirety was "reasonable" because it was "necessary . . . to copy the entire image to allow users to recognize the image."  336 F.3d at 821.  Thus, all four statutory factors either favor fair use or are neutral.

Any doubt about fair use should be resolved in eBay's favor due to the public benefits that flow from use of the Magazine Photos on eBay.  *See, e.g.*, *Kelly*, 336 F.3d at 819-20 (noting that the defendant's search engine "benefit[s] the public by enhancing information-gathering techniques on the internet").  The predictably crippling impact on secondary markets for a variety of legitimate merchandise if entities like eBay were barred from permitting sellers to post images of the

/* */

merchandise underscores the strong public interest in holding that Rosen may not restrict the transformative, non-competing use of his photographs in eBay listings.

### B.   eBay Did Not Directly Infringe Rosen's Copyrights in the Magazine Photos

Even if fair use did not protect the Magazine Photo listings, Rosen's direct infringement claims would fail for the same reason as his direct infringement claims with respect to the 8x10 Prints—namely, that eBay did not cause the allegedly infringing acts. *See supra* pp. 16-18. Like the 8x10 Prints, the Magazine Photos appeared on eBay's website because *eBay users uploaded them* using eBay's automated systems. Accordingly, eBay is not directly liable even if the images were found to be infringing. *See id.*

As to a handful of the Magazine Photos, Rosen argues that eBay directly infringed by "intentionally repost[ing]" listings that had been taken down through the VeRO process. Motion at 17; *see also* Rosen Decl. Ex. 176 (identifying in "Notes" column certain Magazine listings allegedly "willfully reposted by eBay"). But the record shows that it was third-party sellers, not eBay, who created these listings and thus "actually caused the [alleged] infringement." *Giganews*, 2013 WL 2109963, at *9; *see supra* pp. 16-18. The listings reappeared on eBay's website because eBay reversed its initial decision to take them down after Rosen explained that the printed Magazines did not infringe his copyrights. As a result, eBay determined that the posted images of the Magazines were fair use and thus not actionable. 56.1 ¶ 101; *see also, e.g.*, 56.2 ¶¶ 46, 51. The eBay "repostings" are properly viewed not as independent volitional acts but rather as simply reinstating/restoring the user-posted listing, which should not trigger separate copyright-law scrutiny. To conclude otherwise would penalize eBay for responding in good faith to Rosen's takedown requests while it evaluated the validity of his claims.

### C.    Rosen Cannot Establish Contributory or Vicarious Infringement

As discussed in Point IV.A above and in eBay's cross-motion, eBay generally did not immediately take down listings for the Magazine Photos upon notification from Rosen because it concluded that these listings made fair use of Rosen's photographs.  56.1 ¶ 101.  eBay therefore lacked the requisite "knowledge of infringing activity" required to support a claim of contributory infringement. *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1373-74 (N.D. Cal. 1995).  The existence of even a "colorable claim of fair use" protects eBay from contributory infringement liability for failing to take down the Magazine listings because it is "beyond the ability of a [service provider] to quickly and fairly determine" whether fair use applies.  *Id.*; *see generally Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 707 (D. Md. 2001) ("Netcom stands for the proposition that the bare claim of infringement by a copyright holder does not necessarily give rise to knowledge of an infringement."), *aff'd*, 373 F.3d 544 (4th Cir. 2004).

Moreover, as with the 8x10 Prints, eBay lacked the right and ability to supervise and control its users' allegedly infringing conduct, and it did not receive a direct financial benefit from infringing activity.  *See supra* pp. 19-21.[18]  Rosen therefore has no vicarious infringement claim as to the Magazine Photos.

### CONCLUSION

For the foregoing reasons, Rosen's motion should be denied in its entirety.

---

[18] eBay refunded the current fees associated with the Magazine listings.  *See* 56.2 ¶¶ 87, 115, 131, 144, 158, 243, 246.

1    Dated:  October 3, 2014                WEIL, GOTSHAL & MANGES LLP

2                                           By:        *s/ R. Bruce Rich*

3                                                      R. Bruce Rich

4                                           WEIL, GOTSHAL & MANGES, LLP

5                                           767 Fifth Avenue
6                                           New York, NY 10153

7                                           Attorneys for Defendant
8                                           EBAY INC.

