JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BARRY ROSEN,                          )   Case No.  CV 13-6801 MWF (Ex)
                                      )
                    Plaintiff,        )   **ORDER RE MOTIONS FOR**
         v.                           )   **SUMMARY JUDGMENT [64; 73]**
                                      )
eBAY, INC., et al.,                   )
                                      )
                    Defendants.       )
                                      )
                                      )
_____)

     Before the Court are cross motions for summary judgment filed by Plaintiff Barry Rosen and Defendant eBay, Inc. ("eBay").   Rosen filed his Motion for Partial Summary Judgment re Liability for Copyright Infringement (the "Rosen Motion") on September 5, 2014.  (Docket No. 64).  eBay filed its Motion for Summary Judgment (the "eBay Motion") on the same day.  (Docket No. 73).

     The Court held a hearing on the two Motions on November 8, 2014 and read and considered the briefing on the matters provided by the parties.  For the reasons stated below, the Court **GRANTS** eBay's Motion and **DENIES** Rosen's Motion.

///

## I.    **BACKGROUND**

Rosen initiated this suit by filing a Complaint against eBay on September 16, 2013. (Docket No. 1). Rosen ultimately filed a Second Amended Complaint ("SAC"), which is the operative complaint, on December 16, 2013. (Docket No. 15). Rosen purports to be a professional photographer. (SAC ¶ 7). eBay runs an online marketplace the primary function of which is to allow third parties to buy and sell items listed on eBay's website.

Rosen asserts a variety of direct and indirect copyright claims against eBay. The claims all arise from photographs over which Rosen claims copyright protection and copies of which have appeared in various forms for sale on eBay's online marketplace.

The basic question presented is the extent to which owners of copyright may allege copyright claims against eBay for images of their copyrighted works used on eBay's website in connection with the sale by eBay's users of goods consisting of, or containing in part, their copyrighted works. The two issues this question raises are: *first* the extent to which the safe harbor protections of the Digital Millennium Copyright Act ("DMCA"), codified at 17 U.S.C. § 512, cover eBay; and *second* whether making copies of copyrighted works for the purpose of selling the copyrighted item under the first sale doctrine constitutes fair use.

The issues are best addressed by considering the two types of copied works separately. The first category of material consists of 17 8x10 inch photographs of various celebrities and models (the "8x10 Prints") that have been offered for sale by third parties through eBay's online marketplace. The second category comprises 40 listings of physical copies of magazine back issues containing photographs from a set of 22, over which Rosen also claims copyright protection (the "Magazine Photographs").

This action relates both to the sale of these physical copies on eBay and to the pictures taken and used by the sellers on eBay. Through eBay's activities in hosting and managing the listings and the associated images, Rosen claims eBay has directly violated his copyrights by copying and distributing infringing items after receiving notice that they are copyrighted material and vicariously infringed Rosen's copyrights by profiting from

1 users' infringing activity.  Moreover, eBay has contributorily infringed Rosen's
2 copyrights by "failing expeditiously to remove access to the infringing images."  (Rosen
3 Mot. at 10).

4       Rosen also claims that through eBay's licensing relationship with Terapeak, Inc.,
5 eBay has directly infringed his copyrights by licensing copies of Rosen's work and
6 distributing his images.  (Rosen Mot. at 6, 11).

7       Rosen claims that the 8x10 Prints are all unauthorized copies, but concedes that the
8 Magazine Photographs were printed in magazines under licenses given by him.  However,
9 he contends that the presence of images of both the 8x10 Prints and the Magazine
10 Photographs in eBay's listings and on its servers constitute unauthorized copying and
11 distribution of his work and that eBay's users' activities make eBay vicariously and
12 contributorily liable for copyright infringement.

13 **II.   THE CROSS MOTIONS FOR SUMMARY JUDGMENT**

14       eBay and Rosen have filed cross-motions for summary judgment.  Rosen's Motion
15 requests summary judgment for liability for copyright infringement.  eBay's Opposition to
16 Rosen's Motion and its own Motion raise essentially identical issues; namely, the
17 sufficiency of evidence supporting Rosen's claims, and the DMCA and fair use defenses it
18 asserts to Rosen's claims.  Indeed, the parties frequently cross-referenced arguments
19 raised in briefing across the two motions.

20       As explained below, the Court denies Rosen's Motion as to all of his claims
21 because of a simple factual dispute as to the basis for his maintaining a copyright action in
22 the absence of federal registration of his work that may be easily resolved.  *See* Section
23 III.B, *infra*.  The Court's determination as to eBay's safe harbor and fair use defenses
24 means that eBay is entitled to summary judgment and further support the Court's denying
25 Rosen's Motion.

26 **III.   DISCUSSION**

27       In deciding this Motion under Rule 56, the Court applies *Anderson*, *Celotex*, and
28 their Ninth Circuit progeny.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").  The non-moving party may not simply rely on allegations in its pleadings but must identify specific facts raising a genuine dispute that will be material at trial.  Fed. R. Civ. P. 56(c).

eBay, in its Opposition and its own Motion, asserts four broad reasons as to why it is not guilty of direct, vicarious, or contributory copyright infringement:  ***First***, eBay argues that Rosen has failed to document registration of his photographs, a requirement to assert copyright claims.  (eBay Opp. at 9).  ***Second***, eBay argues that it is shielded from liability by the internet service provider safe harbor provisions of the DMCA as to eBay's infringement claims for the 8x10 Prints.  (eBay Mot. at 10, eBay Opp. at 9-16).  ***Third***, eBay argues its hosting of pictures of the Magazine Photographs cannot lead to copyright liability because the images constitute fair use by its users and by itself to the extent it has direct liability.  (eBay Opp. at 22-24).  ***Fourth***, eBay argues Rosen fails to establish the necessary elements to show eBay's direct, contributory, and vicarious infringement. (eBay Opp. at 16-21, 24-25).

## A.   Evidentiary Objections

In addition to the substantial briefing and exhibits presented to the Court on these motions, the parties both filed objections to the evidence presented in support of the motions.

The two most significant objections relate to the Declaration of David Sterling (the "Sterling Declaration" (Docket No. 64-2)), which was submitted by Rosen along with his Motion, and the Declaration of Kara Ricupero (the "Ricupero Declaration" (Docket No. 122)) and accompanying exhibits submitted by eBay in its Reply.

### 1.   Objections to Sterling Declaration

eBay objects to the Sterling Declaration because it purports to be based on expert knowledge as to the operation of eBay's website and systems.  Rosen did not disclose

1    Sterling to eBay until he submitted his declaration.  eBay further alleges that Sterling

2    lacks adequate knowledge to provide expert opinions and complains that his conclusions

3    are based on conjecture rather than a reliable method.  Indeed, it appears that Sterling's

4    primary basis for his opinion was navigating the websites of eBay, Terapeak and

5    Worthpoint.

6         Rosen's attempt to use the Sterling Declaration is in violation of Rosen's expert

7    disclosure obligations under the Federal Rules of Civil Procedure.  Further, Sterling's

8    declaration does not establish him as an expert under Federal Rule of Evidence 702 as to

9    the opinions he offers.  Sterling's interaction with the websites in question and his

10   qualifications do not show that his testimony, as an expert, would assist the jury in

11   understanding the evidence.  However, Sterling is competent to provide testimony as to

12   what he was able to find online to the extent it does not constitute expert testimony.

