JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 13-6801-MWF (Ex) | **Date:** January 24, 2018 |
| **Title:** Barry Rosen -*v.*- eBay, Inc. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**    ORDER RE RENEWED MOTION FOR SUMMARY JUDGMENT AS TO THE TERAPEAK AND WORTHPOINT IMAGES [191]

Before the Court is Defendant eBay, Inc.'s Renewed Motion for Summary Judgment as to the Terapeak and WorthPoint Images (the "Motion"), filed on November 15, 2017.  (Docket No. 191).  Plaintiff Barry Rosen filed an Opposition on December 14, 2017, to which Defendant replied on January 8, 2018.  (Docket Nos. 198, 203).  The Court has considered the papers filed on the Motion, and held a hearing on **January 22, 2018**.

For the reasons discussed below, the Motion is **GRANTED**.  Defendant has presented undisputed evidence that it did not directly violate Plaintiff's copyrights.  Even if this evidence were disputed, the evidence demonstrates that the fair use defense applies.

## I. BACKGROUND

The factual background of this action has been set forth in detail in other orders, including the Court's prior Order re Motions for Summary Judgment.  ("Jan. 16, 2015 Order" (Docket No. 139)). Therefore, the Court sets forth here only the facts necessary to determine this Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 13-6801-MWF (Ex)          Date:  January 24, 2018
Title:    Barry Rosen *-v.-* eBay, Inc.

## A. Procedural Background

Plaintiff, a photographer, filed the operative Second Amended Complaint in this action on December 16, 2013.  ("SAC" (Docket No. 15)).  In the SAC, he alleged Defendant was liable for direct, contributory, and vicarious copyright infringement stemming from the fact that users of Defendant's online market place listed for sale and posted digital images of 39 of Plaintiff's photographic works.  (*See generally id.*).  He further alleged that three of the photographic prints in question appeared without authorization on the third-party website WorthPoint.com.  (SAC ¶¶ 117–20).

After conducting discovery, the parties filed cross-motions for summary judgment.  The Court's January 16, 2015 Order denied Plaintiff's motion and granted Defendant's motion, and entered final judgment in Defendant's favor.  (Jan. 16, 2015 Order at 32).  Plaintiff appealed the judgment.

Later in 2015, through discovery in another copyright infringement action, Plaintiff learned that Defendant may not have produced all the necessary documents during discovery in this action.  In particular, Defendant had not produced all documents reflecting its license agreements with the third party Terapeak, which in turn had a relationship with WorthPoint.  Accordingly, the parties stipulated to remand the action from the Ninth Circuit for further discovery regarding Defendant's relationship with Terapeak.  (*See* Joint Motion for Further Proceedings (Docket No. 159)).  The parties commenced discovery again, and Defendant produced over 1,400 additional documents.  (Mot. at 6).

Following the second discovery period, Plaintiff moved to vacate in its entirety the Court's January 16, 2015 Order.  (Motion to Vacate (Docket No. 180)).  Instead, the Court vacated the judgment as to one "narrow issue" only:  "whether Defendant directly violated Plaintiff's copyrights by licensing the copyrighted images to a third party."  (Order Granting Defendant's Motion to Vacate Judgment (the "July 25 Order") at 1 (Docket No. 184)).  Subsequently, Defendant brought this Motion.

---

**CIVIL MINUTES—GENERAL**          2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 13-6801-MWF (Ex) | Date:  January 24, 2018 |
| Title:      Barry Rosen -*v.*- eBay, Inc. | |

### B. Factual Background

The following facts are based on the evidence, as viewed in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor.").

Plaintiff alleges in the SAC that three 8x10 prints (the "WorthPoint Images") appeared without his authorization on WorthPoint.com. (SAC ¶¶ 117–20; eBay's Reply to Plaintiff's Statement of Genuine Issues ("SGI") No. 1 (Docket No. 204)). Each of those images bears the autograph over the image of the celebrity or model depicted in the photograph. (*Id.* No. 2). These images were not available for sale on WorthPoint's website. (*Id.* No. 3). The only image alleged in this action to have appeared on Terapeak's website (the "Terapeak Image") appeared in a thumbnail image of a collage of other photographs. (*Id.* 4, 5). The Terapeak Image was also not available for sale. (*Id.* No. 6).