## Appendix A:
### Works and Uses At Issue in Second Amended Complaint

| SAC Ex. | SAC ¶¶ | Item No.[19] | Subject | Published? | Type of Use |
|---|---|---|---|---|---|
| Ex. 1 | 11, 13, 18, 20, 22, 24 | 12 | Sofia Vergara | Yes | magazine |
| Ex. 2 | 12, 14, 19, 21, 23, 25 | 12 | Sofia Vergara | Yes | magazine |
| Ex. 3 | 15 | 13 | Sofia Vergara | Yes | 8x10 |
| Ex. 4 | 16 | 13 | Sofia Vergara | Yes | 8x10 |
| Ex. 5 | 17 | 13 | Sofia Vergara | Yes | 8x10 |
| Ex. 6 | 26, 37, 43, 51, 59, 65 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 7 | 27, 38, 60, 66 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 8 | 28, 39, 45, 53, 61-62, 67 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 9 | 29, 40, 46, 54, 68 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 10 | 30, 47, 55 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 11 | 31, 48, 56 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 12 | 32 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 13 | 33 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 14 | 34 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 15 | 35, 41, 49, 57, 63, 69 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 16 | 36, 42, 50, 58, 64, 70 | 6 | Joanna Krupa | Yes | magazine |
| Ex. 17 | 44, 52 | 8 | Joanna Krupa | Yes | magazine |
| Ex. 18 | 71 | 3 | Natalia Sokolova | Yes | magazine |

---

[19] "Item No." refers to the number assigned to the work at issue in Exhibit A to Plaintiff's Second Amended Complaint, dated December 16, 2013.

| SAC Ex. | SAC ¶¶ | Item No.[19] | Subject | Published? | Type of Use |
|---|---|---|---|---|---|
| Ex. 19 | 72 | 3 | Natalia Sokolova | Yes | magazine |
| Ex. 20 | 73, 76-77 | 3 | Natalia Sokolova | Yes | magazine |
| Ex. 21 | 74, 78, 80 | 30 | Natalia Sokolova | Yes | magazine |
| Ex. 22 | 75, 79, 81 | 29 | Natalia Sokolova | Yes | magazine |
| Ex. 23 | 82, 84 | 19 | Priscilla Taylor | Yes | magazine |
| Ex. 24 | 83, 85 | 19 | Priscilla Taylor | Yes | magazine |
| Ex. 25 | 86 | 21 | Daisy Fuentes | Yes | 8x10 |
| Ex. 26 | 87 | 22 | Daisy Fuentes | No | 8x10 |
| Ex. 27 | 88 | 28 | Angela Taylor | Yes | magazine |
| Ex. 29 | 88 | 28 | Angela Taylor | Yes | magazine |
| Ex. 30 | 89 | 28 | Angela Taylor | Yes | magazine |
| Ex. 31 | 90 | 28 | Angela Taylor | Yes | magazine |
| Ex. 32 | 91 | 28 | Angela Taylor | Yes | magazine |
| Ex. 33 | 92 | 18 | Jeri ("Jerry") Ryan | Yes | 8x10 |
| Ex. 34 | 93 | 23 | Tawny Kitaen ("Tawny Kitten") | Yes | 8x10 |
| Ex. 35 | 94 | 2 | Chase Masterson | No | 8x10 |
| Ex. 36 | 95 | 2 | Chase Masterson | No | 8x10 |
| Ex. 37 | 96 | 2 | Chase Masterson | No | 8x10 |
| Ex. 38 | 97 | 1 | Anna Kournikova | Yes | 8x10 |
| Ex. 39 | 98 | 1 | Anna Kournikova | Yes | 8x10 |
| Ex. 40 | 99 | 25 | Anna Kournikova | Yes | 8x10 |
| Ex. 41 | 100 | 25 | Anna Kournikova | Yes | 8x10 |
| Ex. 42 | 101 | 24 | Gena Lee Nolin | Yes | 8x10 |
| Ex. 43 | 102 | 26 | Gena Lee Nolin | Yes | 8x10 |

| *SAC Ex.* | *SAC ¶¶* | *Item No.[19]* | *Subject* | *Published?* | *Type of Use* |
|---|---|---|---|---|---|
| Ex. 44 | 103 | 27 | Ali Landry | No | 8x10 |
| Ex. 45 | 105 | 31 | Jeri ("Jerry") Ryan | Yes | 8x10 |
| Ex. 46 | 106 | 32 | Erika Eleniak | No | 8x10 |
| Ex. 50 | 111 | 33 | Anna Kournikova | Yes | 8x10 |
| Ex. 51 | 111, 112 | 33 | Anna Kournikova | Yes | 8x10 |
| Ex. 52 | 112 | 33 | Anna Kournikova | Yes | 8x10 |
| Ex. 53 | 113-114 | 34 | Anna Kournikova | Yes | magazine |
| Ex. 54 | 115 | 38 | Ali Landry | No | 8x10 |
| Ex. 55 | 116 | 39 | Anna Kournikova | Yes | 8x10 |
| Ex. 56 | 117, 119 | 36 | Gena Lee Nolin | Yes | 8x10 |
| Ex. 59 | not referenced in SAC | n/a | Gena Lee Nolin | Unclear | 8x10 |
| Ex. 60 | 120 | 26 | Gena Lee Nolin | Yes | 8x10 |
| Ex. 61 | 118 | 36 | Gena Lee Nolin | Yes | 8x10 |