13        As explained below, and identified in eBay's objections, much of the substance of

14   Sterling's declaration is either based on mere conjecture or an inaccurate reading of the

15   plain language of the license eBay has with Terapeak (the "Terapeak License").   The

16   Court therefore **SUSTAINS** eBay's objections as to Sterling's purported expert testimony,

17   but **OVERRULES** the objections to the extent they attempt to prevent the Court from

18   considering the content of the websites that Sterling personally observed.

19              **2.       Objections to Ricupero Declaration and Exhibits**

20        Rosen in turn objects to eBay's submission of the Ricupero Declaration along with

21   otherwise undisclosed documents in his Reply.  Ricupero attached to her declaration a

22   number of archived versions of various eBay policies.  Rosen claims that eBay provided

23   the documents only the night before its final briefing on the motions was due and

24   Ricupero was, like Sterling, not disclosed to Rosen at any point, nor were the documents

25   produced.  Rosen also argues that Ricupero could not have personal knowledge of the

26   documents as she was hired by eBay after they were allegedly published.

27        eBay contends that the Ricupero Declaration was purely an additional presentation

28   of evidence in direct response to an argument made by Rosen in his Opposition to its

Motion asserting its DMCA defense.  eBay also argues that the Ricupero Declaration serves merely to authenticate the documents.  Ricupero submits the declaration solely as custodian of records, for which she is qualified as someone familiar with the methods by which eBay stores its documents.  Further, eBay argues it was forced to provide the additional documents because of Rosen's contentions that the Rule 30(b)(6) testimony and Declaration of Cara Baldwin was insufficient to establish that it has adequately published its repeat infringer policy and information regarding its designated agent.  Finally, eBay contends that the documents were not responsive to any of Rosen's requests and it was Rosen's stonewalling and refusal to discuss his 803 document requests that was the cause of the failure of the parties to settle their discovery disputes within the deadline set by the Court.

eBay contends that in light of Rosen's raising the problems with the sufficiency of eBay's DMCA defense, and despite adequate sworn testimony in support, it is entitled to present the new documents.

The Court generally agrees with eBay that Rosen's concerns with the Ricupero Declaration are misguided.  However, the Court is reluctant to consider evidence when presented for the first time in the last round of briefing on a matter.  Ordinarily the Court would allow Rosen a sur-reply to address the arguments and evidence raised by eBay in its Reply.  However, as indicated below, the Court does not believe that this is necessary in light of the sufficiency of the declarations presented by eBay to which there are no valid objections.   Because the Court's ruling would be the same regardless of the Ricupero Declaration, Rosen's objections are **OVERRULED as moot**.

### 3.    Rosen's Objections to eBay's Other Declarations

Rosen also makes numerous objections to the other declarations submitted by eBay in support of its papers on these motions.  Rosen's objections are primarily for lack of relevance, lack of personal knowledge, and "inadmissible conclusion and opinion."  The objections, however, appear to be largely unsubstantiated and have little basis.  The Court **OVERRULES** Rosen's objections as to relevance.  To the extent the content of the

declarations have a bearing on the disposition of the motions, such portions are relevant and will be considered by the Court.

Rosen also appears to object to eBay's employees' personal knowledge of eBay's operations and practice in the areas within which they work. However, Rosen provides no justification as to why these employees do not have personal knowledge of the subject of their declarations in light of the explanations of their responsibilities and experience. Rosen also makes a number of seemingly nonsensical objections that facts are "inadmissible conclusion and opinion," including such statements that witnesses "make the following declaration on personal knowledge." The Court **OVERRULES** these objections.

Rosen also objects on the basis of hearsay. However, to the extent the declarations seek to show the existence of policies or emails, they are not being presented for the truth of their contents and therefore are not hearsay. The hearsay objections are likewise **OVERRULED**.

Further, Rosen objects that eBay has been guilty of a number of discovery failures, including failure to produce certain documents that are relevant to eBay's current assertion of various defenses. However, it is too late for Rosen to make such objections. If Rosen believed he was entitled to more documents he should have brought a timely motion to compel. Similarly, Rosen's concerns with Cara Baldwin's preparation as eBay's Rule 30(b)(6) representative should have been addressed before the close of discovery. The objections based on purported discovery failures are **OVERRULED.**

Finally, Rosen objects to the declarations of a variety of people because they were not deposed, or because their testimony overlaps with the subject matter of the Rule 30(b)(6) designees. Rosen's complaints about the Declarations of Larry Taylor and Randy Strickler are unfounded because they were disclosed by eBay and it was Rosen's choice not to depose them. Rosen is also wrong that Cara Baldwin is the only person who can provide testimony on the topics on which she was deposed as eBay's Rule 30(b)(6) witness. *See LG Elecs. v. Whirlpool Corp.*, No. 08-C-242, 2010 WL 3714992, at *1 (N.D.

Ill. Sept. 14, 2010) (holding that testimony on Rule 30(b)(6) topics was not limited to the testimony of the designated Rule 30(b)(6) witness).  Objections based on these grounds are **OVERRULED**.

As to much of this evidence, the Court would have ruled the same way whether the evidence was admissible or not.  Likewise, any remaining objections are **OVERRULED as moot** for the same reason.

### B.    Existence of Copyright Registration

Rosen has provided a variety of registration certificates.  (Rosen Decl. Ex. 1). Rosen has also provided copies of the "relevant Photographs related to each of the registrations" as asserted in his Declaration.  (Rosen Decl. ¶ 3).  eBay argues that Rosen's presentation of the certificates and his claim that the photographs are those covered by the certificates are not sufficient to establish that the claimed photographs are indeed federally registered.  Therefore, eBay asserts Rosen is not entitled to summary judgment.

As the district court explained in *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1115 (W.D. Wash. 2004) (hereinafter "*Corbis*"), "[w]ithout the deposit, there remains a legitimate question of fact regarding whether the . . . Photo is protected by [the] Registration" certificates presented.   Therefore, there exists a genuine issue of material fact as to the registration of the 8x10 Prints and Magazine Photographs.

Because federal registration of copyright is required to maintain a suit for copyright infringement, a factual dispute as to the registration of Rosen's asserted copyright precludes summary judgment as to his copyright claims.  This lack, however, could have been easily remedied by either party obtaining the deposit copies from the Copyright Office to establish Rosen's registration of the works.

Accordingly, as a technical matter, Rosen's Motion is **DENIED without prejudice**. Nonetheless, the Court will address the arguments made in both Motions on the assumption that Rosen has registered the disputed works.