Defendant's Data License Agreement ("DLA") with Terapeak, dated February 27, 2004 (as amended), provided that Defendant would share with Terapeak a variety of "Closed Listings Data Fields", which contained information about items listed for sale, such as the item price, the duration of the item's auction, and the listing title. This data did not include images of the items associated with the listings. (SGI Nos. 7, 8). Terapeak analyzed this enormous data collection to provide information to eBay sellers that would help them understand the markets for their items. (*Id.* Nos. 9, 10). The DLA restricted Terapeak's use of the data to specified "Permitted Uses". (*Id.* No. 11).

Defendant's Data Service Provider Agreement ("DSPA") with Terapeak, dated August 5, 2005 (as amended), further provided that Terapeak could segment and sublicense the data described above for analytic purposes and subject to certain restrictions. (SGI No. 12). The DSPA's "Permitted Uses" of the data are analytical, including providing research tools and consulting, recommending keywords for titles or descriptions, and recommending opening bid prices for new listings. (*Id.* No. 14). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 13-6801-MWF (Ex)     **Date:** January 24, 2018
**Title:** Barry Rosen -*v.*- eBay, Inc.

DSPA expressly forbade any "other use, display or disclosure of eBay Data." (*Id.* No. 13). It further provided that sublicensees "shall not Publicly Display, either directly or indirectly, the eBay data." (*Id.* No. 15).

The sixth amendment to the DSPA provided that Defendant would deliver listing data, including 25 specific "Active Listings Data Fields", to Terapeak. Those fields included, for example, the item price, listing category, and, for the first time, a link to the item image. (SGI No. 18). This link provided only a URL that linked to the location on Defendant's servers where the image associated with the listing was located. (*Id.* No. 19). The URL itself contained no substantive information about the image. (*Id.* No. 20). Terapeak has used some of these URLs to point users to the images. (*Id.* No. 21).

WorthPoint is an online research company whose subscribers can search its database for historical pricing data from a variety of online marketplaces and auction houses to assist in the valuation of antiques, art, and collectibles. (SGI No. 16). WorthPoint had no direct license or agreement with Defendant, but sublicensed certain data from Terapeak. (*Id.* No. 16). As part of that sublicense, Terapeak provided image URLs to WorthPoint. (*Id.* No. 22).

## II. LEGAL STANDARD

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. at 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 13-6801-MWF (Ex)**            **Date:  January 24, 2018**
**Title:**     Barry Rosen *-v.-* eBay, Inc.

> bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50.

### III.   DISCUSSION

As a threshold matter, the July 25 Order makes clear that the only question still at issue is whether Defendant directly infringed Plaintiff's copyrights by licensing the copyrighted images to a third party.  (*See* July 25 Order at 1 ("The only issue that *might* have been impacted by the new evidence is whether Defendant directly violated Plaintiff's copyrights by licensing the copyrighted images to at third party.") (emphasis in original)).  Specifically, "[t]he only party of the thirty-two page Summary Judgment Order that might be affected by Defendant's license of the URL link is the section dealing with Plaintiff's claim that Defendant had improperly distributed copies of the infringing images to Terapeak."  (*Id.* at 4).

In Opposition to the Motion, Plaintiff improperly tries to widen the scope of this issue to include theories of vicarious and contributory infringement not re-opened by the Court's July 25 Order.  Plaintiff also raised these theories at the hearing.  Based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 13-6801-MWF (Ex) | Date: January 24, 2018 |
| Title: Barry Rosen *-v.-* eBay, Inc. | |

the Court's July 25 Order, Defendant did not brief these theories in the Motion, but the Court briefly heard the parties' arguments on the merits of these issues. The Court reiterates that the only open question "is whether Defendant directly violated Plaintiff's copyrights by licensing the copyrighted images to at third party." (July 25 Order at 1).

Even if theories of vicarious and contributory infringement based on Defendant's license to Terapeak did remain available, as discussed below, the DMCA and fair use defenses continue to bar Defendant's liability under those theories, as well as a theory of direct liability, as a matter of law.

### A. Direct Infringement of Plaintiff's Distribution Right

As set forth in the Court's January 16 Order, direct infringement of any of the exclusive rights granted to copyright holders in Section 106 of the Copyright Act requires volitional conduct, and "[the] requirement of 'volitional conduct' . . . focuse[s] the inquiry on whether the defendant *directly caused* the infringement to take place." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-7098-AHM, 2013 WL 2109963, at *5–7 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (emphasis in original).