///

///

C.     **eBay's Alleged Infringement**

Rosen alleges two basic forms of direct infringement of his copyright. ***First***, Rosen argues that in creating the listings eBay creates a copy of the copyrighted image and stores it on its servers.  These images are then distributed to the public in a number of ways.  They are accessible after the listing has been taken down, they are distributed to Terapeak subject to eBay's license with it, they are also subsequently available on the website www.worthpoint.com, and they are distributed by eBay to its content delivery network ("CDN") providers. ***Second***, Rosen argues that eBay directly infringed Rosen's work when it reposted listings of certain Magazine Photographs after taking them down in response to Rosen's Notice of Copyright Infringement ("NOCI").

eBay argues that it does not engage in any direct infringement because its processes are automated.  For the same reason, eBay argues that it enjoys the safe harbor protections for internet service providers established by the DMCA.  Further, eBay argues that the Magazine Photographs fall within the fair use doctrine.

Direct infringement of any of the section 106 copyright rights requires volitional conduct, and "[the] requirement of 'volitional conduct' . . . focuse[s] the inquiry on whether the defendant directly caused the infringement to take place." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-7098 AHM, 2013 WL 2109963, at *5-7 (C.D. Cal. Mar. 8, 2013) (hereinafter *Giganews*); see also *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) ("Infringement of the reproduction right requires copying by the defendant, which comprises a requirement that the defendant cause the copying.") (internal quotation marks and citations omitted).

Therefore, as explained by the Ninth Circuit in *Fox*, a third party's infringing use of a defendant's automated systems does not render the defendant directly liable.  747 F.3d at 1067 (holding that where a system makes copies at a user's command, the operator of that system is not liable for direct infringement); *see also Giganews*, 2013 WL 2109963, at *7 (finding no direct infringement where defendants "simply programmed their servers ///

-9-

to automatically copy, distribute, and display content, including infringing content, uploaded by . . . users").

Therefore the Court rejects Rosen's claims that eBay directly infringes the 8x10 Prints as a result of its users putting them on eBay's servers and making them publicly available.

***The Terapeak and Worthpoint Images***:  Rosen further argues that through its license with Terapeak, eBay distributes copies of his copyrighted works and therefore directly infringes his rights.  eBay objects to Rosen's characterizations on two counts, as well as to the evidence Rosen presents in support.

eBay acknowledges that Terapeak has a license with eBay that allows it to access various data from eBay's sales.  However, the Terapeak License does not include providing pictures to Terapeak.  (Kimden Decl. Ex. 5 at 10-11).  Rosen relies on the Sterling Declaration to support his claims that eBay allows Terapeak to access its data files, including images, and that eBay distributes such data files.

As noted above, eBay objects to Sterling's Declaration.  Notwithstanding the Sterling Declaration, the Terapeak License makes clear that images are not part of the data eBay provides to Terapeak.  "Data" is defined by the License agreement as "certain raw data files collected by eBay relating to closed eBay Listings that . . . contain the data fields set forth in Exhibit A."  (Terapeak License at 1).  The data listed in Exhibit A that eBay provides to Terapeak does not include image files.  (Terapeak License at 10-11).

Further, Rosen provides no evidence that there is any relationship between Worthpoint and eBay beyond the supposition in the Sterling Declaration.  Even then, were there to be some connection between eBay and Worthpoint through Terapeak, since the evidence indicates eBay does not provide Terapeak with images, the presence of eBay images on Worthpoint is irrelevant without evidence that eBay distributed these images to Worthpoint.

///

///

-10-

In the absence of admissible evidence that eBay distributes its pictures to Terapeak, Rosen fails to establish that eBay directly infringes its copyright through its license and interaction with Terapeak.

### D.   **DMCA Safe Harbor**

eBay argues that it is not liable in any form for any of the infringing content because it is protected by the § 512 safe harbor provisions in the DMCA.  17 U.S.C. § 512(c); (eBay Opp. at 12).  Section 512(c) establishes a safe harbor from copyright liability for a service provider's "storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  eBay argues that the images are put up "at the direction of its users" and it has fully complied with the notice and take-down provisions of the DMCA, and so, as an internet service provider, enjoys the safe harbor protections of 17 U.S.C. § 512(c).  (eBay Opp. at 12).

Safe harbor protection is dependent on a service provider meeting certain criteria, most notably implementing an adequate notice and take-down process by which copyright owners can get infringing materials removed from a site.  eBay argues that its Verified Rights Owner ("VeRO") program is designed to, and does, meet the statutory requirements of § 512(c).  Rosen contests that eBay has failed to established that it qualifies for the safe harbor protections of § 512(c).

As a preliminary matter, a service provider can only receive safe harbor protection if it:

> (A)   has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

///
///

-11-

(B)     accommodates and does not interfere with standard technical

measures [by which copyright holders may identify and protect

copyright materials].

17 U.S.C. § 512(i); *see Perfect 10, Inc. v. CCBill, LLC*  488 F.3d 1102, 1109 (9th Cir.

2007) (hereinafter *CCBill*) (holding that "to be eligible for any of the four safe harbors . . .

a service provider must first meet the threshold conditions set out in § 512(i)").

The Court must therefore determine whether eBay has (1) adopted and (2)

reasonably implemented a policy for the termination of repeat infringers, and (3) that it

has informed subscribers and account holders of the repeat infringer termination policy.

Rosen asserts that eBay fails to establish that it has reasonably implemented an

appropriate repeat offender policy (Rosen Opp. at 4-8), or that it has adequately informed

its subscribers of the policy.  (Rosen Opp. at 10).

### 1.     Adoption and Reasonable Implementation of a Repeat Infringer Policy

Implementation is "reasonable" if, "under 'appropriate circumstances,' the service

provider terminates users who repeatedly or blatantly infringe copyright."  *CCBill*, 488

F.3d at 1109.

Rosen does not contest that eBay promptly removed the listings of the 8x10 Prints

after he informed eBay they were posted in violation of his copyright.  Instead, Rosen

argues that while eBay "claims that [it] has 'suspended from its site tens of thousands of

users who repeatedly list infringing items or otherwise violate eBay policies'" it has not

provided documentation of such suspensions or terminations of repeat infringers.  eBay

has submitted declarations indicating that in its attempts to comply with the requirements

of the DMCA, it implemented a policy for the termination of repeat infringers by October

2000 and has since suspended repeat offenders.  (eBay Opp. at 2, n. 1; Baldwin Decl. ¶¶

18, 24-25; Taylor Decl. ¶ 30).

Rosen also argues that eBay fails to satisfy the requirement because "eBay has not

adequately informed its users of the terms of its policy" when they do not "know

-12-

specifically what eBay's policy is." (Rosen Opp. at 8). However, the case law is clear that § 512(i) does not require that a service provider reveal its decision-making criteria to its users. *Corbis*, 351 F. Supp. 2d at 1102. The implementation of the policy "need only put users on notice that they face exclusion from the service if they repeatedly violate copyright laws." *Id.* Further, the implementation of a policy need not be perfect to render it sufficient to qualify a service provider for protection under § 512(c). *Id.* at 1103. The eBay declarations prove, in the absence of contrary evidence from Rosen, that eBay's policy meets these criteria.