Infringement of the distribution right at issue here requires "actual dissemination" of a copy of the image. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007). Particularly relevant here, multiple courts have specifically found that providing links to an image does not constitute direct violation of a copyright. *See, e.g.*, *id.* (finding no infringement of the distribution right where Google "communicate[d] HTML instructions that tell a user's browser where to find full-size images on a website"); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 99-7654-HLF (BQRx), 2000 WL 525390, at *2 (C.D. Cal. Mar. 27, 2000) ("hyperlinking does not itself involve a violation of the Copyright Act"); *Woolfsongs Ltd. v. Slaughterhouse, LLC*, No. CV 15-3049-TJH (JCx), 2016 WL 6662721, at *2 (C.D. Cal. Feb. 5, 2016) (allegations that defendant posted a hyperlink to a free copy of the copyrighted work failed to state a claim for copyright infringement); *Arista Records, Inc. v. MP3Board, Inc.*, No. CV 00-4660, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (linking to content does not implicate distribution right and thus, does not give rise to liability for direct copyright infringement).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 13-6801-MWF (Ex) | Date:  January 24, 2018 |
| Title:     Barry Rosen -v.- eBay, Inc. | |

In Opposition, Plaintiff points to cases in which courts have held that digital transmissions are within the scope of the exclusive distribution right.  (Opp. at 5–6).  For example, Plaintiff cites *BMG Rights Management (US) LLC v. Cox Communications*, 149 F. Supp. 3d 634, 669 (E.D. Va.  2015), which held that "[n]ot only can electronic files be 'material objects,' but transferring files using a BitTorrent protocol satisfies the transactional element of distribution."  He also cites *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 651 (S.D.N.Y. 2013), which held that "the sale of digital music files on ReDigi's website infringes Capitol's exclusive right of distribution."

Plaintiff is correct that "in the electronic context, copies may be distributed electronically."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1162.  However, there must still be a "copy" to distribute.  17 U.S.C. § 106(3) (copyright owner has exclusive right "to distribute ***copies or phonorecords*** of the copyrighted work" (emphasis added)).  *See also Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 985 (D. Ariz. 2008) ("The plain meaning of [Section 106(3)] requires an ***identifiable copy of the work*** to change hands in one of the prescribed ways for there to be a distribution." (emphasis added)).  The Copyright Act defines "copies" as "material objects . . . in which a work is fixed."  17 U.S.C. § 101.

All of the cases Plaintiff cites, including the *BMG* and *Capitol Records* cases described above, involve music or other files that constitute "identifiable copies" of a musical work.  He does not cite any cases in which a URL that directs a user to the location of a copy is considered a "distribution."  And in fact, one of the Ninth Circuit cases he cites for his proposition explicitly held that "communicat[ion of] HTML instructions that tell a user's browser where to find full-size images" does ***not*** constitute distribution of copies of those images.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1162.  It is undisputed that Defendant furnishes data, which includes URLs that tell Terapeak and its sublicensees where to find images associated with that data.  It is further undisputed that those URLs contain no substantive information about the images.  The URLs are not themselves files containing the images (unlike the audio files shared in most of the cases Plaintiff cites).  Providing these URLs is essentially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 13-6801-MWF (Ex)**                    **Date:  January 24, 2018**
**Title:       Barry Rosen *-v.-* eBay, Inc.**

providing directions to the locations of the images.  It is not distribution of identifiable copies of the images.

    Plaintiff also cites in his Opposition to cases in which courts have held that making copyrighted material available, including for download online, may constitute distribution.  (Opp. at 6–7).  As Defendant points out, though, these cases are distinguishable in that they involve the requisite ***volitional*** conduct.  For example, in *Atlantic Recording Corp. v. Anderson*, No. CV H-06-3578, 2008 WL 2316551, at *7–8 (S.D. Tex. Mar. 12, 2008), the defendant violated the distribution right when he "plac[ed] the Copyrighted Recordings . . . into a shared folder on his computer while being connected to the media distribution system."  Similarly, in *Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190–91 (D. Me. 2006), the district court held the defendant liable for infringement of the distribution right where he downloaded the infringing content, stored the content on a shared drive on his computer, and then made the files available to others when he was connected online.