Rosen's allegations as to the deficiency of eBay's policy amounts only to a complaint that eBay has not provided full documentation of all terminations and suggestions that eBay does not prove that "there were not *other* repeat infringers who eBay failed to terminate." (Rosen Opp. at 99 (emphasis in original)). In the absence of admissible evidence that eBay's policy is not in fact reasonably implemented, Rosen offers only conjecture for the possibility that eBay may have failed to suspend some repeat infringers and does not establish a genuine dispute of a material fact.

Rosen is correct that this Court may not ignore evidence of eBay's treatment of third party NOCIs. *CCBill*, 488 F.3d at 1113. However, the Court need only consider such evidence if Rosen had presented it to the Court in an admissible form. The evidence eBay has presented is sufficient to establish that its policy is reasonably implemented.

Rosen directs the Court to *Rosen v. Global Net Access, LLC*, No. CV 10-2721-DMG, 2014 WL 2803752 (C.D. Cal. June 20, 2014), where the district court held that defendant GNAX's failure to provide evidence of take downs amounted to a failure to establish a reasonably implemented policy. However, in *Global Net Access*, the court determined that GNAX did not timely produce any evidence of take downs, and that its "failure to produce even a single record of DMCA notification leads this Court to the adverse inference that no 'working notification system' exists." *Id.* at *4. The evidence presented by eBay does not lead this Court to such an inference. Indeed, where it had ///

1    taken GNAX two months to take down Rosen's work, eBay responded within a day of
2    Rosen's requests.
3           Further, other courts have affirmed the adequacy of eBay's notice and take-down
4    policy.  To the extent the district court and Second Circuit decisions in *Tiffany (NJ) Inc. v.*
5    *eBay, Inc.*, are relevant (they apply trademark and not copyright law), they show other
6    courts' recognition of eBay's robust implementation of its notice and take-down
7    procedures.  576 F. Supp. 2d 463 (S.D.N.Y. *2008), aff'd in part, rev'd in part,* 600 F.3d
8    93 (2d Cir. 2010).
9           In light of the Court's rulings on Rosen's evidentiary objections, it will not address
10   Rosen's argument that eBay should be estopped from asserting this defense because of
11   eBay's alleged failures during discovery.  (Rosen Opp. at 6).
12          eBay has provided sworn testimony as to its policy and implementation thereof,
13   evidence of its efficacy as it relates to Rosen's NOCI, and Rosen has provided only
14   conjecture in response.  Even when viewed favorably to Rosen, the evidence does not
15   establish a genuine dispute of material fact.
16                    **2.    Publication of eBay's Repeat Infringer Policy**
17          Rosen also argues that eBay has not established that it adequately published its
18   repeat infringer policy.  Specifically Rosen argues that eBay has not established that the
19   policy it presents to the Court now was either the one that was in existence during late
20   2013, or that it was on eBay's website.
21          Neither of these accusations stands up to scrutiny:
22          ***First***, Baldwin testified that the eBay User Agreement as presented to the Court in
23   connection with these Motions was "materially the same" as the one in operation at the
24   relevant time.  (Baldwin Decl. ¶ 3; Ex. A).  The declarations presented by eBay also
25   establish that eBay has on its webpage a number of policies that inform users of its
26   intellectual policy policies, including that repeat offenses may result in suspensions.
27   (eBay Reply at 9; Baldwin Decl. ¶¶ 3-4, 18-19).  These include eBay's "Suspended
28   ///

Accounts" page, (Ex. G); eBay's User Agreement, (Ex. A); and a "Why did eBay remove my listing" page (Ex. H).

*Second*, the law does not require that eBay provide its users with a detailed version of its policy, including all of the criteria it uses to determine whether an account will be suspended.  As the district court in *Corbis* made clear, the DMCA "does not suggest what criteria should be considered by a service provider, much less require the service provider to reveal its decision-making criteria to the user."  351 F. Supp. 2d at 1102.  All a service provider need do to qualify under § 512(i) is "put users on notice that they face exclusion from the service if they repeatedly violate copyright laws."  *Id*.  Nothing presented by Rosen creates a genuinely disputed issue of material fact as to eBay's compliance with this requirement.

### 3. Compliance with § 512(c)

To qualify for the safe harbor protections, eBay must still meet the three conditions for liability protection set forth in § 512(c)(1)(A)-(C) and the agent designation requirement of § 512(c)(2).  *First*, eBay must show that it does not have actual or apparent knowledge that material on its network is infringing.  *See* 17 U.S.C. § 512(c)(1)(A)(i) & (ii).  Where eBay does have actual or apparent knowledge, it must show that it acted "expeditiously to remove, or disable access to, the [infringing] material." 17 U.S.C. § 512(c)(1)(A)(iii).  *Second*, eBay must show that it does not receive a financial benefit directly attributable to any infringing activity that it maintains the right and ability to control.  *Third*, eBay must show that it has expeditiously removed or disabled access to allegedly infringing material for which it has received appropriate notice under § 512(c)(3).  *Fourth*, eBay must have "designated an agent to receive notifications of claimed infringement" as required by 17 U.S.C. § 512(c)(2).

eBay asserts that it has met all the elements necessary to invoke liability protection under § 512(c).  Rosen argues that eBay fails to comply with the requirements of § 512(c) for three reasons: (1) eBay has not proven that it adequately published the contact information of its DMCA compliance officer (Rosen Opp. at 11); (2) eBay cannot prove

1   that it expeditiously removed the infringing items once notified of their existence (Rosen

2   Opp. at 12); and (3) eBay has not established that it did not receive a financial benefit

3   directly attributable to the infringing activity.

### a.   *Designation of DMCA Compliance Officer*

5   Rosen argues that eBay has failed to prove that it made available accurate

6   information as to its designated DMCA officer; the documents provided by eBay are dated

7   through 2014, and therefore do not necessarily cover the period relevant to this case.

8   eBay argues that § 512(c)(2) does not require the identification of a specific individual.

9   *See Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1092 n.13 (C.D. Cal. 2001) (holding

10  that eBay satisfied the designation of a DMCA Compliance Officer by requesting that

11  notices be submitted to its VeRO program and providing a hyperlink to its notice of

12  infringement form, facsimile number and address, and did not need to identify an

13  individual).

14  Section 512(c)(2) requires that the service provider, through its service to "mak[e]

15  available . . . including on its website in a location available to the public . . .

16  substantially" "the name, address, phone number, and electronic mail address of the

17  agent."  From August to December 2013, eBay designated Amber Leavitt as its copyright

18  agent for the purposes of the DMCA.  (Baldwin Decl. ¶ 27).  In numerous places on its

19  website eBay provided facsimile, telephone, email and mail contact information to parties

20  interested in submitting infringement notices.  Leavitt's contact information and name

21  were also provided to the United States Copyright Office.  The pages do not, however,

22  mention Ms. Leavitt specifically by name.   The Court determines that the information

23  provided by eBay was sufficient for eBay to have "substantially" provided the necessary

24  information to the public.