    Plaintiff also relies heavily on *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997), in which the Fourth Circuit held that a church distributed copies of a work under Section 106(3) when it made the work available to the public at its libraries.  In that case, the church itself added the work to its library, listed it in its index system, and made it available for borrowing.  *Id.* at 203.  As Defendant notes, it is not clear that *Hotaling* is still good law.  (Reply at 8).  Regardless of whether *Hotaling* is still good law, it, as well as the *Atlantic Recording* and *Universal Studios* cases discussed above, are easily distinguishable from the facts of this case.  In all of those cases, the defendant found liable for violating Section 106(3) was the party who volitionally made the copyrighted work available online or elsewhere.

    Here, as discussed extensively in the January 16 Order, Defendant itself is not directly liable for any infringement resulting from content its users post online using Defendant's automated systems because Defendant does not engage in the necessary volitional conduct.  (Jan. 16 Order at 9–10).  Defendant is likewise not engaging in the necessary volitional conduct by licensing a vast collection of uncurated data – including hyperlinks pointing to images – to Terapeak.

---

**CIVIL MINUTES—GENERAL**                                                                                      **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 13-6801-MWF (Ex) | Date: January 24, 2018 |
| Title: Barry Rosen -v.- eBay, Inc. | |

At the hearing, Plaintiff argued that executing a license with Terapeak is itself volitional conduct that resulted in distribution of Plaintiff's images to the public, and therefore infringed Plaintiff's copyrights. There are two problems with this argument.

First, as Defendant pointed out at the hearing and as discussed above, this claim fails even before the Court reaches the question of volitional conduct because there simply is no act of distribution within the meaning of Section 106(3).

Second, as Defendant also pointed out at the hearing and as discussed above, Ninth Circuit case law already establishes that the conduct alleged against Defendant here does not amount to volitional conduct for purposes of copyright infringement. In *Perfect 10*, the Ninth Circuit explained that Google's "indexing" of images posted by third parties, and its communication of "HTML instructions" that tell a user where to find the images, did not constitute volitional conduct on the part of Google. It was those third-party users who posted the images that engaged in the volitional conduct. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1162. So too here.

The Court does not suggest that Defendant did not act with some measure of "volition" when it entered into the Terapeak license. However, licensing this data did not turn Defendant into an active participant in any infringement that might have resulted. In fact, it is undisputed that the license to Terapeak explicitly prohibited any uses outside the "permitted uses," which were solely analytical and informational. The only active participants in any potential acts of copyright infringement, then, remain third parties: the eBay users who, using eBay's automated processes, selected and uploaded the images to eBay's servers in the first place; and Terapeak or WorthPoint, *if* they chose to use the images in ways that violate the rights granted to Plaintiff in Section 106. That links to Plaintiff's images were conveyed among the multitude of other data points conveyed to Terapeak is simply part and parcel of the automated systems that the Court has already held do not render eBay a direct infringer.

As the Court indicated at the hearing, Plaintiff's arguments regarding how volitional conduct should be defined in the digital age are not frivolous on their own merits. However, those arguments are simply not consistent with the language of the Copyright Act and the case law as it currently stands.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 13-6801-MWF (Ex)          Date: January 24, 2018
Title:     Barry Rosen -*v.*- eBay, Inc.

### B. Fair Use and DMCA Defenses

The Court's July 25 Order states that "the newly-discovered evidence" regarding Defendant's license agreement with Terapeak "pertains neither to Defendant's direct liability for the actions of its users ***nor to Defendant's DMCA and fair use defenses***." (July 25 Order at 4 (emphasis added). Accordingly, the Court's prior finding that Defendant was not liable for secondary copyright infringement because it qualifies for the protections of the DMCA safe harbor under 17 U.S.C. § 512(c) stands. (January 16 Order at 11–21). Likewise, as discussed below, the Court's reasoning regarding the applicability of the fair use defense with regard to the so-called "Magazine Photographs" applies in this context as well (*Id.* at 21–31).

Essentially, Defendant argues in the Motion that even if Plaintiff could establish a factual dispute as to whether Defendant directly (or vicariously or contributorily) infringed Plaintiff's distribution right through the license to Terapeak, such distribution would be a fair use because Defendant's use of the images is so transformative that it does not displace the need for Plaintiff's original works. (Mot. at 14; Reply at 16). Defendant largely relies on the reasoning of the Court's fair use discussion in the January 16 Order. The gist of Plaintiff's Opposition is that, because Defendant's use of the images is commercial, Defendant has not established as a matter of law that fair use applies. (Opp. at 20–23).