25  Indeed, Rosen's claims as to the sufficiency of the notice are belied by the success

26  he had in getting the 9x10 Prints and Magazine Photographs taken down in response to his

27  NOCIs sent to eBay.

28  Rosen does not establish a genuine dispute as to a material fact on this issue.

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.** *eBay's Failure to Expeditiously Remove Infringing Items*

Rosen also argues that eBay does not qualify for the safe harbor because it did not expeditiously remove images it knew to be infringing. (Rosen Reply at 8; Rosen Opp. at 12). eBay acknowledges that it reposted some of the Magazine Photographs, but argues that it did so after initially removing them and later determining that they were covered by fair use. (eBay Reply at 5). This argument is dealt with below in Section E. Rosen also argues that eBay failed to comply with this requirement because, despite taking down the listings, it still kept copies of the images on its servers, and copies of the images remained available to the public through Google searches and via Terapeak's website. (Rosen Reply at 8-9).

eBay argues that by taking down the listings of which Rosen complained it "remove[d], or disable[d] access to the material" "in every practical and realistic sense." (eBay Opp. at 11).

Section 512(c)(1)(C) requires that a service provider "remove, *or* disable access to, the material." (Emphasis added). As noted by the Ninth Circuit in *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1019 (9th Cir. 2013), § 512(c) "recognizes that one is unlikely to infringe a copyright by merely storing material that no one could access." That eBay retained copies of the pictures is therefore irrelevant to the inquiry if it disabled access to the works sufficient to meet the requirements of § 512(c)(1)(C).

Rosen asserts that he was able to access the images held by eBay after it had removed the listings. (Rosen Opp. at 12). eBay argues that it has legitimate reasons for keeping copies of the images for some period after taking down the listings – including to allow reposting in response to a counter-DMCA notice – and that once a listing is taken down, eBay has disabled all "meaningful public" access to the image as required by the statute. (eBay Opp. at 13-14).

eBay also contests the significance of Rosen's claims that he has been able to access images after the listing has been taken down. *First*, eBay argues that Rosen

-17-

himself conceded that he may have accessed the images cached on his own machine and that Rosen has provided no evidence of any third party accessing them directly from eBay's servers rather than through a search engine.  (Rosen Dep. 187:17-189:20, 247:3-248:8).  **Second**, eBay suggests that the images may have been collected by various search engines and cached when the listings were live and it is now just a matter of time before they drop from those third parties' caches.  **Third**, eBay argues that even if Rosen was able to access the image directly, to do so he had to use the unique URL of the image taken from the listing while it was still live.  That URL provides access to the stored version of the image on eBay's servers, but is not obtainable short of copying it while the listing is live.

In *UMG Recordings*, while analyzing Congress's intent as to the meaning of "by reason of storage," the Ninth Circuit stated that "the language of the statute recognizes that one is unlikely to infringe a copyright by merely storing material that no one could access, and so includes activities that go beyond storage."  718 F.3d at 1019.  The Ninth Circuit was addressing whether § 512(c) applied to service providers beyond web hosts and so was not addressing the question of the extent to which a service provider must disable access to qualify for safe harbor protection.  However, the statement does provide some guidance, as does Congress's decision to include "disabling access" in addition to "remove."  The Ninth Circuit's construction of the statute suggests that first, mere storage is unlikely to lead to copyright infringement, and second, there may be legitimate reasons for storage of potentially infringing material for which there is no access.

The next question is the extent to which access must be disabled.  At one extreme, it would not be consistent with the presence of the "disabling access" alternative if a service provider who had otherwise disabled access were to be hacked and therefore be subject to copyright liability for failure to disable access to the material.  On the other hand the service provider must disable access in a meaningful way.  Rosen contends that his ability to copy the direct image URL for later recall from eBay's servers means access is not disabled.  However, this copying is clearly not a normal or expected use of eBay's

1    systems, and it is unclear that anyone not specifically compelled to exploit this

2    workaround—as Rosen is—would ever use it.

3        In light of the somewhat extraordinary lengths Rosen had to go to obtain copies of

4    his images, which may or may not have actually been accessed from eBay's servers, eBay

5    adequately disabled access to his images when it took down the listings, even when the

6    record is viewed in the light most favorable to Rosen.

7                    **c.    *eBay's Financial Benefit from Infringing Conduct***

8        A service provider will be excluded from the § 512(c) safe harbor if it (1) has the

9    "right and ability to control" the infringing activity, and (2) receives "a financial benefit

10   directly attributable to the infringing activity."  17 U.S.C. § 512(c)(1)(B).  Both elements

11   must be established for safe harbor coverage to be denied.  *Corbis*, 351 F. Supp. 2d at

12   1109; 3 *Nimmer on Copyright*, § 12, 12B.04.

13       Rosen asserts that eBay has the right and ability to control the infringing activity

14   because it has software that reviews every posting, has tools to prevent and remove posts,

15   and requires its users to provide photographs, which includes requirements as to size and

16   resolution.  Rosen also points to the determinations of the district court and Second Circuit

17   in *Tiffany (NJ) Inc. v. eBay, Inc.*, that eBay had the ability to control infringing activity,

18   and argues that eBay is collaterally estopped from making arguments that it lacks control.

19   576 F. Supp. 2d 463; 600 F.3d 93.

20       However, *Tiffany* was a case asserting eBay's contributory liability for trademark

21   infringement.  It is therefore not appropriate to apply collateral estoppel in limiting eBay's

22   arguments as to its right and ability to control under the DMCA based on a case applying

23   a different standard under a different area of law.

24       In order to establish that eBay has the "right and ability to control," Rosen must

25   establish that eBay "exert[s] substantial influence on the activities of users.  Substantial

26   influence may include . . . high levels of control over activities of users . . . or purposeful

27   conduct."  *UMG Recordings*, 718 F.3d at 1030 (citations omitted).

28   ///

-19-

eBay's mere ability to block or remove access to its website is not sufficient to establish that it has the "right and ability to control infringing activity."  The standard for "right and ability to control" under § 512 requires something more than common law vicarious liability.  *Id.* at 1029 (rejecting vicarious liability standard to evaluate "right and ability to control" infringing activity under § 512(c)).

As the Ninth Circuit explained in *UMG Recordings*, interpreting the control requirement such that the mere ability to remove content is sufficient would mean the prerequisite to § 512(c) protection under § 512(c)(1)(A)(iii) and (C) would at the same time be a disqualifier under § 512(c)(1)(B) where the "financial benefit" condition is met. In line with this ruling, the district court in *Corbis* held that Amazon's mere ability to identify vendors selling infringing goods and terminate their shops did "not mean [Amazon] exercised the type of right and ability to control that would disqualify [Amazon] from § 512(c) safe harbor."  351 F. Supp. 2d at 1110.  To do so, after all would place service providers in a catch-22 as efforts to establish effective notice and take-down procedures would disqualify a service provider from the safe harbor under the financial benefit requirement.

More than just eBay's ability to remove listings is needed.  Indeed, another district court has explained:

> eBay's voluntary practice of engaging in limited monitoring of its
> website for 'apparent' infringements under the VeRO program cannot,
> in and of itself, lead the Court to conclude that eBay has the right and
> ability to control infringing activity within the meaning of the DMCA.
> The legislative history shows that Congress did not intend for
> companies such as eBay to be penalized when they engage in
> voluntary efforts to combat piracy over the Internet.