As set forth in the January 16 Order, fair use is a common law doctrine that Congress codified in Section 107 of the Copyright Act, which states:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 13-6801-MWF (Ex) | Date: January 24, 2018 |
| Title: Barry Rosen *-v.-* eBay, Inc. | |

> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "All [four factors] are to be explored, and the results weighed together, in light of the purpose of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (holding that the commercial character of a song parody did not create a presumption against fair use). The fair use analysis must be conducted on a case-by-case basis rather than through bright-line rules. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

### 1. Purpose and Character of Use

The "central purpose" of the first factor is to determine "to what extent the new work is transformative." *Campbell*, 510 U.S. at 579 ("[the] central purpose of this investigation is to see . . . whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character"). The Ninth Circuit has adopted a two-step analysis of this first prong. First, courts ask whether the use of the work is commercial in nature. Second, they ask whether such use is transformative. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–19 (9th Cir. 2002). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1164 (quoting *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). "The more transformative the new work, the less important the other factors, including commercialism, become." *Kelly*, 336 F.3d at 818.

Clearly, Defendant's website is run for commercial purposes. Moreover, it grants any licenses, such as those granted to Terapeak, for financial gain. According to Plaintiff, Defendant's commercial purpose alone precludes summary judgment for Defendant on the issue of fair use. However, as the Court reasoned in the January 16 Order, a commercial use is not determinative where the use is not "highly exploitative" and intended to "save the expense of purchasing authorized copies." *Kelly*, 336 F.3d at 818 (use of low-resolution copies in a commercial search engine less exploitative in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 13-6801-MWF (Ex) | **Date:** January 24, 2018 |
| **Title:** Barry Rosen -*v.*- eBay, Inc. | |

nature than a more traditional commercial use); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) ("[C]ommercial use is demonstrated by a showing that repeated and exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies.").

  Essentially, even where a use is commercial, if the use is transformative this factor may weigh in favor of a finding of a fair use. For example, in *Kelly*, the Ninth Circuit held that the defendant's use of low-resolution thumbnail images in its search engine was transformative because they were "not used for illustrative or artistic purposes and therefore do not supplant the need for the originals." 336 F.3d at 820. Instead, the use "benefit[ed] the public by enhancing information-gathering techniques on the internet." *Id.*

  Likewise, in *Authors Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015), the Second Circuit held that Google did not infringe the plaintiffs' copyrights in their books when Google used digital copies "to enable the public to get information about the works, such as whether, and how often they use specified words or terms." Because Google used the copies to provide "information *about* Plaintiffs' books without providing the public with a substantial substitute for matter protected by the Plaintiff' copyright interests," the use was fair, despite Google's overall commercial considerations. *Id.* at 207 (emphasis in original).

  At the hearing, Plaintiff argued that this case is distinguishable from *Authors Guild* because Terapeak and WorthPoint are making money from their use of Defendant's data. However, the Second Circuit came to its conclusion regarding the transformative nature of Google's use while acknowledging that Google was a "profit-motivated commercial corporation." *Id.* at 217. The Court can do the same here.

  Despite Defendant's commercial purpose in licensing data to Terapeak, the use is transformative. The use does not exploit the original works by replacing payment to Plaintiff for authorized copies of his works. *See A&M Records, Inc.*, 239 F.3d at 1015. Nor does the use maintain the original aesthetic and artistic purposes of Plaintiff's photographs. Instead, the licensing of URLs linking to the images, along with data regarding prices, auctions, and categories, is intended to provide Terapeak with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 13-6801-MWF (Ex) | Date: January 24, 2018 |
| Title: Barry Rosen *-v.-* eBay, Inc. | |

"information about" the items for sale on eBay. *See Kelly*, 336 F.3d at 820; *Authors Guild*, 804 F.3d at 207. Plaintiff has come forward with no evidence that contradicts this overall analytic, informational purpose.

Accordingly, the undisputed evidence demonstrates that this factor weighs in favor of a finding of fair use.

### 2. Nature of the Copyrighted Work

The second factor acknowledges that "some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. "Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." *Kelly*, 336 F.3d at 820 (quoting *A&M Records*, 239 F.3d at 1016). As the Court acknowledged in the January 16 Order and as Plaintiff argues in his Opposition, Plaintiff's photographs are creative works that fall within the core of copyright protection. (Jan. 16 Order at 27; Opp. at 22). This factor therefore weighs against fair use protection.