*Hendrickson*, 165 F. Supp. 2d at 1094.

Rosen asserts that eBay's requirement that users post a picture, and its requirements as to the picture's size and quality, means that eBay exerts control over what is posted on

its website.  (Rosen Opp. Br. at 13; Rosen Reply at 10; Rosen Decl. ¶ 17).  This requirement imposed by eBay, however, does not meet the standard for establishing "high levels of control over activities of users."  *UMG Recordings*, 718 F.3d at 1030.  eBay does not direct users what to list, does not come into contact with the items being posted, and beyond the basic content requirements, including the photograph requirement, has no control over what its users list until the listing is complete.  eBay only requires that users post a photograph to maintain the integrity of its marketplace, and provides technical requirements for that photograph.  The rest of the process takes place through eBay's automated systems.  Such is not enough control to disqualify eBay from the safe harbor. *See e.g. Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1153 (N.D. Cal. 2008) (holding that video service provider lacked the right and ability to control infringing activity on its system where there was "no suggestion that [it] aims to encourage copyright infringement on its system [and] no evidence that [it] can control what content users choose to upload before it is uploaded").

The Court's determination that eBay does not have a right and ability to control the content posted by users is sufficient for eBay to meet the requirement of § 512(c)(1)(B).  The Court therefore need not address whether eBay also does not receive a direct financial benefit from the infringing activity.

### 4.    eBay is Protected by the DMCA Safe Harbor

In light of the forgoing analysis, the Court determines that eBay qualifies for the protections of the DMCA safe harbor under 17 U.S.C. § 512(c).  Accordingly, the Court rejects Rosen's claims of vicarious and contributory infringement of the 8x10 Prints.

### E.    <u>Fair Use of Magazine Photographs</u>

In response to Rosen's accusations regarding the Magazine Photographs, eBay argues that taking a picture of a physical copyrighted object for the purpose of legitimately selling that object under the first sale doctrine is fair use.

eBay argues that it cannot be held liable for direct infringement arising from its re-posting of the Magazine Photographs.  eBay argues that the direct infringement claims

arise only as a result of eBay's attempts to balance its responsibility to respond to Rosen's NOCIs and the fair use rights of its users.  The Court is sympathetic with eBay's argument that its attempt to pay heed to the procedures proscribed by Congress to balance innovation online and the protection of copyright holders' rights should not subject it to greater liability than if it merely left the images online.  However, eBay cannot deny the basic fact that it volitionally placed the images online.  In any event, the issue is not determinative, because, as explained below, such use of the images is fair use.

The doctrine of fair use is a common law doctrine of judicial creation that has been codified by Congress in § 107 of the Copyright Act.  Section 107 states:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)   the nature of the copyrighted work;
>
> (3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)   the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

When Congress incorporated the doctrine of fair use into the Copyright Act, it intended to restate the judicial doctrine but "not to change, narrow, or enlarge it in any way."  H.R. Rep. No. 94–1476, at 66 (1976) (hereinafter "House Report"); S. Rep. No. 94–473, at 62 (1975) (hereinafter "Senate Report").  Supreme Court precedents and the legislative history also make clear that fair use analysis is not appropriately conducted through the use of bright line rules, but must be dealt with on a case by case basis.  *Harper & Row Publishers, Inc. v Nation Enterprises*, 471 U.S. 539, 560 (1985) (holding that publication of verbatim quotes from the "heart" of unpublished memoirs, which was

intended to supplant copyright holders' commercially valuable right of first publication was not fair use); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448 & n. 31 (1984) (holding that sale of home video recording equipment was not contributory infringement where there were substantial non-infringing uses of the equipment); House Report at 65–66; Senate Report at 62.  Further, the four statutory factors should not be treated in isolation.  "All [the factors] are to be explored, and the results weighed together, in light of the purposes of copyright."  *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 578 (1994) (holding that commercial character of song parody did not create presumption against fair use").  The Court must "balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests."  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2002).  Congress also specifically warned against "freez[ing] the doctrine in the statute, especially during a period of rapid technological change."  House Report at 66.

### 1.    Purpose and Character of Use

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1); *Campbell*, 510 U.S. at 578.   This factor has been given various descriptions such as, in the words of Justice Story, whether the new work merely "supersede[s] the objects" of the original creation, or whether the new work is "transformative."  *Campbell*, 510 U.S. at 579 (quoting Pierre Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1110-11 (1990)).  While transformation is not necessary for a finding of fair use, the goal of copyright protection is "generally furthered by the creation of transformative works."  *Campbell*, 510 U.S. at 579.

The Ninth Circuit has adopted a two-step analysis as to the purpose and character of a copyrighted work's use.  *See Kelly* 336 F.3d 818-19.  *First*, whether the use of the work is commercial in nature.  *Second*, whether such use is transformative.  *Kelly*, 336 F.3d at 818 ("The second part of the inquiry as to this factor involves the transformative nature of the use").

1    There is no doubt that eBay operates its website for commercial purposes.  Further,

2    there is no doubt that eBay and its users' alleged display and distribution of copies of

3    Rosen's work is also for a commercial purpose.  However, the Supreme Court has made

4    clear that commercial use of copyrighted material is not determinative of this factor.

5    *Campbell*, 510 U.S. at 579; *Kelly*, 336 F.3d at 818.  The Ninth Circuit has explained that

6    commercial use provides only slight weight against finding fair use where the use is not

7    "highly exploitative" and intended to "save the expense of purchasing authorized copies."

8    *Kelly*, 336 F.3d at 818 (use of low resolution copies in a commercial search engine was

9    incidental and less exploitative in nature than more traditional types of commercial use);

10   *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) ("[C]ommercial

11   use is demonstrated by a showing that repeated and exploitative unauthorized copies of

12   copyrighted works were made to save the expense of purchasing authorized copies.").

13   The Ninth Circuit has provided guidance on this balance in cases relating to the

14   copying of copyrighted images by internet search engines.  In both *Kelly v. Arriba Soft*

15   *Corp.*, 336 F.3d 811, 818 (9th Cir. 2002), and *Perfect 10 v. Amazon.com*, 508 F.3d 1146,

16   1165 (9th Cir. 2007) (hereinafter "*Amazon.com*"), the Ninth Circuit determined that,

17   notwithstanding the commercial nature of an internet search engine, the creation of

18   complete copies of protected works by Arriba and Google (as defendant in *Amazon.com*)

19   was transformative because of the use to which the copies were put.

20   Similar to the Ninth Circuit's determination in *Kelly*, eBay's use of the copyrighted

21   works is not exploitative in the traditional sense.  eBay does not seek to profit from

22   Rosen's copyright by avoiding the need to pay for authorized copies.  In a manner more

23   similar to Google and Arriba's use of thumbnails in its search engines, eBay's use of the

24   imagines is to provide information to legitimate purchasers under the first sale doctrine,

25   not for the artistic purpose of Rosen's original images.