### 3. Amount and Substantiality of Work Used

The third factor asks whether "the amount and substantiality of the portion [of the work] used in relation to the copyrighted work as a whole" is "reasonable" in relation to the purpose of the use. *Campbell*, 510 U.S. at 586. The Supreme Court "recognize[s] that the extent of permissible copying varies with the purpose and character of the use." *Id.* at 586–87. Plaintiff argues that, because the URLs provided to Terapeak with the licensed data collection link to the "entire infringing image[s]", this factor weighs against fair use. (Opp. at 23).

However, as the Court explained in the January 16 Order, the Ninth Circuit has held that using full versions of copyrighted images does not preclude findings of fair use if using the full version is "reasonable to do . . . in light of [the] use of the images." *Kelly*, 336 F.3d 821 (holding third factor was neutral "because, although Arriba did copy each of Kelly's images as a whole, it was reasonable to do so in light of Arriba's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 13-6801-MWF (Ex) | **Date:** January 24, 2018 |
| **Title:** Barry Rosen *-v.-* eBay, Inc. | |

use of the images"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1167–68 (holding Google's use of the full images was reasonable in light of purpose, which required the full image).

The Court first notes that Defendant did not provide "the entire infringing image" itself, as Plaintiff states. Rather, Defendant provided links that direct third parties *to* the images. Nevertheless, to the extent there is a dispute about whether the URLs constitute "copies" for purposes of distribution (which the Court already concluded there is not), the Court's reasoning in the January 16 Order applies here, too. It is undisputed that Defendant's purpose in licensing data to Terapeak is "analytical." It is further undisputed that the purpose of providing the URLs with that data is to "visually identify that the products [users] are searching for are indeed the products that are being returned in their analysis." (SGI No. 21). As with the search engines in *Kelly* and *Perfect 10, Inc. v. Amazon, Inc.*, it is reasonable for Defendant to link to a full image, which is necessary for users to identify the product used in their market analyses. Therefore, as in those cases, this factor is neutral.

### 4. Effect of Use on the Market

The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also" whether widespread conduct of that type would have a substantially adverse impact on the potential market for the original work. *Campbell*, 510 U.S. at 590; *See* 4 *Nimmer on Copyright*, § 13.05[A][4] (2017). This factor is often viewed as the most important factor of the fair use analysis. *Nimmer on Copyright*, § 13.05[A][4]. Plaintiff argues that because the Defendant's use is commercial, he is entitled to a presumption that the use adversely affected the market or potential market for his copyrighted works. (Opp. at 24 (citing *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984))). The Court rejected this same reasoning in its January 16 Order as largely inapplicable when use of a work is transformative. (Jan. 16 Order at 29–30).

Here, as discussed above, the Court once again found that any use of the images as part of the license of data to Terapeak is transformative in nature because it uses the images for analytical, informational purposes rather than artistic or aesthetic purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 13-6801-MWF (Ex) | **Date:** January 24, 2018 |
| **Title:** Barry Rosen *-v.-* eBay, Inc. | |

As the Ninth Circuit explained in *Perfect 10, Inc. v. Amazon.com, Inc.*, and as the Court stated in the January 16 Order, the "presumption [of adverse effect on the market] does not arise when a work is transformative because 'market substitution is at least less certain, and market harm may not be so readily inferred.'" 508 F.3d at 1168 (quoting *Campbell*, 510 U.S. at 591). Accordingly, the use at issue, like the use at issue in the January 16 Order, does not substitute for purchasing rights directly from Plaintiff. (*See* Jan. 16 Order at 29–30. This factor therefore weighs in favor of finding fair use.

In conclusion, two of the factors favor fair use, including the paramount factor, one factor weighs against fair use in a pro forma way, and one factor is neutral. Therefore, even if there were a genuine dispute about whether Defendant directly infringed Plaintiff's copyrights by distributing the URLs to Terapeak, Defendant would be protected as a matter of law by the fair use defense. Likewise, to the extent secondary theories of liability were available, the fair use defense would also apply to those claims, too, along with the DMCA safe harbor.

### III. CONCLUSION

The Motion is **GRANTED**. There is no basis for a trial of Plaintiff's claim that Defendant violated Plaintiff's copyrights by licensing data to Terapeak. Accordingly, the action is **DISMISSED.**

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as entry of judgment. Local Rule 58-6.

IT IS SO ORDERED.