26   In *Kelly*, the Ninth Circuit looked to two other appellate decisions addressing what

27   constitutes transformative use under the fair use doctrine to guide its determination of the

28   issue on Arriba's creation and display of thumbnail versions of an artist's photographs.

Specifically, the Ninth Circuit looked to *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) and *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000).

In *Núñez*, the First Circuit determined that when a newspaper published copyrighted pictures originally intended for a modeling portfolio, it transformed the work. The court determined that the purpose and meaning of the pictures were transformed to news, creating new meaning or purpose for the work. *Núñez*, 235 F.3d at 23 (quoting *Campbell*, 510 U.S. at 579). Despite the commercial nature of the newspaper, the First Circuit determined that the transformative nature of the use suggested that the factor was neutral or weighed in favor of a finding of fair use. By comparison, in *Worldwide Church*, the Ninth Circuit ruled that the infringing work was not transformative because the copy of the religious book in question, when used by another church, was being used for the same purpose as the original. 227 F.3d at 1117. This ruling was despite the copy being used for a non-commercial purpose.

The *Kelly* court ruled that Arriba's copying and distribution of the thumbnails to be more like that in *Núñez* than in *Worldwide Church* because the change in the purpose of the images rendered the new images transformative. *Kelly*, 336 F.3d at 818-20. The Ninth Circuit explained that Arriba's "thumbnails do not stifle artistic creativity because they are not used for illustrative or artistic purposes and therefore do not supplant the need for the originals. In addition, they benefit the public by enhancing information-gathering techniques on the internet." *Id*. at 820.

The Ninth Circuit rejected Kelly's arguments that Arriba's thumbnails could not be transformative because they reproduced the exact image in its entirety. The Court reasoned, however, that the purpose of the reproductions was completely different from the purpose of the originals, and so they were transformative. The court further determined that Arriba's copying and distribution was fair use. *Id.* at 822.

Similarly, following *Kelly* the Ninth Circuit in *Amazon.com* held that Google's use of indexed thumbnails of images owned by Perfect 10 was "highly transformative"

because the search engine "puts images in a different context so that they are transformed into a new creation." 508 F.3d at 1165 (quotations omitted). Indeed, despite the possibility that Google's thumbnail images could displace certain sales by Perfect 10, in the absence of evidence that this displacement had happened, the Ninth Circuit ruled that Google's transformative use of the images meant that the first factor "weigh[ed] heavily in favor of Google." *Id.* at 1167.

The same is true here. Rosen's original photographs were created for an aesthetic and artistic purpose. The Magazine Photographs in question were created for the purpose of providing information as to the condition and content of the magazines in which Rosen's photographs appeared. Further, unlike in either *Kelly* or *Amazon.com*, the pictures are not exact duplications of Rosen's works, but rather duplications of Rosen's works as already altered by the editors of the magazines in which they are found. Rosen has already consented to have his works copied, altered and widely distributed as deemed fit by the editors of the magazines in question, and he has presumably been compensated accordingly.

This determination is further buttressed by the Ninth Circuit's decision in *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1027 (9th Cir. 2000), in which Sony challenged the use of screenshots taken by Bleem to advertise its computer software. Bleem's software competed directly with Sony's game console. The Ninth Circuit determined that despite the commercial nature of Bleem's copying, its use for comparative advertising "redounds greatly to the purchasing public's benefit with very little corresponding loss to the integrity of Sony's copyrighted material." *Id.* at 1027.

Indeed, unlike in *Sony*, eBay is not using Rosen's work to compete with Rosen. The public also benefits greatly from being able to evaluate the magazines offered for sale legitimately under the first sale doctrine. Although perhaps the public benefits of comparative advertising are not specifically present in this case, there is nonetheless an important public benefit in allowing a thriving second-hand market for copyrighted material, and especially visual copyrighted material.

-26-

1    While the commercial nature of a copy or infringing display is still an important

2    factor, the Ninth Circuit in *Amazon.com* faulted the district court for not balancing the

3    displaced commercial use of the thumbnails and the transformative nature of the work.

4    508 F.3d at 1168.

5    At the hearing, eBay argued that the images of the magazines were of a similar size

6    to the thumbnails in *Amazon.com* and should be treated accordingly.  Despite eBay's

7    representation, the images at issue are considerably larger than standard thumbnails.

8    Nonetheless, the copies displayed on eBay's site are offered for a very different purpose to

9    that of the original Magazine Photographs and so are transformative.  Further, the images

10   in question are pictures of magazines in which Rosen's photographs are to be found; the

11   images had already been transformed somewhat from Rosen's original photographs.

12   For his part, Rosen argued at the hearing that in *Amazon.com* the Ninth Circuit had

13   remanded on the question of Google's liability for linking to full size images and this

14   ruling precluded a finding in eBay's favor on summary judgment.  However, Rosen

15   mischaracterizes the *Amazon.com* court's ruling.  The Ninth Circuit corrected the district

16   court on the test it used for contributory infringement, and specifically on the requisite

17   showing of knowledge on Google's part.  *Amazon.com*, 508 F.3d at 1172-73.  Neither the

18   Ninth Circuit nor the district court addressed fair use when addressing Google's use of

19   links to framed pictures, because such linking was not direct infringement.

20   This factor, therefore, weighs in favor of eBay.

### 2.    Nature of the Copyrighted Work

22   The second factor is the nature of the copyrighted work.  "Works that are creative in

23   nature are closer to the core of intended copyright protection than are more fact-based

24   works."  *Kelly*, 336 F.3d at 820.  Rosen's photographs are creative in nature and fall

25   within "the core of intended copyright protection."  *Id.*  However, "[t]he fact that a work is

26   unpublished is a critical element of its 'nature.'"  *Harper & Row*, 471 U.S. at 564 (quoting

27   3 *Nimmer on Copyright,* § 13.05[A]); *Kelly* 336 F.3d at 820.   The right of first publication

28   is a "one-time right" that is exhausted by publication in any medium.  *Amazon.com*, 508

1   F.3d at 1167 (holding that prior publication online removed enhanced protection for first
2   publication right and so the second factor weighed only slightly in favor of copyright
3   holder); *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1235 (9th
4   Cir. 1998) (noting in the context of the common law right of first publication, that such a
5   right "does not entail multiple first public rights in every available medium").  Because
6   the work falls within the core of intended copyright protection, but Rosen has previously
7   authorized publication of this work, the factor therefore weighs only slightly against a
8   finding of fair use.

9   **3.      Amount and Substantiality of Work Used**

10          Under the third factor, the Court evaluates the amount of the work used.  Rosen
11   argues that because the images copy the entirety of his works, this factor should weigh
12   heavily against a finding of fair use.  However, the Supreme Court in *Campbell* explained
13   that the third factor inquires as to whether the "amount and substantiality of the portion
14   used in relation to the copyrighted work as a whole . . . [is] reasonable in relation to the
15   purpose of the copying.  Here attention turns to the persuasiveness of a parodist's
16   justification for the particular copying done, and the enquiry will harken back to the first
17   of the statutory factors, for, as in prior cases, we recognize that the extent of permissible
18   copying varies with the purpose and character of the use."  *Campbell*, 510 U.S. at 586-87.

19          The Ninth Circuit also held in *Kelly* and *Amazon.com* that copying of full versions
20   of the protected works did not preclude a finding of fair use.  In *Kelly*, the court explained
21   that "[i]f the secondary user only copies as much as is necessary for his or her intended
22   use, then this factor will not weigh against him or her."  *Kelly*, 336 F.3d at 820-21.  The
23   *Kelly* court concluded that while Arriba copied the entire work, "it was reasonable to do so
24   in light of Arriba's use of the images."  *Id.* at 821.  Similarly, in *Amazon.com*, the Ninth
25   Circuit explained that "[t]he fact that Google incorporates the entire Perfect 10 image into
26   the search engine results does not diminish the transformative nature of Google's use."
27   508 F.3d at 1165.
28   ///

The purpose of the Magazine Photographs was to provide a potential buyer a full view of the magazine she was considering purchasing. The images contain full copies of Rosen's works only as a result of showing the magazine which contains the images. Given the Ninth Circuit's holdings in *Amazon.com* and *Kelly* that full copying of protected works for the purpose of search engine indexing resulted in the factor being neutral, the Court determines that the factor in the present instance is either neutral or weighs slightly in favor of eBay. Indeed, the purpose of the image requires that the entire work be reproduced.

Rosen argues that copying of the works is not necessary where a description of the magazine and images would suffice. However, Rosen does not consider that the images presented are primarily of the ***magazines*** and only derivatively of his copyrighted works. To provide the most benefit to the public in offering these magazines for sale, full pictures of the magazines, as required by eBay's terms of service, is entirely reasonable. Indeed, even taken one step closer to Rosen's direct claim, the flaws in Rosen's argument are obvious. An online marketplace for copyrighted visual works being sold legitimately under the first sale doctrine would struggle immensely were the seller or broker not able to display the image itself. That the image is only derivatively a copy of Rosen's work further supports the Court's determination that the extent of copying is reasonable.

### 4.     Effect of Use on the Market

The fourth factor is the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Rosen argues only that because eBay's use of the image was commercial, he is entitled to a presumption that the unauthorized use of his images has "adversely affected the potential market or value of the copyrighted work." (Rosen Opp. at 21-22 (quoting *Sony*, 464 U.S. at 451)).

However, as the Ninth Circuit explained in *Amazon.com*, the "presumption does not arise when a work is transformative because 'market substitution is at least less certain, and market harm may not be so readily inferred.'" 508 F.3d at 1168 (quoting *Campbell*, 510 U.S. at 591). As explained above, the use of the images by eBay and its users are

transformative and are not commercially exploitative, and they do not substitute for paying for legitimate copies.  The effect on the market is therefore minimal.  This factor therefore weighs in favor of finding fair use.

### 5.    The Magazine Photographs Constitute Fair Use

In light of the foregoing analysis the Court determines that the posting of the Magazine Photographs, as used to represent physical magazines for resale, constitutes fair use.  Indeed, looking holistically at the purpose of copyright protection and the use to which the photographs are being put, the Court determines that they clearly promote the purposes of copyright by not displacing the need for the original work.  The images are used for a fundamentally different purpose and promote the development of a robust legal secondary market.

Ultimately, Rosen's arguments that a finding of fair use would "eradicate" the first sale doctrine are unpersuasive.  The Court does not hold, as Rosen suggests, that the owner of a copyrighted work may, under the fair use doctrine, make copies and "publicly display works in any manner desired."  (Rosen Opp. at 24).  Rather, the Court concludes only that copies made of a magazine containing depictions of a copyrighted work, for the purpose of selling that magazine under the first sale doctrine, do not violate the Copyright Act under the fair use doctrine as codified in 17 U.S.C. § 107.

At the hearing, Rosen further challenged a finding of fair use by arguing that Congress has already spoken definitively on the limits of the display, distribution and copying rights of a first sale owner.  However, the fair use doctrine applies to all forms of use of copyrighted works.  There is nothing in the Copyright Act that limits its application to only certain types of direct infringement.  *See* House Report at 80 (recognizing the need to consider the "the potentialities of the new communications media" and explaining the Committee's view that "unless [the display] constitutes a fair use under section 107 . . . transmission [as described in section 109 addressing display rights of copies of copyrighted works] would be an infringement").  While the Court considers the purpose

///

and content of legislation, the Court finds no support for the proposition that fair use does not apply where Congress has provided more detail in its legislation.

Rosen's proposed ruling would drastically limit the ability of any person to resell any visual copyrighted work except to those in the physical presence of the work. The Court views its modest application of the fair use doctrine as consistent with its purpose to promote rather than inhibit the goals of copyright.

Accordingly, the Court rejects Rosen's claims of direct, vicarious, and contributory infringement of the Magazine Photographs.

F.   **eBay's Automated Copying and Distribution of Images over Content Delivery Networks is Fair Use**

In his final submission on these Motions, Rosen argued for the first time that eBay had conceded that it distributed images to its CDN providers such as Akamai. (Rosen Reply at 12; Decl. of Randy Strickler, ¶¶ 3-6). The Court determines that this distribution is an inevitable and necessary part of using the internet, and ultimately a trivial activity that falls within the protections of the fair use doctrine.

In order to ensure adequate and efficient service, service providers across the internet use CDNs to actually distribute their content. This practice ensures that a service provider does not rely on a single server of its own to maintain full operation of its service and means that the burden is spread and networks operate smoothly. In essence, rather than keeping everything in one place, an outsourced network of multiple servers is used to ensure smooth operation of the internet generally and a service provider's services in particular.

The widespread use of CDNs means that most content is passed from a service provider to one or more third parties before reaching an end user. It is this copying and distribution of copyrighted material for which Rosen claims eBay is liable. However, such usage is minimal and is a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally. It also causes only minor and wholly incidental copying and distribution of images. The Ninth Circuit held that Google's use of

-31-

cached copies of pages was fair use because it was an automatic process carried out to improve a user's internet experience, and not to exploit the copyrighted works. *Amazon.com*, 508 F.3d at 1169-77.  As in *Amazom.com*, eBay's use of CDNs is designed to "enhance [a user's] use, not to supersede the copyright holders' exploitation of their works." *Id*. at 1169.  eBay's use of CDNs is highly analogous and is fair use.

Rosen further argued at the hearing that eBay is a sufficiently large company to afford its own wholly owned distribution networks.  This argument is also unpersuasive. There is no reason to believe that a different rule should apply depending on the resources and size of the entity accused of copyright infringement.  The Court has no statutory authority to fashion that rule and no guidelines exist as to which entities should be so burdened.  Further, nothing in the argument changes the fact that such distribution is merely eBay's use of basic internet architecture and has trivial copyright-related effects on Rosen's images.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** eBay's Motion for Summary Judgment Court and **DENIES** Rosen's Motion for Summary Judgment.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

Dated:  January 16, 2015

_____
MICHAEL W. FITZGERALD
United States District Judge